IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | | |
|---|---|---|
| CROWN EQUIPMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:23-cv-00059-KDB-DCK |
| | ) | |
| DAVID BRADY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Defendants, David Brady ("Brady"), William Tucker ("Tucker"), Brawtus Holding

Company, Inc. ("Brawtus Holding"), Brawtus Management Company, LLC ("Brawtus

Management"), and Pneu-Mech Dissolution LLC, formerly known as Pneu-Mech Systems

Manufacturing, LLC ("the LLC"), hereby submit this Memorandum in Support of their Motion

to Dismiss. For ease of reference, this memorandum refers to Brawtus Holding and Brawtus

Management collectively as the "Brawtus Companies," and the Brawtus Companies together

with the LLC as the "Brady-Tucker Entities." Plaintiff, Crown Equipment Corporation

("Crown"), is attempting through this lawsuit to hold the undersigned Defendants liable for the

actions of others, for contracts to which they are not bound, and, in the case of Brady and

Tucker, for the behavior of companies that they do not and have never owned. Brady and Tucker

have never been members or shareholders of any of the entities with which Crown contracted,

nor were the Brawtus Companies parents of the contracted companies, and therefore veil

piercing does not apply to them. Crown has spun an impressive, but ultimately implausible

theory alleging that Brady and Tucker have always remained in control of the business assets of

"Pneu-Mech," all the while closing their eyes to the simple truth of this seller-financed business sale. The truth is much more mundane than the grand scheme Plaintiff vaguely sets out: Brady and Tucker are nothing more than secured creditors of unrelated enterprises that purchased their business assets and members of the Board of Directors of the company that contracted with Crown. Accordingly, this lawsuit is nothing more than an attempt by Plaintiff to overcome the priority afforded to them as secured creditors. Because nothing pled in Crown's spaghetti complaint makes Brady, Tucker, or their companies liable to Plaintiff—or justifies veil piercing—this Court should dismiss the case against them.

## II. FACTS

According to the Complaint, this dispute arose when Pneu-Mech Systems Mfg., Inc. ("the Corporation") installed machinery in Crown's factory and the machinery cause damaged. Compl. ¶ 1. Pneu-Mech, Inc. began installing the machinery sometime in 2019, with the damage occurring sometime in 2022. The business relationship between Crown and the Corporation began sometime in 2018—the parties began negotiating an "engineering contract" in February 2018 (the "Engineering Contract") and later exchanged two proposals, a purchase order, and several invoices in the fall and winter of 2018. Other projects followed, which the Complaint refers to as the Construction Contract and the Addendum (these projects and the Engineering Contract are collectively referred to as the "Contracts"). Compl. ¶¶ 67, 69, 77. Although Crown had previously done business with the LLC in 2015 and again in 2017 (Compl. ¶¶ 56-60), those parties had not interacted since that time, since the LLC had sold its business in an asset purchase by James Andrews ("Andrews") and Jerry Trostle ("Trostle"), former employees of the LLC who were purchasing the business. Andrews and Trostle created the Corporation to receive the business assets, and that sale was complete in early 2018. Compl. ¶¶ 27-29.

It came as a surprise to Brady and Tucker that Crown has sued them for breaching a contract entered into by Pneu-Mech, Inc. in September 2018 (Compl. ¶ 61), several months after they had sold the LLC's assets to Trostle and Andrews and after the LLC was no longer engaging in any business other than collecting payments for Trostle and Andrews' lease and asset purchase. Compl. ¶¶ 29-30. While the Complaint explicitly alleges that this sale had concluded in early 2018, it proffers several documents that post-date that sale which give the false impression that the LLC was engaging in business with Crown. Compl. ¶¶ 65-69. The first is a proposal purporting to originate from Pneu-Mech Systems Mfg., LLC dated February 5, 2018, relating to a so-called "Engineering Project." Compl. ¶ 65. Even though Trostle was at that point employed by the Corporation and had no role whatsoever in the LLC, the proposal is signed by "Jerry Trostle (VP of Sales) Pneu-Mech Systems Mfg., LLC." Compl. ¶¶ 65-114. A second proposal dated August 20, 2018, likewise purports to come from the LLC and is also signed by "Jerry Trostle (VP of Sales) Pneu-Mech Mfg. Systems, LLC." Compl. ¶¶ 136-44. At each of these times, Jerry Trostle was employed by the Corporation, since, as the Complaint alleges, he was not just an employee, but also an "owner, officer, and director" of the Corporation. Compl. ¶ 162.[1] Thereafter, on September 19, 2018, Crown, in its words, "awarded" the Engineering Project to the LLC and sent a purchase order, which it addressed to the LLC.[2] Compl. ¶ 61, 67. In response to the award and/or the purchase order, "Pneu-Mech Systems Mfg.,

---

[1] Earlier, the complaint implausibly alleges that Trostle also continued to be an employee of the LLC, even though he had purchased all the assets of the LLC and the business was now carried on by the Corporation. Compl. ¶ 61.

[2] It is unclear from the Complaint whether the "award" was through the purchase order or occurred through some other communications. The purchase order includes an issuance date of January 4, 2019, so it is unclear whether Crown alleges that this date is wrong or was simply the follow up to some other communications.

Inc."—i.e., the Corporation—sent several invoices back to Crown on October 11, 2018, November 14, 2018, December 28, 2018, and February 13, 2019, each for $375,000. Compl. ¶ 148-56. Crown paid the Corporation for each invoice. Compl. ¶ 2. Thereafter, the Corporation and Crown apparently worked together to design and install various machinery in Crown's factory. *See generally* Compl. After years of working together, and several years removed from the sale of the Pneu-Mech business by Brady, Tucker, and the Brady-Tucker Entities, Crown and the Corporation apparently became at odds when that machinery failed and damaged Crown's facilities. Compl. ¶ 75. This lawsuit followed.

### III. STANDARD OF REVIEW

"A motion to dismiss tests the sufficiency of the complaint." *Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The Court should accept all plausible facts as true; however, it should not accept facts or conclusory allegations that are merely speculative or that are otherwise implausible. *Id.* at 116. In resolving a motion to dismiss, the Court may consider any written instruments attached to the complaint and any other documents which are integral to the complaint. *Id.* (citing Fed. R. Civ. P. 10(c)). A pleading that states a claim for relief must "contain… a short and plain statement of the claim showing that the pleader is entitled to relief…." Fed. R. Civ. P. 8(a)(2). Moreover, "pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Therefore, A a claim will survive a motion to dismiss only if it states a *plausible* claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A claim is facially plausible when it includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, dismissal is proper when one of three conditions is satisfied: (1) the complaint reveals no law supporting plaintiff's claim; (2) the complaint itself "reveals the absence of facts sufficient to make a good

claim;" or (3) the complaint discloses one or more facts that "necessarily defeat" the plaintiff's claim. *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 784 (2005).

## IV. ARGUMENT

Crown has premised its complaint against the undersigned Defendants on an extraordinary legal theory: that Brady and Tucker were never really engaged in a legitimate business operation, that their ordinary seller-financed sale of their business is really a complex web of contractual obligations to maintain absolute and indefinite control over the business assets that they have sold, and that all their companies are mere shells to facilitate that pernicious scheme, despite the fact that Crown's own complaint admits that Brady and Tucker's legal entities were always well-capitalized and operating legitimate enterprises at all times relevant to their operation. Crown's ostensible foot-in-the-door to make this claim are letters that Jerry Trostle mistakenly sent to Crown under the LLC's letterhead, even though, as Crown admits, Trostle had at that point acquired the LLC's assets and was directing the business through Pneu-Mech Systems Manufacturing, Inc. (the "Corporation"). Thus, based on basic agency principles, he could not have been acting on behalf of the LLC. Nevertheless, Crown is attempting through this lawsuit to hold the LLC responsible for business relationships in which it was not involved, and by proxy the rest of the undersigned Defendants. This is patently unjust. *Vaughn v. N.C. Dep't of Human Res.*, 37 N.C. App. 86, 89 (1978) ("It would be manifestly unjust to hold one party liable for the actions taken by another person if that person did not have authority to act for him."). *Vaughn v. N.C. Dep't of Human Res.*, 37 N.C. App. 86, 89 (1978)). None of the factual allegations in the complaint demonstrate that Brady, Tucker, the LLC, or either of the Brawtus Companies did anything that would give rise to contract, tort, or other liability. Therefore, since Brady, Tucker, and the Brady-Tucker Entities are strangers to the wrongdoing described in the

complaint, and for the reasons further discussed below, all counts against them should be dismissed.

## A. Basic Agency Rules, Along with a Commonsense Understanding of What It Means to Sell Business Assets, Demonstrate that the Undersigned Defendants Were Not Party to the Contracts and Are Therefore not Liable.

Crown has glossed over several important questions which are critical to analyzing the potential liability of the apparent rogue's gallery of defendants it has presented. Chief among them: which defendants are bound by the Engineering Contract, Construction Contract and Addendum (the "Contracts")? The answer to that question hinges upon basic agency principles—principles that Crown has ignored. Application of those principles demonstrates that the only person ever bound by the Contracts was either the Corporation or those individuals who personally signed their names to the proposals or other offers received by Crown. Based on Crown's own pleadings, Brady, Tucker, the Brady-Tucker Entities cannot possibly be bound to the Contracts. It follows that no personal liability attaches to these defendants, nor does Crown have any veil piercing claims against them. Similarly, Crown's claim that Brady and Tucker have violated a fiduciary duty to Crown has no basis in law or fact. Finally, Crown's additional claims against Brady, Tucker, and the Brady-Tucker Entities for alleged fraudulent transfers are rife with deficiencies. Therefore, this Court should dismiss all counts against Brady, Tucker, the Brawtus Companies, and the LLC.

### 1. Under the law of agency, neither Brady, Tucker, the LLC, nor either of the Brawtus Companies are parties to the Contracts.

Crown has not pled sufficient facts to support its claim that the LLC is bound to the Contracts. Crown's own pleadings suggest that when Trostle entered the Contract, he had no authority to bind the LLC. Crown has not pled any facts that, if believed, would support its conclusion that Trostle acted on the LLC's behalf when it executed the Contracts involving

Crown. Further, Crown has not pled facts that suggest that the LLC (or Brady and Tucker in their capacity as representatives of the LLC) exercised such control over Trostle's work that he could be construed as an agent of the LLC. Crown has also pled facts that necessarily defeat its efforts to show that the LLC is bound to the Contracts, such as the fact that Trostle established and purchased an entirely separate entity prior to entering the Contracts and the fact that he was not employed by the LLC in any capacity at the time he executed the Contracts. For these reasons, this Court should dismiss Crown's claims against the LLC for breach of the Contracts and negligence in performing the Contracts (Counts One, Two, and Three).

### a. Crown's factual allegations suggest that Trostle had no authority to bind the LLC to the Contracts.

Crown's own pleadings demonstrate that Trostle did not have actual or apparent authority to bind the LLC when he executed the Contracts. For an agency relationship to exist, the principal must give express or implied authority to an agent to act on the principal's behalf, and the principal must exercise a degree of control over the agent's work. *Colony Assocs. v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 637 (1983). The first question that must be answered is whether a purported agent had authority to act on the principal's behalf. *Id*. A principal may be liable for a contract entered into by an agent if that agent had actual or apparent authority to do so, or, when there is no actual or apparent authority, the principal ratifies that contract. *First Union Nat'l Bank v. Brown*, 166 N.C. App. 519, 527 (2004). Actual authority exists when the agent reasonably believes, based on the representations of the principal, that the agent has authority to act on the principal's behalf. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 830 (2000).

Here, Crown's factual allegations suggest that Trostle had no actual authority to bind the LLC, and Crown has failed to allege facts that would show otherwise. According to Crown's own pleadings, Trostle was not employed by the LLC nor was he performing any work for the

LLC at the time he executed the Contracts. Compl. ¶ 27, 31. Further, Crown pleads that Trostle and Andrews purchased the LLC's assets in 2017 and signed a multi-year lease with the LLC on behalf of the new Corporation. Crown has not pled any facts that suggest Trostle believed he was working on behalf of the LLC, rather than on behalf of the Corporation that he had personally formed when to make a multi-million purchase of the Pneu-Mech-branded business assets. It is nonsensical to conclude that Trostle secretly believed he was acting on behalf of an LLC to which he owed regular payments as part of his seller-financed business acquisition, and it would likewise be utterly nonsensical for Trostle, a mere debtor and tenant of the LLC, to believe that he had authority to act as the LLC's agent in forming the Contracts. Crown has not pled any facts that would show that the LLC ever indicated to Trostle that he had authority to enter the Contracts with Crown or otherwise act on the LLC's behalf.

Additionally, Crown fails to plead facts that tend to show that Trostle could have had apparent authority to bind the LLC to the Contracts. Whether an agent has apparent authority to bind the principal depends on the reasonable perceptions of the third party in question, specifically whether that third party was "justified in believing that the principal had, under the circumstances, conferred upon his agent" the authority to act on the principal's behalf. *Munn v. Haymount Rehab. & Nursing Ctr., Inc.*, 208 N.C. App. 632, 639 (2010). "The scope of an agent's apparent authority is determined not by the agent's own representations but by the manifestations of authority which the principal accords to him." *McGarity v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 83 N.C. App. 106, 109 (1986).

However, Crown never actually alleges that someone that could bind the principal—in this case, a member or manager of the LLC—ever told Crown that Trostle was authorized to act on its behalf in any of the Contracts. Given what Crown has alleged, it is nonsensical that it

would have made such representations, since at the point Crown had entered into the Contracts the LLC was several months removed from selling the Pneu-Mech-branded business assets to the Corporation. Given that Trostle and the other owners of the Corporation had failed to update their letterhead and other business documents to reflect that they were part of the Corporation, not the LLC, it is perhaps understandable for Crown to have initially had some confusion that it was in fact exploring the possibility of doing business with the LLC at that point. However, Crown's perception that Trostle was part of the LLC was based on errant misrepresentations by Trostle and the other owners of the Corporation, not any representations by any representative of the LLC. And even if such reasonable confusion existed initially, any reasonable confusion Crown held would have been dispelled when it was invoiced by the Corporation and it actually paid the Corporation. Indeed, Crown cannot escape the fact that when it was time for Crown to put its proverbial money where its mouth was, it was the Corporation that Crown paid. Accordingly, the facts that Crown has pled are plainly inconsistent with either Trostle believing he was an agent of the LLC or that the LLC made any representations to Crown regarding Trostle's status as an agent on its behalf around the time Crown and the Corporation entered into the Contracts.

### b. Crown does not allege that the LLC exercised sufficient control over Trostle to create an agency relationship.

Although Crown must demonstrate that Trostle had actual or apparent authority—which it cannot do—the fact remains that Crown has alleged facts that show that the LLC never exercised any control over Trostle during or after the formation of the Contracts, and that is an additional prerequisite for Trostle to be an agent of the LLC at that time and thereby bind the LLC to the Contracts. Demonstrating the existence of an agency relationship requires a showing that the purported principal exercised adequate control over the alleged agent. *Sharpe v. Bradley*

*Lumber Company*, 446 F. 2d 152 (4th Cir. 1971); *Vaughn v. N.C. Dep't of Human Res.*, 37 N.C. App. 86, 91 (1978). "Just as authority justifies holding the principal liable, control is the element which distinguishes a true agency status from some other status." *Vaughn v. N.C. Dep't of Human Res.*, 37 N.C. App. at 91 (internal citations omitted). "The nature and degree of control which the principal exercises over the agent is often determinative of whether there is a principal-agent relationship." *Id*. For our purposes, control must, at a minimum, be plausibly alleged in the form of specific factual allegations.

Here, Crown has implausibly alleged that Brady and Tucker, simultaneously on their own behalf *and* that of the LLC, implemented a fraudulent scheme to dominate the business of the Corporation. To establish an agency relationship between Trostle and the LLC and thereby enforce Crown's rights under the Contracts, the LLC must have engaged in sufficient control over Trostle, the individual who purportedly entered into the Contracts on the LLC's behalf. Crown's allegations in this regard are, at this point, naked legal conclusions with no facts to support them. Crown has pled that Brady and Tucker were on the Board of Directors for the Corporation, in their individual capacities, not as representatives of the LLC, but it does not specify how this occurred or how this alleged control impacted the operations of the Corporation or amount to "control" over Trostle's work in particular. Compl. ¶ 31. The facts pled in the Complaint do not provide any greater detail than that Brady and Tucker somehow made themselves "controlling directors," despite jointly holding a minority of the board. Compl. ¶ 41. Despite these vague, unsubstantiated legal conclusions, there are no facts that suggest Brady and Tucker controlled Trostle's work for the Corporation in any way. Without evidence that Brady and Tucker used their roles to advance the interests of the LLC by controlling Trostle's work for the Corporation, there is simply no basis to conclude that the LLC might have exercised any

control whatsoever over Trostle. And meanwhile, Trostle would have absolutely no reason to continue to work on behalf of the LLC, when he now owed the LLC millions of dollars after purchasing its assets, so, without further detail, it is impossible to draw the inference that the LLC controlled Trostle's work at all. Therefore, this court should dismiss all counts against the LLC which rely on the notion that Trostle contracted with Crown on the LLC's behalf, including Counts One, Two, and Three).

### c. *The LLC did not ratify the Contracts.*

When authority and control are lacking, a principal may still be bound to another party's unauthorized acts by virtue of ratification, which occurs when the principal had full knowledge of all the material facts relative to the unauthorized transaction and the principal signified his assent by word or deed. *IO Moonwalkers, Inc. v. Banc of Am. Merch. Servs., LLC*, 258 N.C. App. 618, 622 (2018) (citing *Carolina Equip. & Parts Co. v. Anders*, 265 N.C. 393, 400 (1965)). The way a principal ratifies an agent's unauthorized act "must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose." *Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 229 (2012). Even if an agency relationship involving authority and control were to exist in this case, Crown has not pled even one fact that could show that any representative of the LLC engaged in any conduct or communications that could be construed as ratification of the Contracts. Crown has thus failed to plead any facts that, if believed, uphold its conclusion that Trostle was an agent of the LLC when he executed the Contracts. This Court should therefore dismiss all claims which depend upon the existence of an enforceable contract between the LLC and Crown, including Counts One, Two, and Three.

2. **Crown Cannot Pierce the Veil as to Brady, Tucker, and the Brady-Tucker Entities because None of Them Owned the Corporation or Exercised Sufficient Control.**

Crown has recited a broad legal theory in which anyone involved at all with the operations of a business entity—even non-owners—can be subject to veil piercing. As we explain in further detail below, this is emphatically not the law of veil piercing, either in North Carolina, in the Fourth Circuit, or under the law of veil piercing generally. Even if it were, Crown has alleged facts that necessarily dispel the notion that Brady, Tucker, or the Brady-Tucker Entities exercised any kind of control that would justify the extraordinary remedy of veil-piercing. Therefore, this Court should decline to pierce the corporate veil and dismiss the claims against Brady, Tucker, and the Brady-Tucker entities.

a. *Because Brady, Tucker, and the Brady-Tucker Entities are not shareholders of the Corporation, the Court should not pierce the veil and hold these persons liable.*

Piercing the corporate veil is an equitable remedy that is only imposed against the sole or dominant shareholder of a company to "prevent or rectify an abuse of the corporate privilege or to avoid some other injustice." *Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 577 (2013); *Dorton v. Dorton*, 77 N.C. App. 667, 670 (1985). Courts impose this remedy "reluctantly and cautiously." *Dorton*, 77 N.C. App. at 670. There are three elements that must be proven in order to pierce the veil as to a separate corporate entity: (1) complete domination of finances, policy, and "business practice in respect to the transaction attacked," so that the corporate entity that was party to the transaction had at the relevant time "no separate mind, will[,] or existence of its own; (2) that control was used by the separate corporate entity to commit fraud, perpetrate a violation of a statutory or other legal duty, or to commit "a dishonest and unjust act in contravention of plaintiff's legal rights;" and (3) that control and corresponding breach of duty proximately caused the complained-of injury. *Glenn v. Wagner*, 313 N.C. 450, 455 (1985).

Courts have also explicitly and implicitly considered the following factors in determining whether veil piercing is appropriate: (1) inadequate capitalization of the business entity in question; (2) noncompliance with corporate formalities; and (3) excessive fragmentation of a single enterprise into multiple separate entities. *Dorton*, 77 N.C. App. at 670-71; *Glenn*, 313 N.C. at 455. The presence or absence of one single factor is not by itself dispositive for purposes of veil piercing; rather, the court must assess whether analysis of all factors suggests that the corporate entity in question had "no separate mind, will or existence of its own." *Glenn*, 313 N.C. at 458 (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F. 2d 681, 684 (4th Cir. 1976)). While the law is clear that officers of a company may be held personally liable for their own tortious acts, *see* N.C. Gen. Stat. § 57C-3-30(a) (2011), courts in North Carolina and the Fourth Circuit—as far as undersigned counsel can find—have never applied veil piercing to reach officers of a corporation who were not also shareholders. *See, e.g., Young v. Carter*, No. 5:19-CV-218-FL, 2020 U.S. Dist. LEXIS 18303, at *12-13 (E.D.N.C. Jan. 31, 2020); *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 518 (1990) ("A corporate officer can be held personally liable for torts in which he actively participates"); *Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 577 (2013); *Glenn v. Wagner*, 313 N.C. 450, 453 (1985). Further, "the doctrine of piercing the corporate veil is not a theory of liability" and therefore is inapplicable when all other underlying claims are dismissed. *Krawiec v. Manly*, 370 N.C. 602, 616 (2018); *Green v. Freeman*, 367 N.C. 136, 146 (2013).

Here, Crown has not pled sufficient facts that, if believed, plausibly lay out a *prima facie* case for veil piercing against Brady, Tucker, or the Brady-Tucker Entities. The most glaringly obvious problem with Crown's veil-piercing attempt against Brady and Tucker is that it has not alleged that Brady or Tucker were ever shareholders in the Corporation. North Carolina law is

clear on this subject: "[T]he instrumentality rule allows for the corporate form to be disregarded if the corporation [is operated as] a mere instrumentality or alter ego *of the sole or dominant shareholder.*" *Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 577 (2013) (emphasis added) (citing *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 440-41 (2008)). Though this deficiency alone should end the veil piercing inquiry altogether, there are various other inadequacies to address.

### b. Veil piercing is also inappropriate because Crown has not adequately alleged actual facts demonstrating that Brady and Tucker, or their legal entities, exercised domination and control over the corporation in a way to perpetrate a fraud.

Given that Crown seeks an extraordinary equitable remedy, it is not enough for Crown to simply state that Brady and Tucker engaged in complete domination or control over the Corporation's finances, policy, or business practices with respect to the transaction attacked (whatever that may be),[3] or that the Corporation had no separate existence apart from the Brady-Tucker Entities or Brady and Tucker personally. Crown has not pled any facts or identified the specific transactions that would demonstrate that Brady, Tucker, or the Brady-Tucker Entities committed fraud, which must be pled with particularity as to the specific circumstances constitute fraud. Fed. R. Civ. Pro. 9(b). Further, Crown has not supplied any relevant facts that show whether Brady, Tucker, or the Brady-Tucker Entities used their alleged control over the Corporation to perpetrate a violation of any statutory or other positive legal right held by Crown. The mere fact that the Corporation failed to fulfill its contractual obligations to Crown and later became insolvent does not by itself explain whether the Corporation's failures and financial

---

[3] Though it is not specified in Crown's Complaint, Defendants presume for the sake of argument that the "transaction attacked" is the LLC's perfection of its security interest in the Corporation's physical property under the asset purchase described in the Complaint, as well as the collection of the remainder of the purchase priced owed by the Corporation.

demise occurred as a result of any outsized influence by Brady, Tucker, or the Brady-Tucker Entities, or that it exerted that influence to defraud Crown as a creditor.

It is also impossible to determine whether the remaining veil piercing factors are applicable. Crown summarily states that Brady and Tucker did not adequately capitalize the Brady-Tucker Entities or the Corporation (Compl. ¶ 91), but whether Brady and Tucker adequately capitalized the Brady-Tucker Entities is not relevant because none of these entities are (or ever were) subsidiaries or parent companies of the Corporation. An inquiry as to whether Brady, Tucker, or the Brady-Tucker Entities adequately capitalized the Corporation is nonsensical, given that none of these Defendants ever owned the Corporation at any point in time, and thus they could not have been responsible for capitalizing the Corporation to any degree. Indeed, Brady and Tucker were members of the Corporation's board of directors in their individual capacities, as pled in the Complaint, and therefore they could not have possibly been responsible for capitalizing the Corporation to any degree. All the veil piercing factors are naturally directed at things a dominant *shareholder* could control, but not things that some other employee, officer, or director could control, which naturally suggests that veil piercing never applies to a non-shareholder.

Crown also generally alleges that Brady and Tucker have operated the Corporation and the Brady-Tucker Entities as their alter egos, exercised complete domination and control of all these entities, "implemented a scheme for fragmentation of their business," and so forth. Compl. ¶¶ 86-105. The Brawtus Companies have an ongoing legal existence but have not participated in any of the Corporation's business or its interactions with Crown. The LLC has some connection to the Corporation, but not enough to justify veil piercing, based on the facts pled in the Complaint. Though Brady, Tucker, and the original Brawtus Companies eventually used the

LLC as the primary vehicle for conducting business, that business was eventually sold in its entirety to the owners of the Corporation, after which point the LLC existed only to collect rent payments and installments of the Corporation's purchase price. This receivership arrangement can hardly be deemed a separate wing of the same business carried on by the Corporation at that time, of which the Contracts are prime examples. While it is true that the LLC and its owners had a financial interest in continuing to receive the funds owed by the Corporation, it would be absurd to regard an ongoing receivership between two businesses as proof of joint enterprise. The simple fact is that not even one of the Brady-Tucker Entities participated in or controlled the Corporation's business in any way. There are no facts in the Complaint that would support the conclusion that the Brady-Tucker Entities and the Corporation were involved in the same business, and therefore the separate functions of each entity cannot be deemed "fragmentation" of a single enterprise. Though Brady and Tucker were members of the Corporation's board of directors, Crown has attempted to use their financial interest as owners of a creditor company to imply "complete domination and control" where it never existed. Further, Crown has not presented any specific facts that, if believed, would support the notion that Brady and Tucker used their influence as minority members of the board of directors to exercise such an extraordinarily high degree of control over the Corporation that it effectively had no separate existence of its own. Crown has not alleged any facts as to the remaining factors: non-payment of dividends, non-functioning of the majority of the Corporation's board of directors, or the availability of corporate records. Though Crown presents a host of legal conclusions in an effort to satisfy each element and factor relevant to veil-piercing, the Complaint as pled falls woefully short of explaining how or why any of these are applicable. Therefore, Brady, Tucker, and the

Brady-Tucker Entities respectfully request that this Court dismiss Counts Twelve and Thirteen as to them.

### 3. The LLC did not engage in the Conduct Alleged in Counts One and Two, so They Cannot Be Liable in Negligence.

For the reasons stated above, Trostle was not an agent of the LLC at the point when he entered the Contracts with Crown. The damages Crown may have experienced because of the Corporation's performance of the Contracts are not the result of any action by the LLC. Therefore, the LLC cannot be held liable in negligence and Counts I and II should therefore be dismissed as to the LLC. Additionally, Crown has not alleged any duty arising at law for which a negligence theory is applicable, instead relying purely on a contractual duty to design and install the machinery described in the Complaint. "[C]ontractual liability does not automatically give rise to tort liability." *See Charlotte-Mecklenburg Hosp. Auth. v. Wachovia Bank, N.A.*, 2009 NCBC LEXIS 33, *7 (citing *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003)). "Unless public policy requires otherwise, 'a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract.'" *Id.* (quoting *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741 (1992)). This is precisely the circumstance presented by Counts One and Two of the Complaint, which actually recites duties under the Contracts, not one independently existing at law. Therefore, Counts One and Two should be dismissed for this additional reason.

### 4. Brady and Tucker Are Not Fiduciaries of Plaintiff, and Therefore They Have No Liability Under Count Four.

In Count Four of its Complaint, Crown alleges that Brady and Tucker's fiduciary duties to the Corporation extended to Crown because Crown was a creditor of the Corporation. Compl. ¶¶ 125-36. Further, Crown alleges that Brady and Tucker breached these alleged fiduciary duties when the Corporation became insolvent and ceased its operations. *Id*. Put simply, the claim that a

member of the board of directors of a debtor company owes a fiduciary duty of any kind to a separate, creditor entity is absolutely preposterous. The "mere existence of a debtor-creditor relationship between [two parties] does not create a fiduciary relationship." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 368 (2014); *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992). In some cases, a creditor is permitted to bring an individual action against a third party for breach of a fiduciary duty when "(1) the wrongdoer owed [the creditor] a special duty; or (2) [the creditor] suffered a personal injury distinct from the injury sustained by the corporation itself." *Green v. Freeman*, 367 N.C. 136, 136, 749 S.E.2d 262, 265 (2013). Aside from the creditor-debtor relationship Crown had with the Corporation, Crown has not alleged any additional facts that support categorizing Brady and Tucker as fiduciaries of Crown, nor does Crown allege the existence of a "special relationship" that would justify extending their fiduciary duties to Crown.

Further, even if it were true that Brady and Tucker had breached their fiduciary duties to the Corporation, Crown would have no standing to sue on this basis. To have standing to bring a particular claim against a particular party, a plaintiff must show that it "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). Because Brady and Tucker did not owe any fiduciary duties to Crown, Crown cannot claim that it has experienced any "invasion of a legally protected interest" based on a breach of fiduciary duty. Crown may seek legal recourse by suing the Corporation based on legitimate contractual obligations and duties; however, it should not be permitted to remedy its grievances on the basis of imagined obligations that have no basis in law or fact. Therefore, this Court should dismiss Count Four.

**5. N.C. Gen. Stats. §§ 39-23.4 and 39-23.5 Are Not Applicable to the Transactions Described in Counts Ten and Eleven, Which Are Not Plausibly "Fraudulent Conveyances."**

Although the fraudulent conveyance statutes present a seemingly complex scheme for rendering transfers voidable, a fraudulent transfer is one that "at a minimum, involves actual intent to defraud creditors." *Norman Owen Trucking Inc. v. Morkoski*, 131 N.C. App. 168, 174, 506 S.E.2d 267, 271 (1998). Thus, to make a facially plausible claim for relief under N.C. Gen. Stats. §§ 39-23.4 and 39-23.5, Crown must plead facts that show: (1) Crown was a creditor of a specific entity; (2) that specific debtor entity transferred something of value to a third party without receiving equivalent value in exchange and either (a) the debtor intended to incur debts it would not be able to pay, or (b) the remaining assets of the business were unreasonably small in relation to a current or future business transaction; and (3) the debtor entity made that transfer with the intent to hinder, delay, or defraud Crown or any other creditor. N.C.G.S. §§ 39-23.4 and 39-23.5.

These allegations are replete with deficiencies. The primary issue with this claim is that, while Crown's factual narrative presents a cornucopia of facts about a multiplicity of transactions, it fails to adequately narrow the field and clarify which ones it believes are fraudulent under N.C. Gen. Stats. §§ 39-23.4 and 39-23.5. In Count Ten, Crown alleges that Defendants Brady and Tucker "caused [the LLC] and [the Corporation] to transfer certain assets" to Brady and Tucker themselves. Compl. ¶ 205. Crown later adds that the allegedly unlawful transfers, whatever they may have been, "include[d], *but are not limited to*, the transfer of cash." Compl. ¶ 208 (emphasis added). The only details Crown provides as to when these allegedly fraudulent transactions may have occurred is that they were "made after [the LLC] and [the Corporation] were threatened with suit" and "made when [the LLC] and [the Corporation] were insolvent," which provides little clarity given that the LLC has never been insolvent. Compl. ¶

209. Crown pleads throughout its Complaint that the entities and individuals named under this Count engaged in many transactions between one another throughout the lifespan of the Corporation (Compl. ¶¶ 27, 29-30, 35, 44, 45, 52-54, 96), so clarification as to which transaction is applicable to this claim is imperative for the defendants to receive adequate notice of the specific claims against them and offer an effective defense on their own behalf.

Crown's failure to identify which transaction(s) it believes to be fraudulent also prevents the defendants from adequately evaluating whether any debtor-creditor relationship(s) existed at the relevant time. To make a facially plausible claim that a fraudulent transfer has occurred, Crown must plead facts that plausibly show that it was a creditor of Brady, Tucker, or the Brady-Tucker Entities at the time of the allegedly fraudulent transaction(s). Based on the facts alleged in the Complaint, the only party who can reasonably be considered a debtor of Crown is the Corporation, which was the only party with a relevant contractual obligation to Crown that could have given rise to a related debt. Neither Brady, nor Tucker, nor the LLC had any obligations to Crown, contractual or otherwise, after fulfilling two other contracts with the company in 2015. The Corporation engaged in numerous transactions with the LLC, Brady, and Tucker between the Corporation's inception and its later insolvency. As with Brady, Tucker, and the Brady-Tucker Entities, Crown does not specify which transfer by the Corporation may fall under the purview of N.C. Gen. Stats. §§ 39-23.4 and 39-23.5.

Crown does plainly state at one point in its Complaint that the sale of assets by the LLC to the Corporation was intended to "defraud [the LLC]'s creditors," but Crown was not a creditor of the LLC when it sold its assets to the Corporation. Compl. ¶ 34. Neither the LLC nor the Corporation had any contracts with Crown whatsoever at the time the LLC sold its assets to and entered a lease with the Corporation. Therefore, even if Crown's flimsy attempts to directly

attribute all actions of the Corporation to Brady, Tucker, and/or the Brady-Tucker Entities were to be given the benefit of all reasonable assumptions, none of these parties would have been a debtor of Crown at the point it entered into the relevant Contracts with the Corporation. Further, neither Brady, Tucker, nor the LLC could have foreseen at the time of the asset sale that the Corporation would undertake an obligation to Crown that it had neither the resources nor the capability to fulfill and thereby ultimately make itself a debtor to Crown. If anything, it was far more reasonable that the Corporation would be considered a potential future creditor of Crown, given that Crown and the Corporation had begun discussing an arrangement in which Crown would repeatedly pay large sums of money to the Corporation for work it would perform at Crown's facilities.

Unless Crown identifies the specific transaction or transactions that it believes are fraudulent, the Defendants are left to speculate as to which of the many transactions alleged in the Complaint ought be addressed. Defendants are thus at a significant disadvantage in proffering a robust defense on their own behalf. Contrary to the short and plain statement it is required to provide, Crown has provided quite the opposite. Even the facts it alleges are muddled, difficult to interpret, and riddled with irrelevant information, making it very challenging to decipher precisely what fraudulent transfers occurred, as well as when they occurred and the reasons why, which are relevant under N.C. Gen. Stats. §§ 39-23.4 and 39-23.5. Simply put, it is impossible to draw a reasonable inference regarding the plausibility of Crown's fraudulent transfer claims, because Crown has failed to point to the statutorily relevant details. In lieu of identifying the essential facts so that this question may be confronted on the merits, this plaintiff would have the court infer that somewhere, somehow, within the superabundance of facts provided, a fraudulent transaction is likely to have occurred at some point. If this court were to make such an inference,

it would effectively absolve Crown of its burden to make a facially plausible claim, rob the defendants of their constitutional right to have notice of claims made against them and the basis thereof, and impose upon the defendants and this court the cumbersome task of evaluating every single transaction named in the facts to determine whether each one was fraudulent. Therefore, this Court should dismiss Counts Ten and Eleven as to Brady, Tucker, and the Brady-Tucker Entities.

## V. CONCLUSION

The undersigned defendants respectfully request that this court dismiss all claims against them, including counts for negligence, breach of contract, breach of fiduciary, fraudulent transfers, and any other counts applying to the undersigned defendants through any theory, whether veil piercing or some other theory.

Brady and Tucker request that this court dismiss all of Crown's claims against them, including Counts Four, Ten, Eleven, and Twelve, which allege breach of fiduciary duty, fraudulent transfers, and the applicability of veil piercing. As to Count Four, Brady and Tucker request that the court dismiss Crown's claim for breach of fiduciary duty, since Crown has failed to allege any facts showing that Brady or Tucker owed any fiduciary duty whatsoever to Crown. As to Counts Ten and Eleven, Crown has failed to allege facts that, if believed, would tend to prove the essential elements of under N.C. Gen. Stats. §§ 39-23.4 and 39-23.5, namely that Brady or Tucker were ever debtors of Crown, that they ever made any transfer with the intent to evade payment on any debt which they personally owed to Crown, that such transfer was ever made for inadequate compensation, or any other element of the applicable statutes. Brady and Tucker also request that this court dismiss Crown's efforts to pierce the corporate veil of the Corporation (Count Twelve), since Crown has failed to plead facts that would demonstrate that Brady and Tucker had any ownership stake in the Corporation, which the law requires in order

for veil piercing to be applicable. Therefore, this Court should dismiss Counts Four, Ten, Eleven, and Twelve against Brady and Tucker.

The LLC similarly requests that this court dismiss all counts against it as well, including Counts One and Two (negligence), Count Three (breach of contract), Counts Ten and Eleven (fraudulent transfer), and Count Thirteen (veil piercing). Based on the facts Crown has pled in its Complaint, the LLC has never been a party to any of the Contracts, thus obviating any claim for breach of contract or negligence based on a contractual obligation. To put it simply, Crown's confusion in this regard is not based on any deceit or unlawful acts by any member of the LLC – rather, Crown's confusion is the direct result of failure by the members of the Corporation to update their letterhead after purchasing the business and properly communicate with Crown. Crown's claim that the LLC engaged in one or more fraudulent transfers is lumped in with similar claims against Brady, Tucker, the Brawtus Companies, and others, and it thus bears the exact same deficiencies: failure to allege which specific transactions are at issue, failure to establish which parties were involved in each of those transactions, failure to establish that Crown had the requisite creditor-debtor relationship with the transferring party at the relevant time, and failure to allege facts that would tend to prove or disprove facts relevant to this court's analysis of the transferring party's intent. Thus, this court must dismiss Counts One, Two, Three, Ten, Eleven, and Thirteen as to the LLC. For the same reasons, this court should also dismiss Counts Eleven and Thirteen as to the Brawtus Companies, which have never contracted with Crown or owned any company that has ever contracted with Crown.

The undersigned Defendants have intended to capture all claims brought against them in the Complaint, and expressly asks this Court for their dismissal. To remove any doubt, to the extent Plaintiff alleges some other count applies to them, e.g., through a veil piercing theory,

then the undersigned Defendants respectfully request the Court dismiss that count for the reasons recited herein.

Dated: August 21, 2023

BY COUNSEL

/Abbi White Harris/
Abbi White Harris, Esq. (NC Bar No. 59883)
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
(Admitted *Pro Hac Vice*)
DARKHORSE LAW PLLC
8963 Northpoint Executive Park Dr., Suite 260
Huntersville, North Carolina 28078
Phone: 540-553-8149 ext. 2
Fax: 540-301-6460
abbi@darkhorse.law
andrew@darkhorse.law

and

John Riordan (NC. Bar No. 54973)
FIDELITY LAW GROUP
8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

*Counsel for Defendants David Brady, William Tucker, Brawtus Holding Co., Inc., Brawtus Management Co., LLC, and Pneu-Mech Dissolution LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served the foregoing on the following counsel of record who are CM/ECF participants:

Toby K. Henderson
Joanna W. Gisel
Sebaly Shillito & Dyer
1900 Kettering Tower
40 North Main Street
Dayton, OH 45423-1900
P: 937-222-2500
F: 937-222-6554
thenderson@ssdlaw.com
jgisel@ssdlaw.com

and

Fred M. Wood, Jr.
Nelson Mullins Riley & Scarborough LLP
301 South College Street, Suite 2300
Charlotte, North Carolina 28202
P: 704-417-3059
F: 704-377-4814
fred.wood@nelsonmullins.com

*Counsel for Plaintiff*

/AbbiWHarris/
Abbi W. Harris, Esq. (NC Bar No. 59883)
DARKHORSE LAW PLLC
Phone: 540-553-8149 ext. 701
Fax: 540-301-6460
abbi@darkhorse.law

*Counsel for Defendants Brady,*
*Tucker, Brawtus Holding, Inc.,*
*Brawtus Management LLC, and Pneu-*
*Mech Dissolution LLC*