# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CROWN EQUIPMENT
CORPORATION,

        **Plaintiff**,

  v.

**DAVID BRADY, et al.**,

        **Defendants**.

Civil Action No. 5:23-cv-00059

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS THE COMPLAINT UNDER FED.R.CIV.P. 12(b)(6)

## I.    INTRODUCTION.

This action arises from the defendants' illegal conduct over several years, including a contractor abandoning a multi-million-dollar project to engineer and construct a powder coating system for Plaintiff Crown Equipment Corporation ("Crown"), only to then completely shutter its operations to avoid its obligations. Crown agreed for a "Pneu-Mech" branded entity to engineer and construct a $15 million powder coating system. (Doc. No. 1, ¶1). The Pneu-Mech entity botched the project, and the system, as constructed, damaged Crown's property. (*Id.*) As a result, Crown suffered significant damage in repairing the powder coating system and the surrounding structure and faced demands for payment from subcontractors that the Pneu-Mech entity failed to pay. (*Id.* at ¶2).

After the Pneu-Mech entity abandoned the project, Crown learned there were several corporate iterations of "Pneu-Mech," all owned and controlled by Defendants David Brady ("Brady") and William Tucker ("Tucker"). Crown discovered that Brady and Tucker developed a

pattern of creating new "Pneu-Mech" companies over the years, transferring the assets of the old companies to the new companies and "starting fresh." (*Id*. at ¶3.) At different times during the relationship, Crown unknowingly dealt with different iterations of "Pneu-Mech." (*Id*.)

True to form, Brady and Tucker have again created a new entity following the demise of the Pneu-Mech entity with which Crown did business. (*Id*. at ¶4.) Defendant United Finishing Systems, LLC is the latest Pneu-Mech iteration and holds all the assets of the prior Pneu-Mech entity. (*Id*.) Brady and Tucker transferred its assets to United Finishing Systems, LLC to defraud the former Pneu-Mech entity's creditors, including Crown. (*Id*.) The convoluted nature of this matter stems from Brady's, Tucker's, and others' efforts to hide assets from collection following a failed business and an attempt to "start fresh." (*Id*. at ¶5.)

With their *Motion to Dismiss for Failure to State a Claim* (Doc. No. 37) and *Memorandum in Support of Defendants' Motion to Dismiss* (Doc. No. 38, ["*Motion*"]), Moving Defendants,[1] particularly Brady and Tucker, once again look to hide behind the shell companies they created, dominated and used to perpetuate their scheme, at the expense of Crown and other creditors. Moving Defendants' *Motion* should be denied for five reasons:

__First:__ Crown has pled a plausible breach of contract claim against Pneu-Mech 2.0. Crown attached to its *Complaint* the documents reflecting the terms of the agreements with Pneu-Mech 2.0, detailed how Pneu-Mech 2.0 breached its obligations, and identified the harm caused by the breaches. Moving Defendants' arguments related to theories of agency are irrelevant to the Court's Rule 12(b)(6) analysis and are for disposition following discovery.

---

[1]    Moving Defendants are Brady, Tucker, Brawtus Holding Company, Inc., Brawtus Management Company, LLC ("Brawtus Mgmt."), and Pneu-Mech Dissolution, LLC f/k/a Pneu-Mech Systems Manufacturing, LLC ("Pneu-Mech 2.0").

**Second:** Crown's negligence claims against Pneu-Mech 2.0 are supported by allegations establishing Pneu-Mech 2.0's duty to act with reasonable and ordinary care, detail Pneu-Mech 2.0's damaging of Crown property in breach of its duty and explain the damages Crown suffered as a result. Moving Defendants' agency theories are again misplaced. And Crown has a right to have its negligence and breach of contract claims proceed side-by-side because Pneu-Mech denies the existence of any contract, the common law duty is different than any contractual obligations Pneu-Mech 2.0 may have, and damages from its negligence fall outside any applicable contract.

**Third:** Brady and Tucker owed Crown a fiduciary duty when, as Pneu-Mech 3.0 directors, they acted to effectively cause Pneu-Mech 3.0 to stop operating, only to then transfer Pneu-Mech 3.0's assets to themselves and the next Pneu-Mech corporate iteration. Brady and Tucker exploited their intimate knowledge of Pneu-Mech 3.0's financial failings and acted to force the wind-up of Pneu-Mech 3.0's business knowing it owed Crown substantial money; it was insolvent and unable to pay Crown; and their actions would inure to their personal benefit and to Crown's detriment. The argument that as directors of Pneu-Mech 3.0, Brady and Tucker could never owe Crown, a Pneu-Mech 3.0 creditor, a fiduciary duty is contrary to more than 50 years of precedent.

**Fourth:** Crown stated fraudulent transfer avoidance claims by providing detailed facts to support each legal element of the claims, including identifying the parties, dates, and property at issue, and providing details about the transactions, even without the benefit of discovery. Moving Defendants feigned confusion over the transactions and assets at issue derives from their mischaracterization of the *Complaint* and selective identification of relevant factual allegations.

**Fifth:** Crown alleges Brady and Tucker exercised ownership, control, and domination over certain entities and disregarded their corporate forms to perpetuate the fraudulent transfer of assets and personally enrich themselves, all while using the corporate forms to shield themselves from

personal liability to Crown's detriment. These allegations are precisely what is needed to state a plausible claim under North Carolina law for disregarding corporate forms.

## II.     LAW & ARGUMENT.

Moving Defendants misstate the proper standard of review under Federal Rule of Civil Procedure 12(b)(6).[2] Under federal law, it is well-settled that a party moving to dismiss a complaint, or certain causes of action within a complaint, bears "the burden of proving that no claim has been stated." *Choate v. Durham*, No. 3:97CV413-P, 1997 U.S. Dist. LEXIS 21893, *4 (W.D.N.C. Dec. 16, 1997). A motion under Rule 12(b)(6) tests both the legal and factual sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court must, however, "accept[] all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Id.* In construing the facts as such, a complaint needs only "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* That is, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim [] plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n. 26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555); *Iqbal*, 556 U.S. at 679. Thus, a Rule 12(b)(6) motion assesses only whether a claim has been stated by the plaintiff; "it does not resolve contests surrounding the facts, the merits of a

---

[2] They treat the requirement to accept as true all well-pleaded facts as a suggestion and ask the Court to ignore facts they deem implausible. (*See* Doc. No. 38, at p. 4). And Moving Defendants reference only to North Carolina's interpretation of its inapplicable Rule 12 is particularly unpersuasive. (*Id.* at pp. 4-5).

claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In other words, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (internal citations omitted).

Applying the appropriate standard, Crown has alleged more than sufficient facts that, taken as true, state plausible claims for relief. Even so, repeatedly throughout the *Motion*, Moving Defendants complain Crown has asserted "naked" or "unsubstantiated" legal conclusions without supportive facts. (*See, e.g.*, Doc. No. 38, at p. 10). To the contrary, Crown's *Complaint* is chock-full of facts that, when taken as true, rise beyond speculation and identify plausible theories of relief against Moving Defendants for negligence, breach of contract, breach of fiduciary duty, and fraudulent transfers, and justify disregarding certain corporate forms. Putting aside the addle of arguments in the *Motion* and instead, assessing the pleading necessities for each of the claims at issue, Crown has plausibly stated claims for relief.

### A. Crown has Pled a Plausible Claim for Breach of Contract Against Pneu-Mech 2.0 (Count Three).

A plaintiff need plead only two elements to state a claim for breach of contract: (1) the existence of a valid contract and (2) breach of the terms of that contract. *Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016). "[W]here [a] complaint alleges each of these elements, it is error to dismiss a breach of contract claim[.]" *Daley-Bishop v. Long & Foster Prop. Mgmt.*, No. 5:19-CV-270-FL, 2020 WL 6059843, at * 4 (E.D.N.C. Jun. 3, 2020). In Count Three, Crown alleges Pneu-Mech 2.0[3] breached the Engineering Contract

---

[3] "Pneu-Mech" includes Pneu-Mech 2.0 and 3.0. (Doc. No. 1, ¶73).

(Doc. No. 1, ¶67; Doc. No. 1-8); the Construction Contract (Doc. No. 1, ¶70; Doc. No. 1-14); and the Addendum. (Doc. No. 1, ¶77; Doc. No. 1-15).

In support of its breach claims, Crown alleged Pneu-Mech 2.0 is an existing North Carolina limited liability company formed in 2004. (Doc. No. 1, ¶¶11, 20, 22) For each Contract, Crown explained how it contracted with Pneu-Mech 2.0, (*id*. at ¶¶56-58), described Crown's considerable contracting history with Pneu-Mech 2.0, (*id.* at ¶¶59-60), and detailed the various proposals Pneu-Mech 2.0 submitted to Crown before Crown agreed to the Contracts. (*Id*. at ¶¶61, 64-67, 69-71). Crown attached the documents reflecting the terms of the Contracts, (Doc. Nos. 1-3, 1-7, 1-8, 1-13, 1-14, and 1-15), specified how Pneu-Mech 2.0 broke its contractual obligations, including identifying the terms breached, (Doc. No. 1, ¶¶75, 82, 123(a)-(j)), and identified the resulting damages. (*Id.* at ¶¶76-81, 83-85, 124). Thus, Crown has sufficiently pled the necessary elements of a breach of contract claim against Pneu-Mech 2.0, and the Court should deny the request to dismiss Count Three.

### 1. *Agency arguments are not Proper 12(b)(6) Considerations.*

Despite Crown's well-pled facts, Moving Defendants claim the *Complaint* lacks "sufficient facts to support [Crown's] claim that [Pneu-Mech 2.0] is bound to the Contracts." (Doc. No. 38, at p. 6). They contend Crown's *Complaint* "suggests" Jerry Trostle lacked actual or apparent authority to bind Pneu-Mech 2.0. (*Id.* at pp. 6-11). Indeed, Moving Defendants claim the *Complaint* does not include facts showing Trostle's actual or apparent authority to act on Pneu-Mech 2.0's behalf. (*Id*. at p. 8).[4] This argument is legally unsound and contrary to the facts alleged.

---

[4] Moving Defendants claim Trostle executed, negotiated, or otherwise formed the Contracts on behalf of Pneu-Mech 2.0. (*Id.* at pp. 7-11). Trostle only signed the Addendum and nowhere in the *Complaint* does Crown allege negotiations were limited to Trostle. Indeed, Crown identified others involved in the contracting. (*See, e.g.*, Doc. No. 1, ¶¶65-66, 69, 162-64, 168-70, 178).

On this point, Crown started doing business with Pneu-Mech 2.0 in 2015. (Doc. No. 1, ¶¶56-58; Doc. Nos. 1-3, 1-4, 1-5). In February 2018, "JB Graves, Regional Sales Manager Pneu-Mech Systems Manufacturing," and "Jason Gatton – Special Projects Pneu-Mech Systems Manufacturing," (Doc. No. 1-6, at p. 2), submitted a proposal on behalf of "Pneu-Mech Systems MFG. LLC," (identified in the *Complaint* as "Pneu-Mech 2.0") "A Division of Brawtus Holding Co. Inc.," (*id.* at p. 4), to design and construct the powder-coating system. (Doc. No. 1, ¶65). The proposal stated "**Pneu-Mech Systems Mfg. LLC** is very pleased to provide the attached complete proposal . . . Our team has developed a proven comprehensive package that has provided customers with the highest possible quality at the lowest price for over 27 years." (Doc. No. 1-6, at p. 5). The proposal included a "2 year warranty [for] all equipment manufactured by PNEU-MECH SYSTEMS MFG. LLC," (*id.* at p. 45), along with proposed "Terms and Conditions of Sale" for "Pneu-Mech Systems Mfg, LLC" identifying the "**SELLER**" as "Pneu-Mech Systems Mfg, LLC," (*id.* at p. 48), signed by "Jerry Trostle (VP of Sales) **Pneu-Mech Systems LLC.**" (*Id.* at p. 51 (emphasis in original)). The proposal also included "Pneu-Mech Systems Mfg, LLC" design drawings. (*Id.* at p. 64).

Following six months of negotiations, Crown received a new proposal from "Pneu-Mech Systems Mfg. LLC," "[a] division of Brawtus Holding Co. Inc.," for the Engineering Contract. (Doc. No. 1-7, at p. 2; Doc. No. 1, ¶66). This proposal, submitted by Graves, Gatton, and Trostle, (Doc. No. 1-7, at p. 5), included the same reference to "Pneu-Mech Systems Mfg. LLC's" decades of experience, (*id.* at p. 3), and proposed the same "Pneu-Mech Systems MFG. LLC" warranty, (*id.* at p. 5), and terms. (*Id.* at pp. 7-10). Crown awarded "Pneu-Mech Systems Mfg. LLC" the Engineering Contract on September 10, 2018, committing to pay $1.5 million. (Doc. No. 1-8; Doc. No. 1, ¶¶66-67).

Then, following more negotiations, "Pneu-Mech Systems MFG. LLC," "[a] division of Brawtus Holding Co. Inc.," sent Crown a proposal for the Construction Contract. (Doc. No. 1-13, at p. 2). This proposal included the same representations about "Pneu-Mech Systems Mfg. LLC," (*id.*, at pp. 3, 42), along with the same proposed warranty and terms. (*Id.*, pp. 40-45). Crown awarded "Pneu-Mech Systems Mfg. LLC" the Construction Contract on April 30, 2019. (Doc. No. 1-14).

More than three years later, in June 2022, Crown agreed to the Addendum with "Pneu-Mech Systems Manufacturing LLC," the same entity Crown had done business with since 2015. (Doc. No. 1-15). During the times Crown agreed to the Contracts, it was unaware of any transaction, legitimate or otherwise, Brady and Tucker orchestrated between Pneu-Mech 2.0 and 3.0. (Doc. No. 1, ¶¶63, 67, 72). It was not until after Crown suffered significant damages did it learn of the behind-the-scenes illegitimate operations of the entities. (*See, e.g.*, *id.* at ¶¶3, 61, 67, 72, 176).

Rather than "suggest that Trostle had no authority," Crown's *Complaint* states in detail the interactions it had with several Pneu-Mech 2.0 representatives (e.g., Graves, Gatton); includes the operative documents showing Crown contracted with Pneu-Mech 2.0; and describes how Pneu-Mech 2.0 performed the Contracts. Moving Defendants try to dismiss as "mistakes" the written references to Pneu-Mech 2.0. (Doc. No. 38, at p. 5). Rather than "mistakes," when read in Crown's favor, the allegations, including the attachments, make it plausible that Pneu-Mech 2.0 contracted with Crown, just as the documents show. In any event, a Rule 12(b)(6) motion "determines only whether a claim is stated; 'it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.' " *Lowe's Co. v. Ferrandino & Son, Inc.*, No. 5:22-CV-00033-KDB-DCK, 2022 U.S. Dist. LEXIS 132447, *2 (W.D.N.C. July 25, 2022) (quoting *Republican*

*Party*, 980 F.2d at 952).  Thus, disputes over agency principles, should they ever apply, are for resolution after a full presentation of the evidence.

Moving Defendants nevertheless hinge their agency argument on their assertion that, because Pneu-Mech 2.0 allegedly sold its assets to Pneu-Mech 3.0, Crown could not have contracted with Pneu-Mech 2.0.  (*See, e.g.*, Doc. No. 38, at p. 8).  As explained above, the substantial facts detailed in the *Complaint* and exhibits, all of which are construed in Crown's favor, eviscerate Moving Defendants' argument – it is plausible Pneu-Mech 2.0 contracted with Crown.  Furthermore, Moving Defendants ask the Court to ignore Crown's allegations that every successive incarnation of a Pneu-Mech entity has occurred to perpetuate Brady and Tucker's decades-long fraudulent scheme. (*See* Doc. No. 1, ¶¶3-5, 29-55).  Instead, Moving Defendants ask the Court to declare the alleged asset sale from Pneu-Mech 2.0 to 3.0 legitimate, even though Crown asserts Brady and Tucker orchestrated the sale "to defraud Pneu-Mech 2.0's creditors," operated Pneu-Mech 2.0 as their "alter ego" and so dominated the entity that it had no "separate mind, will or existence of its own", and used Pneu-Mech 2.0 as an instrument of their fraudulent activity directed to Crown.  (*Id*. at ¶¶34, 87-93; Doc. No. 38, at pp. 8-9).  To read the *Complaint* in the way Moving Defendants propose requires the Court to upend the Rule 12(b)(6) standard.

Finally, reliance on an agency theory to contend Trostle is the key in assessing authority, whether apparent or implied, misses the mark because the Contracts are between Crown and Pneu-Mech 2.0. (*Id.* at ¶¶67-70, 77; Doc. No. 1-8; Doc. No. 1-14; Doc. No. 1-15). Still, apparent agency arises when "a person by words or conduct represents or permits it to be represented that another person is his agent when no actual agency exists." *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C.App. 203, 217, 552 S.E.2d 686, 695 (2001) (internal citations omitted)). The key in binding a

principal under this theory hinges on reliance by the third party. *Id.*[5]  The facts set forth in the *Complaint* and its attachments plausibly demonstrate Crown understood it contracted with Pneu-Mech 2.0 and raises a right to relief for Crown well above speculation.  In any event, dismissal of Count Three is improper as Crown is entitled to the benefit of discovery.  *See, e.g.*, *The In Porters, S.A. v. Hanes Printable, Inc.*, 663 F. Supp. 494 (M.D.N.C. 1987).[6]

**B. Crown Plausibly States Two Counts of Negligence Against Pneu-Mech 2.0 (Counts One and Two).**

This Court has recently stated, "[f]or a negligence complaint [t]o withstand a motion to dismiss it must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." *A. G. v. City of Statesville*, No. 5:20-CV-00165-KDB-DCK, 2021 U.S. Dist. LEXIS 116779, *8 (W.D.N.C Jun. 23, 2021) (Bell, J.) (internal citations omitted) (applying North Carolina law).  In Counts One and Two, Crown alleges Pneu-Mech 2.0 was negligent in causing physical damage to Crown's property.

For both counts, Crown alleges Pneu-Mech 2.0 had a duty to act with reasonable and ordinary care, (Doc. No. 1, ¶¶107, 114), Pneu-Mech 2.0 breached its duty by damaging Crown's property, (*id.* at ¶¶108-110, 115-118), and, as a direct and proximate result, Crown suffered the damages detailed in the *Complaint*.  (*Id.* at ¶¶111, 118).  Taking these well-pled allegations as true, Crown has asserted facts sufficient to withstand a motion to dismiss.

---

[5]  Moving Defendants argue the *Complaint* does not detail what Trostle "believed."  (*See, e.g.*, Doc. No. 38, at p. 9). What Trostle believed is irrelevant - what Crown believed is dispositive.

[6]  Arguments concerning Pneu-Mech 2.0's exercise of control over Trostle and lack of "ratification" of the Contracts do not apply to the facts or claims in the *Complaint* and are nothing more than a distraction.  (*See* Doc. No. 38, at pp. 9-11).

### 1. *Agency defenses are still not proper 12(b)(6) considerations.*

Rather than dispute whether Crown properly stated its negligence claims under Rule 12(b)(6), Moving Defendants contend any "duty" owed to Crown arose from the contracts to which Pneu-Mech 2.0 was not a party because Trostle was not a Pneu-Mech 2.0 agent at the times of contracting. (Doc. No. 38, at p. 17). According to Moving Defendants, Pneu-Mech 3.0 is responsible for any negligent conduct, not Pneu-Mech 2.0. (*Id.* at p. 17). As discussed above, Trostle's agency status is irrelevant at this stage, particularly given the extensive facts pled demonstrating Pneu-Mech 2.0's extensive relationships with Crown. And Moving Defendants' position disregards Crown's direct allegations that "Pneu-Mech [2.0] and its subcontractors" damaged Crown's property. (Doc. No. 1, ¶75; *see also id*. at ¶¶108-11, 115-18). Moving Defendants may very well develop their agency defense as the case proceeds, should it apply, but it is irrelevant to whether Crown has plausibly stated that Pneu-Mech 2.0 took negligent action.

### 2. *Crown has a right to pursue both its negligence and contract claims.*

Moving Defendants also argue Crown cannot tie a negligence claim to what they characterize as purely contractual duties. (Doc. No. 38, at p. 17). That is, Moving Defendants claim Pneu-Mech 3.0 is responsible for any negligent conduct but, if the Court does not buy that argument, Pneu-Mech 2.0 contends any duty it owed Crown arose from the Contracts. On the contrary, Crown asserts Pneu-Mech 2.0 was negligent in damaging the Crown Facility irrespective of any contractual obligation. (Doc. No. 1, ¶¶108-110, 115-18). Indeed, Crown expressly alleges "Pneu-Mech had a legal duty to act with reasonable and ordinary care when working in the Crown Facility and to not damage Crown's property." (*Id*. at ¶¶107, 114). As pled, Pneu-Mech 2.0's duties in Counts One and Two arose from common law, not the Contracts.

In as much as Moving Defendants argue Crown's negligence claims are supplanted by its contract claim, any pleading tension is permitted. To this end, Federal Rule of Civil Procedure 8(d)(2) allows Crown to plead alternative causes of actions. F.R.C.P. 8(d)(2); *City of Burlington v. Piedmont Olsen Hensley, Inc.*, No. 2:93CV00473, 1995 U.S. Dist. LEXIS 15419 (M.D.N.C. Sep. 8, 1995) (denying at summary judgment stage dismissal of "parallel" contract and negligence claims); *Duke Univ. v. Leo A. Daly Co.*, No. 1:91CV00238, 1992 U.S. Dist. LEXIS 22557 (M.D.N.C. Aug. 27, 1992) (same at pleading stage). Thus, Crown has a right to state both negligence and contract claims at this early stage.

Moving Defendants, on the other hand, have no right to take impermissible contradictory positions to support their dismissal argument. That is, Moving Defendants argue there are no contracts to which Pneu-Mech 2.0 is bound, so there are no "contractual duties." (Doc. No. 38, at pp. 6-11). Then, they argue Pneu-Mech 2.0 cannot be negligent because any "duties" flow from the Contracts. (*Id.* at p. 17). Setting aside Crown's well-pleaded allegations and right to plead alternative claims, to preclude a negligence claim on the basis a duty arises from contract, it follows that the duty must be specifically provided for in the contract. But Pneu-Mech 2.0 has thus far denied it had any contracts with Crown, never mind that it fails to establish how its duty to use ordinary and reasonable care while in the Crown Facility specifically arises from the Contracts it disavows. Pneu-Mech 2.0 cannot, at the pleading stage, shirk responsibility on the basis a contract forecloses such tort liability when Pneu-Mech 2.0 denies any contractual relationship. Moving Defendants' double-talk and request for the Court to spin allegations in their favor and to Crown's detriment is contrary to the Rule 12(b)(6) standard.

Finally, beyond the pleading liberties extended to Crown, North Carolina law supports pursuit of these two well-pleaded claims. Generally, courts rely on the principle that a party cannot

recover in tort for actions which arise from a contract breach. *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018) (applying North Carolina law).  The rationale for this principle lies in the economic loss rule: a party cannot recover in tort for purely economic loss stemming from a contract breach.  *Id.*  North Carolina, however, carves out exceptions to this general rule: a "promisee" can sue in negligence when damage "occurs 'to property of the promisee other than the property which was the subject of the contract[.]' "  *Mason v. Yontz*, 102 N.C.App. 817, 818, 403 S.E.2d 536, 538 (1991) (quoting *N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 82, 240 S.E.2d 345, 350-51 (1978)).

Here, Crown's *Complaint* makes clear the distinction between its Breach of Contract claim (Count Three) and its claims sounding in Negligence (Counts One and Two).  (*Compare* Doc. No. 1, ¶¶125-36 *with id.* at ¶¶106-19).  In its Contract claim, Crown explains Pneu-Mech 2.0 breached several enumerated terms of the Contracts.  (*Id.* at ¶125).  The Negligence claims go beyond this. (*Id.* at ¶¶106-19).  Based on these allegations, taken as true, Crown can pursue negligence because it sustained damage to property other than the property which was the subject of the Contracts.  In the end, resolution of whether Crown's claims should proceed are better suited for summary judgment or trial, and dismissal at this stage should be denied.  *See, e.g.*, *Duke Univ.*, 1992 U.S. Dist. LEXIS 22557 (denying dismissal of contract and negligence claims at pleading stage).

### C.  Crown has Stated a Claim for Breach of Fiduciary Duty Against Brady and Tucker (Count Four).

"To plead a breach of fiduciary duty claim, a plaintiff must allege facts to show that: (1) the defendant owed the plaintiff a fiduciary duty of care, (2) the defendant violated that fiduciary duty of care, and (3) this breach of duty proximately caused injury to the plaintiff."  *Noble Bottling, LLC v. Sherman*, No. 3:22-CV-00083-KDB-DCK, 2023 WL 4535468, at *5 (W.D.N.C. July 13, 2023) (citing *Farndale Co., LLC v. Gibellini*, 176 N.C.App. 60, 68, 628 S.E.2d 15, 20 (2006)).  In

Count Four, Crown alleges Brady and Tucker breached fiduciary duties owed to Crown.  (Doc. No. 1, ¶¶125-36).

Although directors seldom owe a fiduciary duty to creditors, a duty is created in law when the company is essentially closing up shop.  *Keener Lumber Co. v. Perry*, 149 N.C.App. 19, 30, 560 S.E.2d 817, 824-825 (2002); *General Fid. Ins. Co. v. WFT, Inc.*, 269 N.C.App. 181, 186-87, 837 S.E.2d 551, 557 (2020) (finding corporation was "winding up" because, among other things, owner created new entity to continue old company's operations, old company became insolvent when new entity formed, and old company stopped operating).  In other words, a corporation's creditor who "has sustained an identifiable loss peculiar and personal to [the creditor] by reason of the fraud or negligent mismanagement of the corporation's business by its directors, [] has a cause of action against the directors for the recovery of his personal loss[.]" *Ford Motor Credit Co. v. Minges*, 473 F.2d 918, 920-21 (4th Cir. 1973) (applying North Carolina law).

Brady and Tucker's fiduciary duty stems from their position as directors of Crown's debtor, Pneu-Mech 3.0.  (*See* Doc. No. 1, ¶¶31, 126; *id.* at ¶23).  Their duty arose when, as Pneu-Mech 3.0 directors, they declared the Pneu-Mech 3.0 note in default, evicted Pneu-Mech 3.0, and effectively caused Pneu-Mech 3.0 to stop operating, only to then transfer its assets to themselves and Pneu-Mech 4.0.  (*Id.* at ¶¶31, 43-44, 126-31).  They took these actions despite knowing, among other things, Pneu-Mech 3.0 owed Crown substantial money, Pneu-Mech 3.0 was insolvent and unable to pay Crown, their actions would inure to their personal benefit and to Crown's detriment, and they would force the wind-up of Pneu-Mech 3.0's business. (*Id.*, ¶¶127-131); *see Phillips & Jordan, Inc. v. Bostic*, 2016 NCBC LEXIS 97, at *14-15 (N.C. Sup. Ct. Dec. 9, 2016) (directors breached fiduciary duty owed to creditors by, among other things, paying themselves from the entity's bank account); *Old Battleground Props. v. Cent. Carolina Surgical Eye Assocs., P.A.*, 2015

NCBC 18, at *45 (N.C. Sup. Ct. 2015) (directors breached fiduciary duty owed to creditors where various entities were winding up, and directors paid affiliated entities and family members); *Fleming v. Horner*, 2022 NCBC 26, at *72-80 (N.C. Sup. Ct. 2022) (director breached fiduciary duty where company was winding up and director used company money to pay himself and affiliated companies).

Further still, a director breaches his fiduciary duty when he uses his "intimate knowledge of the corporate affairs" for "his own benefits and to the detriment of creditors" because the director "must treat all creditors[] equally by making any payments to such creditors on a pro rata basis." *Associated Hardwoods, Inc. v. Lail*, 2018 NCBC LEXIS 81, at *13 (N.C. Sup. Ct. Aug. 6, 2018). As purported Pneu-Mech 3.0 "creditors" themselves, Brady and Tucker ensured they and their other companies were paid, took money off the top, and treated Crown as anything but an equal, (Doc. No. 1, ¶¶43-44, 134), all at a time when they both knew of the obligations Pneu-Mech 3.0 owed Crown. (*See, e.g.*, *id.* at ¶36). Brady and Tucker were intimately aware of Pneu-Mech 3.0's precarious financial condition and used this knowledge to benefit themselves, to Crown's detriment. (*Id.* at ¶¶127-32).

Ultimately, whether corporate directors owe a fiduciary duty to a corporate creditor presents a "complex analysis" requiring a review of evidence and weighing several factors, including insolvency inquiries, plans for future business, liquidation of assets, and whether good faith business operations continued. *USA Trouser, S.A. de C.V. v. Andrews*, 612 F. App'x 158, 160 (4th Cir. 2015) (citing *Keener*, 149 N.C. at 825). When enough evidence is presented to show the existence of a fiduciary duty, it becomes a jury question. *Ibid.*

Despite controlling authority, Moving Defendants assert "the claim that a member of the board of directors of a debtor company owes a fiduciary duty of any kind to a separate, creditor

entity is absolutely preposterous." (Doc. No. 38, at pp. 17-18). Setting aside Moving Defendants' characterization of more than 50 years of authority as "absolutely preposterous," North Carolina law ***does*** permit a creditor to pursue a fiduciary duty claim against a debtor-entity director in certain circumstances, including where the entity is dissolving or winding up.

The authority Moving Defendants cite to support their "preposterous" argument is misplaced. (*Id.* at p. 18). To this end, they first cite *Dallaire v. Bank of Am, N.A.*, 367 N.C. 363, 760 S.E.2d 263 (2014) for the general principle the "mere existence" of a debtor-creditor relationship does not create a fiduciary duty. *Dallaire* has no application whatsoever in this case because it merely addressed statements of a loan officer over a residential mortgage transaction with buyers in an arm's length transaction. Moving Defendants then cite *Branch Banking & Tr. Co. v. Thompson*, 107 N.C.App. 53, 515 S.E.2d 727 (1992), standing for the same principle, but in a commercial loan default setting. Neither case addresses the relevant principal that directors owe a fiduciary obligation to a creditor under circumstances like those present here.

Finally on this point, Moving Defendants look to *Green v. Freeman*, 367 N.C. 136, 749 S.E.2d 262 (2013) to argue Crown has not alleged a "special relationship" with Brady and Tucker "that would justify extending their fiduciary duties to Crown[,]" so the claim fails. (Doc. No. 38, at p. 18). The *Green* court dealt with alleged shareholders and creditors of a corporation pursuing an individual action instead of a derivative suit and found the claims had to proceed derivatively. *Green*, 367 N.C. at 141-44, 749 S.E.2d 267-68. *Green* addressed a factual and legal scenario that is in no way analogous to this case.

Moving Defendants' final argument to dismiss Count Four relates to standing, arguing Crown cannot pursue Brady and Tucker for breaching a fiduciary duty they owed to Pneu-Mech

3.0, not Crown. This is again misdirection because the duty at issue is the duty arising under North Carolina law that Brady and Tucker owed directly to Crown, not to Pneu-Mech 3.0.

In all, the *Complaint* plausibly alleges Brady and Tucker breached the fiduciary duty they owed to Crown. And given the Fourth Circuit's recognition that whether a director owes a creditor of a debtor-corporation a fiduciary duty is a "complex analysis," dismissing Count Four now would be improper. Thus, the Court should deny Moving Defendants' dismissal request.

### D. Crown's Allegations Plausibly State Claims Under the NCFTA (Counts Ten and Eleven).

The final two claims raised in the *Motion* are for violating North Carolina's fraudulent transfer statute: first, a claim against Brady, Tucker, Pneu-Mech 2.0, and Pneu-Mech 3.0 related to transfers from the entities to Brady and Tucker. (Doc. No. 1, ¶¶204-11 (Count Ten)). Second, a claim against Brady, Tucker, Brawtus Mgmt., and all four of the Pneu-Mech iterations. (*Id.* at ¶¶213-21 (Count Eleven)).

The North Carolina Uniform Voidable Transactions Act, §§ 39-23.1 to 39-23.12 ("NCFTA"), "allows a creditor to bring a civil action against a debtor for certain transfers made by the debtor." *Wirth v. Sunpath, LLC*, 2017 NCBC LEXIS 84, *6 (N.C. Super. Ct. Sept. 14, 2017). "In order to avoid a fraudulent transfer under [the NCFTA], a plaintiff must establish the following: (1) a debtor made a transfer or incurred an obligation and (2) with actual intent to hinder, delay, or defraud a creditor *or* without receiving a reasonably equivalent value in exchange," as well as debtor insolvency if under N.C. § 39.23.5. *Westbrook v. Parker*, 581 B.R. 468, 480 (Bankr. E.D.N.C. 2018) (emphasis added). A fraudulent transfer can thus be either actual or constructive.

" 'Constructively fraudulent transfers, in contrast to those based on actual fraud, focus on the effect the transfer had on the debtor's financial condition without regard for the debtor's state of mind or intentions.'" *Thimbler, Inc. v. Unique Sols. Design, Ltd.*, No. 5:12-CV-695-BR, 2013

U.S. Dist. LEXIS 129912, *24 (E.D.N.C. Sep. 11, 2013) (quoting *In re Roszkowski*, 494 B.R. 671, 678 (Bankr. E.D.N.C. 2013)). Thus, the inquiry under the statute for constructive fraudulent transfers looks at reasonably equivalent value, while the actual fraudulent transfer inquiry looks at intent in making the transfer. Claims for actual fraudulent transfers must generally satisfy Rule 9(b). *Angell v. BER Care, Inc.*, 409 B.R. 737, 756 (Bankr. E.D.N.C. 2009). To meet this pleading standard, "identification of the parties, dates, and property at issue, details regarding the transfer transaction, and other material facts" is enough. *Parker*, 581 B.R. at 480.

As for the facts supporting Count Ten, Crown alleged its debtors, Pneu-Mech 2.0 and 3.0, transferred assets, in the form of cash, to Brady and Tucker with the intent to defraud Crown and without receiving reasonably equivalent value in exchange. (Doc. No. 1., ¶¶33-34, 203-08). Crown also alleged the undisclosed transfers were, among other things, made to Brady and Tucker as insiders and at a time when Pneu-Mech 2.0 and 3.0 were insolvent and left with insufficient assets to operate. (*Id.* at ¶¶45-46, 207, 209). Crown also alleged cash transfers to Brady and Tucker occurred as part of the assets transferred in 2018 from Pneu-Mech 2.0 to 3.0 while others were made when Pneu-Mech 3.0 transferred assets in 2022 to Pneu-Mech 4.0. (*Id.* at ¶¶37, 44).

Similarly, the alleged facts supporting Count Eleven include: Pneu-Mech 2.0 and 3.0 transferred assets to Brawtus Mgmt., Pneu-Mech 1.0, and Pneu-Mech 4.0 with the intent to defraud Crown and without receiving reasonably equivalent value in exchange. (*Id.* at ¶¶33-34, 54-55, 213-17). The fraudulently transferred assets included cash, equipment, accounts receivables, intellectual property, and customers. (*Id.* at ¶¶44, 217(a)-(k)). These transfers were also undisclosed, and made to insiders when Pneu-Mech 2.0 and 3.0 were insolvent, facing suit and left without assets to operate. (*Id.* at ¶¶216, 218). Brady and Tucker timed the transfers as part of the assets transferred in 2022 to Pneu-Mech 4.0. (*Id.* at ¶¶44, 54-55).

Considering the many facts alleged, Crown has fairly identified the parties, dates, and property at issue, provided details about the transactions, and included other material facts, all without the benefit of discovery. Put differently, Crown's *Complaint* contains detailed facts to support each legal element of the claims in Counts Ten and Eleven and, those facts taken together as true, present plausible claims for relief supported by law.

Despite the extensive details Crown included in its *Complaint*, in the final section of the *Motion*,[7] Moving Defendants contend Crown "fails to narrow the field and clarify which [transfers] it believes are fraudulent," profess needed "clarification as to which transaction is applicable[,]" and proclaim a "constitutional right to have notice of claims," thus mandating Crown to identify "every single transaction" at the pleading stage. (*Motion*, pp. 19-22). As demonstrated, Crown's well-pleaded *Complaint* teems with facts sufficient to permit Moving Defendants to answer.

Nonetheless, in support of their plea for "clarification," Moving Defendants devote considerable attention to arguing the timing of when Crown became a creditor of any Moving Defendant under the NCFTA. (*Id.*, pp. 20-21).[8] This is yet another misguided argument because § 39-23.4, titled "Transfer or obligation voidable as to present or future creditors," applies no

---

[7] Moving Defendants begin their arguments revealing their misunderstanding of the NCFTA. In this regard, they incorrectly argue Crown must show both fraudulent intent and reasonably equivalent value to state a "facially plausible claim for relief" under the NCFTA. (Doc. No. 38, at p. 19). A transfer can be fraudulent if made "[w]ith intent to hinder, delay, or defraud *or* "[w]ithout receiving a reasonably equivalent value[.]" N.C. § 39.23.4(a)(1)-(2). And intent is unnecessary under Section 5 of the NCFTA. (Doc. No. 1., ¶¶210, 219; *also see* N.C. § 39.23.5(a)).

[8] Moving Defendants also profess confusion about which of them is alleged to be a Crown "debtor." Crown identified debtors in its *Complaint*. (Doc. No. 1, ¶¶204, 213)

matter if "the creditor's claim arose before or after the transfer" at issue. N.C. Gen. Stat. § 39.23-4.[9]

Finally, Moving Defendants vacillate from complaining Crown's *Complaint* lacks specificity to put them on notice to arguing Crown provided more facts than "the short and plain statement it is required to provide." (*Motion*, p. 21). Whether viewed through the lens of Rule 8 (short and plain statement of the grounds for relief) or Rule 9 (particularity pleading), Crown need not provide in its *Complaint* a perfect, omniscient pre-discovery recitation of facts. In any case, Crown has, by any measure, pled facts sufficient to support plausible claims under the NCFTA. Moving Defendants' *Motion* should be overruled.

### E. Crown has Pled Facts Sufficient to Justify Disregarding Certain Corporate Forms. (Counts Twelve and Thirteen).

This court has held that North Carolina law permits a party to disregard a corporate entity and treat an individual liable as one and the same with the corporate entity where the corporation is operated as the mere instrumentality or alter ego of the individual. *Al Hamra Trading Est. v. Diamondback Tactical, LLLP*, No. 1:12cv373, 2013 U.S. Dist. LEXIS 113321, *13-15 (W.D.N.C. July 9, 2013) (citing *Atl. Tobacco Co. v. Honeycutt*, 101 N.C.App. 160, 164 398 S.E.2d 641, 643 (1990)). According to the *Diamondback Tactical* court, "[t]he North Carolina Supreme Court has set forth three elements for asserting such a claim: (1) the complete control and domination over the corporate entity by the individual; (2) the use of that control and domination by the individual to perpetrate a fraud or wrong; and (3) the control and domination proximately causes the injury or loss at issue." *Diamondback Tactical, LLLP*, 2013 U.S. Dist. LEXIS 113321, at *13-15.

---

[9]  Moving Defendants recirculate the failed argument that Pneu-Mech 2.0 had no contracts with Crown when the transfers occurred. (Doc. No. 38, at p. 20-21) For the reasons already discussed, Crown has properly alleged a claim for breach of the contract against Pneu-Mech 2.0.

The Fourth Circuit looks to many factors to assess if a plaintiff can rely on what is known as the instrumentality rule, including: insolvency; siphoning of funds; failure to observe corporate formalities and maintain proper corporate records; non-functioning of officers; control by a dominant stockholder; overlap in ownership, officers, directors, and other personnel; and common office space. *De Witt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976). No single factor is dispositive, but the factors are instead applied "flexibly to avoid injustice." *Bittle-Lindsey v. Seegars Fence Co.*, No. 4:19-CV-40-BO, 2020 U.S. Dist. LEXIS 232903, *8 (E.D.N.C. Dec. 9, 2020). "In applying these factors a court must focus on reality and not form, [on] how the corporation operated and the individual defendant's relationship to that operation." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013) (internal citations omitted); *De Witt*, 540 F.2d at 685; *Est. of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 578, 748 S.E.2d 568 (2013). A motion to dismiss is generally the improper device to dispose of a veil piercing claim since discovery is necessary for a plaintiff to develop its claim. *See, e.g.*, *Bear Hollow, LLC v. Moberk, LLC*, No. 5:05CV210, 2006 U.S. Dist. LEXIS 36780 (W.D.N.C. June 2, 2006) (Voorhees, C.J.).

In denying a defendant's motion to dismiss a veil piercing claim, the *Diamondback Tactical* court found the complaint at issue included factual allegations supporting the necessary elements, reasoning the pleading "alleges that [d]efendant . . . exercised ownership, control, and domination over [the corporate entity] and disregarded its corporate form in order to perpetuate the fraudulent transfer of assets and personally enrich himself, all while using the corporate form to shield himself from personal liability. In addition, the [c]omplaint alleges that this control and domination exerted by [d]efendant . . . caused the injury at issue." *Diamondback Tactical, LLLP,*

2013 U.S. Dist. LEXIS 113321, at *14-15. The *Diamondback Tactical* court found, "[t]his is all that is required to state a claim under North Carolina law." *Id.*

Just as in *Diamondback Tactical*, Crown's *Complaint* alleges Brady and Tucker exercised ownership, control, and domination over the Brady-Tucker Entities, including Pneu-Mech 3.0, and disregarded their corporate forms to perpetuate the fraudulent transfer of assets and personally enrich themselves, all while using the corporate forms to shield themselves from personal liability. (*See, e.g.*, Doc. No. 1, ¶¶38, 41, 86-105, 187, 197, 237). And the Crown *Complaint* alleges Brady's and Tucker's control and domination caused the injury at issue. (*Id.* at ¶¶105, 233). Thus, Crown has alleged all that is needed to state a plausible claim under North Carolina law for disregarding corporate forms, and the Court's consideration of Moving Defendants' request to dismiss Counts Twelve and Thirteen can end here.

Still undeterred by the thorough, well-pleaded facts set forth in the *Complaint*, Moving Defendants assert the only relevant corporate form inquiry is into Pneu-Mech 3.0. (*See, e.g.*, Doc. No. 38, at p. 14 ("[t]he most glaringly obvious problem with Crown's veil-piercing attempt against Brady and Tucker is that [Crown] has not alleged that Brady or Tucker were ever shareholders in [Pneu-Mech 3.0]")). Moving Defendants take this position in support of the fiction that, "because Brady, Tucker and the Brady-Tucker Entities are not shareholders of [Pneu-Mech 3.0], the Court should not pierce the veil and hold these persons liable." (*Id.* at p. 12). In fact, Moving Defendants devote considerable effort to this argument, which is premised on the *Complaint* not alleging Brady and Tucker were Pneu-Mech 3.0 "shareholders." (*Id.* at pp. 12-14). But what Moving Defendants do not tell the Court is that Crown alleged many times Brady and Tucker owned Pneu-Mech 3.0:

- "Although Andrews and Trostle were identified on paper as Pneu-Mech 3.0 owners, **Brady and Tucker were de facto owners of the company.**" (Doc. No. 1, ¶38 (emphasis added));

22

- "As the Pneu-Mech 3.0 controlling Directors and Pneu-Mech 3.0's lender and landlord, and **de facto owners,** Brady and Tucker, required Wenker to present any offer to them." (*Id.* at ¶41 (emphasis added));

- "There was continuity between Pneu-Mech 2.0 and Pneu-Mech 3.0 of ownership in that Brady and Tucker directly or through Pneu-Mech 1.0 owned Pneu-Mech 2.0, and **Brady and Tucker either directly or through Pneu-Mech 1.0 were the de facto owners of Pneu-Mech 3.0**." (*Id.* at ¶187 (emphasis added));

- "There is continuity of ownership between Pneu-Mech 3.0 and Pneu-Mech 4.0 in that **Brady and Tucker were, on information and belief, the de facto owners of Pneu-Mech 3.0**[.]" (*Id.* at ¶197 (emphasis added)); and

- "The Brady-Tucker Entities[, which includes Pneu-Mech 3.0, ] all operate from the same location. The entities have the same chief financial officer (Boggs) and, on information and belief, **the same actual or de facto owners (Brady and Tucker)**." (*Id.* at ¶237 (emphasis added)).

Moving Defendants' failure to even acknowledge allegations relevant to Counts Twelve and Thirteen is more justification for denying their *Motion*.

As their final argument, Moving Defendants assert, without citation to any authority, that Crown's veil piercing and alter ego claims are subject to the heightened pleading requirements of Rule 9(b). (Doc. No. 38, at p. 14). This position is wrong. Counts Twelve and Thirteen are not claims "specifically alleging fraud" but set forth the basis necessary to trigger equitable remedies to prevent fraud or injustice. Because of this, Rule 9(b) has no application to Counts Twelve and Thirteen. *See, e.g.*, *Strawbridge v. Sugar Mt. Resort, Inc.*, 243 F. Supp. 2d 472, 476 (W.D.N.C. 2003) (holding Rule 9(b) heightened pleading requirements do not apply to a veil piercing claim because it "is not a claim for the tort of fraud."). With this in mind, the rest of Moving Defendants' arguments fail.

## III.    **CONCLUSION**.

Moving Defendants' *Motion* mirrors their behavior that triggered this dispute in the first place. Through misdirection, omissions, and selective reading, they attempt to hide in court behind

the same straw transactions they hoped to shelter them from business obligations. While operating the same business at the same location with the same employees, same web page, and same equipment, they ask creditors, like Crown, to look solely to the empty corporate shell entities they left behind. Granting Moving Defendants' *Motion* effectively endorses these maneuvers, and this request must be denied. Thus, Crown asks this Court to deny Moving Defendants' *Motion*.

Respectfully submitted, this 18th day of September 2023.

*/s/ David Blue*
Fred M. Wood, Jr., NC Bar No. 18437
Evan M. Sauda, NC Bar No. 32915
David Blue, NC Bar No. 57829
Nelson Mullins Riley & Scarborough, LLP
301 South College St., 23rd Floor
Charlotte, North Carolina 28202
T: (704) 417-3000
F: (704) 377-4814
Email: fred.wood@nelsonmullins.com
Email: evan.sauda@nelsonmullins.com
Email: david.blue@nelsonmullins.com

and

Toby K. Henderson (0071378)
(*pro hac vice*)
Joanna W. Gisel (0100701)
(*pro hac vice*)
SEBALY SHILLITO + DYER
A Legal Professional Association
40 North Main Street
1900 Stratacache Tower
Dayton, Ohio 45423
937-222-2500 Telephone
937-222-6554 Facsimile
thenderson@ssdlaw.com
jgisel@ssdlaw.com
*Attorneys for Plaintiff*
*Crown Equipment Corporation*

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2023 a copy of the foregoing was filed electronically through the Court's ECF system and served on all counsel of record.

<div style="margin-left:40%">

*/s/ David Blue*

Fred M. Wood, Jr., NC Bar No. 18437
Evan M. Sauda, NC Bar No. 32915
David Blue, NC Bar No. 57829
Nelson Mullins Riley & Scarborough, LLP
301 South College St., 23rd Floor
Charlotte, North Carolina 28202
T: (704) 417-3000
F: (704) 377-4814
Email: fred.wood@nelsonmullins.com
Email: evan.sauda@nelsonmullins.com
Email: david.blue@nelsonmullins.com

</div>