IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | | |
|---|---|---|
| CROWN EQUIPMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:23-cv-00059-KDB-DCK |
| | ) | |
| DAVID BRADY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Defendants, David Brady, William Tucker, Brawtus Holding Company, Inc., Brawtus Management Company, LLC, and Pneu-Mech Dissolution LLC, formerly known as Pneu-Mech Systems Manufacturing, LLC (hereafter referred to as "Pneu-Mech LLC" or "the LLC"), hereby submit their reply to Plaintiff's Memorandum in Opposition to the Motion to Dismiss (the "Memo in Opposition"). Plaintiff argues in its Memo in Opposition that it has provided sufficiently detailed factual allegations to make it past the pleading stage. While Defendants agree that Crown has provided a fair amount of factual detail in parts of its complaint (the "Complaint"), Crown fundamentally misses the point of Defendants' motion to dismiss—that some of its specific factual allegations, if true, present an explicit basis upon which Crown is not entitled to the relief it requests, and that other essential factual matters are not explicitly addressed in the Complaint. In other words, there is no point in going through a lengthy and expensive discovery and trial process if this Court can rule right now, as a matter of law, that the things Crown alleges (or has not alleged) necessarily defeat or fall short of the causes of action that it presents as bases for relief. Moreover, not all the things that Crown alleges are facts—

1

many of the statements the Complaint are merely conclusory allegations that either contradict Crown's claims, fail to identify any relevant actions or circumstances, or defy common sense. No amount of bombastic rhetoric can alter what Crown fundamentally alleges: that Brady and Tucker sold their business in a traditional seller-financed asset purchase well before the contracts that are the subject of this dispute (the "Contracts") arose, and that several years before the alleged breach of those Contracts Brady and Tucker became secured creditors, as sellers financing the sale of their business often do. Therefore, Crown cannot escape the simple conclusion to which its own pleadings lead— the "fraudulent scheme" alleged is, in reality, a series of ordinary, lawful, and unremarkable transactions and business decisions. Further, Crown has still not presented facts that would tend to show the existence of the agency relationships necessary for Defendants to be bound by the Contracts or the fact that Defendants were involved on their own behalf in the formation or performance of the Contracts, which Crown formed with Pneu-Mech Systems Manufacturing, Inc. ("Pneu-Mech Inc." or "the Corporation"). Given this, and further considering the specific factual allegations that, if proven, preclude Defendants from being bound by the Contracts allegedly breached or otherwise having a duty at law to Crown, the Court should dismiss this case with prejudice as to these Defendants.

## II. FACTS

Without regurgitating the lengthy discussion of the factual allegations that both sides have provided in previous briefing, it may prove helpful to the Court to focus on a select few allegations detailing the unremarkable business transactions described in the Complaint. The Complaint explicitly describes a typical seller-financed sale of the "Pneu-Mech" business from Pneu-Mech LLC and its owners, David Brady and William Tucker, to Pneu-Mech Inc. and its owners, Jerry Trostle and James Andrews. Compl. ¶ 27-29. This sale was carried out between the

two entities and their respective owners. *Id.* The Complaint alleges that Brady and Tucker transferred all the LLC's assets by this sale, including not just tangible property, like equipment, but intangible contractual relationships, such as employment agreements. In other words, once the sale was complete, the assets all became the property of a separate legal entity, the Corporation. Compl. ¶ 33. In consideration of the asset sale, Brady and Tucker received a promissory note and a complete security interest in all the property transferred, since they did not receive the sale price up front at the time of the sale of their business. Compl. ¶ 29.

Several months later, the owners of Pneu-Mech Inc. began discussing the first project that is a subject of this dispute. Employees of the Corporation—and most significantly, the new owner, Trostle—first sent a proposal to Crown describing an elaborate project to construct a powder coating system (the "Engineering Contract") and calling for Crown to accept it by signing it. Compl. ¶ 69, p. 114. Crown has not provided a signed contract memorializing its assent to the Corporation's proposal, but it has provided a purchase order Crown sent after the first of the Contracts was formed, around the time Crown began making the payments described in the Engineering Contract proposal. Compl., p. 149-55. Crown paid the Corporation large amounts of money over a period of time in response to invoices from the Corporation, all of which bear the name "Pneu-Mech Systems Mfg Inc." Compl., p. 149-55. Nearly four and a half years later, the system that the Corporation built allegedly failed and damaged Crown's facilities. Compl., ¶ ¶ 1, 75. Having knowingly paid the Corporation on numerous occasions, and having knowingly dealt with the Corporation to design and install the equipment that is the subject of the Contracts, Crown now suddenly seeks money from a plethora of other people with which it knew, at the time of the alleged breach, that it had no dealings.

# III. ARGUMENT

Crown has failed to state a claim upon which relief can be granted for two simple reasons: either its allegations do not allege sufficient facts to make its various claims plausible as to the Defendants, or the specific facts alleged necessarily defeat those claims. Both of these criteria are sufficient to defeat a claim at the 12(b)(6) stage, and Crown gives no explanation as to why it would be wrong to say that a motion predicated on a failure to state a claim for relief can succeed in dismissing a case if a plaintiff says too much—so much that the plaintiff has pled facts which demonstrate that it has no claim. The facts pled must constitute a *prima facie* case of the various claims the plaintiff suggests that they support, regardless of how verbose—or needlessly complex—the facts happen to be. This is blackletter law. *See, e.g., Carty v. Westport Homes of N.C., Inc.*, 472 F. App'x 255, 261 (4th Cir. 2012) (dismissing a complaint because the facts alleged and the documents attached necessarily defeated the claims). Indeed, there can be no clearer rule that "dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims." *Kennedy v. Caliber Home Loans (In re Kennedy)*, Nos. 17-03101-5-JNC, 18-00114-5-JNC, 2019 Bankr. LEXIS 1400, at *8 (Bankr. E.D.N.C. May 3, 2019). And in all respects, the *Iqbal-Twombly* standard of review cautions that all factual allegations must be "plausible," meaning that the "factual allegations must be enough to raise a right to relief above the speculative level," and are insufficient if they "merely create[] a suspicion of a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that factual allegations that competitors all set the same pricing for their services, coupled with an unspecific, conclusory allegation of concerted action, were insufficient to support an antitrust

claim). It is not enough if the allegations "get[] the complaint close to stating a claim, but without some further factual enhancement [they] stop[] short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (quoting Fed. R. Civ. Pro. 8). In making this evaluation, the Court is not a blank slate, and should "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Given these rules, Crown has failed to state a claim for which this Court can grant relief, and the full-throated protest Crown makes in its Memo in Opposition does not change this truth. First, the allegations Crown makes necessarily defeat their contract and veil piercing claims because they establish that no agent of Defendants contracted with Crown, which is a necessary prerequisite to make a *prima facie* case for these counts. Second, Crown has not recited a plausible claim for negligence, both because no agent of Defendants dealt with Crown when it entered the Contracts with the Corporation and because nothing Crown alleges gives rise to an independent duty at law that Defendants breached. Third, no breach of fiduciary duty occurred, since Brady and Tucker had every right as secured creditors to repossess the business assets they had sold years before as part of a traditional seller-financed transaction, and they had no "duty" to give any consideration and place on an equal footing an inferior, unsecured creditor such as Crown. And fourth, that secured transaction and its incidents are not fraudulent transfers as a matter of law, and even if they were, a fraudulent transfer does not represent an independent cause of action entitling Crown to any money damages or otherwise justifying this Court's exercise of supplemental jurisdiction. Therefore, this Court should reject the reasoning presented in Crown's Memo in Opposition and grant Defendants' motion to dismiss in full.

### A. Crown's Allegations Crown Makes Conclusively Demonstrate that No Agent of Brady, Tucker, or Their Entities Bound These Defendants to the Contracts or Otherwise Made Them Susceptible to Veil Piercing.

Crown has conclusively pled facts establishing as a matter of law that Brady, Tucker, and their legal entities should have the Complaint dismissed against them. Crown contends that agency is irrelevant, and yet the law absolutely requires an agency relationship to bind a legal entity to a contractual obligation as pled in the Complaint. Moreover, Crown continues to overlook a critical aspect of the veil piercing or "instrumentality" claims it brings: it can pierce the veil and reach the assets of Brady, Tucker, and their legal entities *only if* these Defendants or their legal entities contracted with Crown—that is, only if Brady, Tucker, or their entities owned the legal person with which Crown contracted. Because the facts pled conclusively demonstrate that the law of agency defeats these claims, and because Crown can only pierce the veil as to owners of a potentially liable entity, this Court should dismiss the entire case against these Defendants.

#### 1. Based on the law of agency, none of these Defendants could have been contractually obligated to Crown.

Crown's Memo in Opposition does nothing to resolve the inadequacies in Crown's pleadings as they relate to its breach of contract and negligence claims against Pneu-Mech LLC. Crown has not provided a compelling explanation as to how the contents of its Complaint could plausibly support the conclusion that the LLC was ever a party to the Contracts. Though Crown seeks to treat Pneu-Mech Inc. and the LLC as if they were one and the same, these are plainly distinct legal persons. Crown's proposition that a discussion of the law of agency is irrelevant portrays a drastic misunderstanding of the law as it applies to corporations, their representatives, and how contracts are formed. The Complaint leaves no question as to whether Pneu-Mech Inc. was a party to the Contracts—that much is clear. *Cf. Rose v. Potts*, 239 N.C. App. 133, 769 S.E.2d

422, 2015 N.C. App. LEXIS 42, 8-10 (2015) (reciting the well-known rule that a contract arises by mutual assent, explaining that mutual assent is demonstrated by offer and acceptance, and holding that a legal entity can act only through a natural person serving as its agent to create mutual assent between the entity and another party). To properly allege that Pneu-Mech LLC has breached a duty incurred by the Corporation, Crown must make a plausible case that the LLC itself was a party to those same Contracts. It is not enough to plead that the Corporation entered the Contracts on its own behalf, because the LLC is a separate legal person. It is also not enough to show that the Corporation inappropriately used the LLC's old forms and letterhead (which it presumably purchased from the LLC during the asset sale) when corresponding with Crown and executing the Contracts, because this does not demonstrate whether the individuals with whom Crown interacted when entering the Contracts (Trostle, Graves, and Gatton) were agents of the LLC who at that time could have had authority to bind the LLC. Crown acknowledges that these three individuals were no longer part of the LLC and were acting on behalf of the Corporation at the relevant times. Compl. ¶¶ 27, 37.

It is also insufficient to plead that Pneu-Mech LLC had previously engaged in business with Crown, because the existence of a prior relationship does not demonstrate whether the LLC was a party to the Contracts relevant to this dispute. Further, it is not enough to plead that the LLC previously submitted proposals to Crown, because the proposals themselves did not create binding contracts, and Crown has not alleged otherwise. Indeed, Crown has provided copies of the Contracts with the Corporation and subsequent invoices Crown received from the Corporation under those Contracts—invoices that Crown *later paid by explicitly directing funds to the Corporation*—all of which make three things abundantly clear: (1) Crown entered the Contracts after the Corporation had purchased all the business assets of the LLC and formed a

separate corporation, over which neither Brady, Tucker, nor the LLC had any actual ownership; (2) prior to entering the Contracts, Crown's primary points of contact were members of the Corporation, not anyone affiliated with the LLC; and (3) the obligations the Corporation incurred to Crown under the Contracts were not in any way connected to a prior relationship the LLC had ever had with Crown. Thus, Crown's efforts to hold the LLC responsible for the contractual obligations of the Corporation must necessarily fail.

To be clear, Defendants have not raised the issue of agency as a ploy to adjudicate these claims on the merits or otherwise go outside the scope of a motion to dismiss. Crown fails to appreciate that the question of whether an agency relationship could have existed goes directly to the heart of whether Crown's breach of contract and negligence claims against Pneu-Mech LLC are plausible and adequately pled. In other words, for Crown to plead that the LLC was bound to the Contracts (or was otherwise designing and installing the machinery that is the subject of the Contracts), Crown must plead facts sufficient to demonstrate that the persons they interacted with bound the LLC or at least may have had authority to do so. Otherwise, all that Crown has proffered are legal conclusions that a contract existed, which is no different from the conclusory allegation that the Supreme Court rejected in *Twombly* that competitors had colluded to fix prices without any specific fact of a meeting or other true fact that a court could assess. *See Twombly*, 550 U.S. 544, 555-56 (noting that the plaintiff had not alleged a specific meeting or other behavior to support the element of a "concerted action" in an antitrust claim and holding that the bald allegation that "concerted action" had occurred was insufficient).

An agency relationship is formed where either (A) the principal has made representations to the agent that the agent should act on the principal's behalf; (B) the principal has made representations to the third party that the agent is empowered to act on the principal's behalf; or

(C) the principal, despite the purported agent's lack of actual or apparent authority, proceeds to ratify the contract to which the purported agent sought to bind the principal. *First Union Nat'l Bank v. Brown*, 166 N.C. App. 519, 527 (2004). If Crown has not alleged facts that, if believed, would tend to show that any of the individuals with whom Crown apparently dealt when entering the Contracts (Trostle, Graves, and Gatton) could bind Pneu-Mech LLC to those same agreements, then these claims cannot succeed against the LLC. This makes it quite relevant whether LLC representatives made any representations to Trostle, Graves, or Gatton that would lead any of these three to believe they had authority to act as the LLC's agent, just as it is relevant whether the LLC made any representations to Crown that Trostle, Graves, or Gatton had authority to bind the LLC at the relevant times. Without such facts, Crown's Complaint fails to make a plausible case that Pneu-Mech LLC could have been bound to the Contracts.

Crown seeks to overcome this by attempting to persuade the Court that, when it comes to the question of which entities were party to the Contracts, "what Crown believed is dispositive." Pl. Memo. in Opp., p. 10 (footnote 5). This is an obvious misrepresentation of the law of agency, and Crown's protest that Defendants' discussion of agency principles is "irrelevant" and "nothing more than a distraction" reveals a lack of understanding of the subject. Pl. Memo. in Opp., p. 10 (footnotes 5, 6). There is no circumstance where only a third party's beliefs determine the creation of an agency relationship, and Crown has not endeavored to provide any legal authority to support this homespun axiom. Therefore, because the Complaint is completely silent on matters of agency, Defendants cannot be liable for breach of contract, and Count Three should be dismissed.

## 2. The Court should not pierce the veil as to Defendants because none of them are parent entities or individual owners of the Corporation.

Because the facts it alleges necessarily defeat its veil piercing demands, Crown conveniently skirts around the issue of actual ownership, seeking to instead impose yet another specious theory with no basis in law: "de facto ownership" of an actual corporation. Pl. Memo in Oppo., p. 22-23. Crown has affirmatively alleged that Trostle and Andrews were the owners of the Corporation "on paper," while Brady and Tucker were apparently only "de facto owners," which demonstrates that Crown is aware there are no facts supporting its claim that Brady, Tucker, the LLC, or the Brawtus Companies have ever had any ownership stake in the Corporation. In an attempt to show that it has sufficiently alleged such ownership, Crown points to multiple instances in its Complaint where it summarily states that Brady and Tucker were "de facto owners" of the Corporation. Compl. ¶¶ 38, 41, 187, 197, 237. The primary issue with these allegations is that they are legal conclusions, not facts, and in any event, this characterization of Brady and Tucker is an admission that Crown is aware that these persons are not actually owners. This is apparent in the fact that Crown has not offered any other facts in support of this idea of "de facto ownership." Crown cannot show – and, more importantly, has failed to plausibly plead – that Defendants are or have been actual owners of the Corporation—the person that Crown knows it paid and that it knows installed the machinery that is the subject of this lawsuit. Crown has been unable to cite even one case anywhere in the country in which a court has pierced the veil of a corporate entity as to someone that was neither a current or past owner, and instead whose assets could be reached on the basis of some sort of constructive ownership, equitable ownership, or anything referred to as "de facto" ownership. If an assertion of "de facto" ownership is to serve as the basis for a veil piercing claim, and if blanket statements that "de facto" ownership in the Complaint are enough to make a plausible claim for disregarding a

corporate form, there must be at least some basis in law that would give such an allegation even a remote possibility of success.

Crown's Memo in Opposition provides no support for its contention that a plaintiff may pierce the corporate veil as to a non-owner or shareholder of a company. In all the cases to which it refers, the Court disregarded a corporate form and imposed liability only on a person who is or was an owner of the entity in question. For example, in *De Witt Truck Brokers, Inc. v. Ray Flemming Fruit Co.*, the Court's recitation of the general rules of veil piercing deals explicitly with the relationship between the corporation and its "stockholders," who are "treated as identical" when all the elements for veil piercing are met. 540 F.2d 681, 683 (4th Cir. 1976). In expounding upon the rules of corporate veil piercing in *De Witt*, the 4th Circuit Court of Appeals never alludes to the possibility that veil piercing could apply to anyone other than the "stockholders" or other owners of a business entity. In fact, it states explicitly that "a corporation and its stockholders are separate and distinct" to explain that the doctrine of veil piercing is one designed to remove this distinction between entity and owner if very specific criteria are met. *Id*. at 638. Later, the Court states that this remains true regardless of "whether [a] corporation has many or only one stockholder." *Id*. On at least 11 other occasions throughout *De Witt's* recitation of the relevant rules of veil piercing, it does not once acknowledge the possibility of disregarding the corporate form as to any party but the stockholder (or owner) of a company. *Id*. at 681-7. In *De Witt* itself, the Court elected to pierce the veil of a corporation as to one particular stockholder who disregarded various corporate formalities.

All the other cases Crown cites to support its version of the veil-piercing standard deal with either individual stockholders or parent corporations with an obvious ownership stake in the entity sought to be pierced. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (the

Court identifies "control by a dominant stockholder" as one factor to consider to justify piercing the corporate veil); *Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 577 (the court affirmed that a corporate form may be disregarded if the entity is the "mere instrumentality or alter ego *of the sole or dominant shareholder*… it being immaterial whether the sole or dominant shareholder is an individual or another corporation," and held "the sole member" of a limited liability company liable for various claims under a veil-piercing theory) (emphasis added).

Even the incomplete factual details provided in the unpublished opinion of *Al Hamra Trading Est. v. Diamondback Tactical, LLLP*, establish that past or current ownership is a prerequisite to veil piercing. *Al Hamra Trading Est. v. Diamondback Tactical, LLLP*, No. 1:12cv373, 2013 U.S. Dist. LEXIS 113321, at *6, *14 (W.D.N.C. July 9, 2013). In *Diamondback*, the plaintiff sought to pierce the corporate veil of Diamondback Tactical, LLLP ("Diamondback") and hold an individual named Daniel Walsh liable for the alleged misconduct of Diamondback and other related corporate entities. *Id*. at *1. Walsh filed a motion to dismiss, which the court denied. *Id*. at *13. The opinion states that the plaintiffs sufficiently stated a claim for veil piercing that could survive a motion to dismiss because "the Complaint contain[ed] factual allegations supporting each [element of veil piercing]," expressly noting that the plaintiff in that case had "allege[d] that [] Walsh was one of the former owners" of the entity the plaintiff sought to pierce, and explicitly held that Walsh "exercised *ownership*, control, and domination" over the entity. *Id.* at *14 (emphasis added).

In one place, Crown does state that Brady and Tucker are the "*actual* or de facto owners" of Pneu-Mech LLC, the Brawtus Companies, and Pneu-Mech Inc. Compl. ¶ 237. Crown states elsewhere that "Andrews and Trostle were identified on paper as [Pneu-Mech Inc.] owners." Compl. ¶ 38. Whether a person is an owner of a company is a legal conclusion that must be

supported by facts. Crown has not provided any facts to support its conclusion that Brady, Tucker, or their entities were ever the owners of Pneu-Mech Inc. Further, an agency relationship is essential for any of these parties to have been obligated in any way under the Contracts, and yet the facts actually pled necessarily defeat a case for breach of contract as to them.

**B. Crown Has No Claim for Negligence Against These Defendants.**

In support of Crown's assertion that it has adequately pled facts supporting a negligence claim against Pneu-Mech LLC, Crown points to a series of statements in the Complaint under Counts One and Two, specifically paragraphs 108-110 and 115-118. Pl. Memo. in Opp., p. 10. These paragraphs tell a story in which Pneu-Mech LLC designed, constructed, and improperly installed a cure oven and powder coating system, which resulted in various actual and prospective damages to Crown's facility and harm to the powder coating system itself. Compl. ¶¶ 108-10, 115-18. In its Memo in Opposition, Crown asserts that these statements, combined with other more general statements that the LLC had a "legal duty to act with ordinary care" when working in Crown's facility (Compl. ¶¶ 107, 114), are sufficient to show that the LLC had a common-law duty separate and apart from any duties created by the Contracts. Pl. Memo. in Opp., p. 10. Defendants maintain that they were never a party to the Contracts, they did not participate in the performance of the Contracts, they had no involvement whatsoever in Pneu-Mech Inc.'s allegedly negligent installation of the powder coating system, and that Crown has not pled any facts to the contrary. Just like its breach of contract claims, Crown's negligence claims against the LLC fail for a lack of factual allegations that make a plausible case that the LLC could have been a party to the Contracts. Therefore, Counts One and Two should be dismissed as to Pneu-Mech LLC.

**C. The Defendants Could Not Have Breached a Fiduciary Duty by Repossessing Property In Which They Had a Security Interest.**

In its Memo in Opposition, Crown conveniently skirts around the fact that Brady and Tucker were secured creditors, which necessarily changes the standard for alleging a breach of fiduciary duty and, therefore, impacts the sort of facts that must be pled for that claim to survive a motion to dismiss. Generally, when the directors of an insolvent corporation are themselves creditors of that corporation, those directors may not "secure to themselves a preference" but must instead distribute the corporation's assets ratably. *Hill v. Pioneer Lumber Co.*, 113 N.C. 173, 177-78 (1893) ("although directors are bound to discharge their duties prudently, diligently and faithfully, and apply the assets, in case of insolvency, for the benefit of creditors instead of stockholders…. [T]hey may not only make a preference between creditors, but such preference may be made in their own favor if they be creditors "). The North Carolina Supreme Court in *Hill* clarified that individuals who are directors *and* secured creditors may receive greater priority. *Id*. at 178, 180-81. Even after a fiduciary duty arises, directors of a corporation may prefer secured creditors over unsecured ones. *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 33 (2002); *see also Drug Co. v. Drug Co.*, 173 N.C. 502, 508 (1917) ("it is now well established that the capital stock of a corporation… is a trust fund to be secured and administered for the benefit of the general creditors of the corporation, ***subject, of course, to the claims of lienors entitled to priority***") (emphasis added). The North Carolina Court of Appeals in *Keener* affirmed that, in order for preference to one creditor to be unlawful, it must harm creditors "of the same class who have similar or superior interests in the corporate assets." *Keener*, 173 N.C. App. 19, 33-34 (citing 15A William M. Fletcher Cyclopedia of the Law of Private Corporations § 7434, at 187 (perm. ed. rev. vol. 2000); 18B Am. Jur. 2d *Corporations* § 2155 (1985)).

By Crown's admission, Brady and Tucker, in their capacity as members of Pneu-Mech LLC and owners of Brawtus Holding Company, Inc., were secured creditors of Pneu-Mech Inc. by virtue of a promissory note for the purchase of the LLC's business assets (referred to in the Complaint as the "Note"). Compl. ¶ 29. As with other secured transactions, the creditor is first in line to repossess the purchased property, which, in this case, would be whatever assets the Corporation purchased via the Note. Crown has not alleged any facts that would tend to show that it is in the same class of creditors as the LLC, that Brady and Tucker took property in which they had no secured interest, or that Crown for any other reason should have had equal priority to Brady and Tucker. Crown summarily alleges that Brady and Tucker unlawfully repossessed Pneu-Mech Inc.'s business assets, without providing any facts to show why any aspect of that repossession may have been improper.

### D. The Transactions that Crown Labels as "Fraudulent Transfers" Are Nothing But Normal Transactions Extending from a Normal Business Sale.

Crown makes much ado about two broad groups of transactions and argues that they are voidable under the North Carolina Fraudulent Transactions Act (NCFTA). The first allegedly fraudulent transaction occurred when, in early 2018, Brady and Tucker sold their business to Trostle and Andrews and transferred the purchased business assets to the newly formed Corporation, Pneu-Mech Manufacturing Systems, Inc., by a traditional seller-financed sale of business assets secured by a promissory note and the assets sold. The second group of allegedly fraudulent transactions occurred four and a half years later in the summer of 2022 when Trostle, Andrews, and the Corporation defaulted on the Note, at which point Brady and Tucker, acting as secured creditors, perfected their security interest by repossessing the secured assets. This is much ado about nothing. This second set of transactions, as a matter of law, cannot be fraudulent, since they represent normal transactions by secured creditors stemming from a

business sale occurring years before the breach complained of, and they occurred at a time when Crown was itself likely still a debtor of the Corporation under the Contracts, not the other way around. Further, Crown has not provided the elevated level of detail required by Rule 9(b) for this court to exercise its equitable powers to void the transactions. For these reasons, the Court should dismiss Counts Ten and Eleven.

1. **Transfers resulting from a lawful business sale and a secured transaction naturally extending from that sale cannot be fraudulent.**

The Court should begin its analysis from this simple, unremarkable rule: the NCFTA is not a mechanism to unwind all transactions involving a defendant from which a plaintiff is ultimately attempting to collect money. Rather, it is narrowly tailored to reach only those transfers made by a debtor with the intent to "hinder, delay, or defraud any creditor." N.C. Gen. Stats. § 39-23.4, 39-23.5. Of course, "every grant of a security interest 'hinders' the debtor's unsecured creditors in the dictionary sense of that word." N.C. Gen. Stat. § 39-23.4 (Lexis Advance through Session Laws 2023-120 of the 2023 Regular Session of the General Assembly). Indeed, the intent to *prefer* is not the same as the intent to *defraud*, and the NCFTA, as well as the Uniform Fraudulent Transfers Act that it implements, polices only the latter. *See Dean v. Davis*, 242 U.S. 438, 444 (1917). Thus, as a preliminary matter, there is nothing fraudulent about preferring secured creditors over others, especially since there is an explicit legal requirement to prefer secured creditors over unsecured creditors, and because the owner of property subject to a lien is not the one making a "transfer" when that property is repossessed.

It is also not a fraudulent scheme to sell a business by an asset sale, and it is certainly not fraud with respect to a creditor relationship arising years after that sale. Significantly, Crown ignores the fact that, when it first contracted with Pneu-Mech Inc., Crown was a *debtor* to the Corporation, and knowingly made payments to the Corporation. This ought to end the inquiry

immediately, since Crown cannot plausibly contend that an asset sale occurring months before was secretly a fraud on Crown, at a point when Crown was not a foreseeable creditor. Nor can it say that fraud had occurred by that asset sale, which Crown otherwise pleads had adequate consideration in which Trostle and Andrews, the new owners, received substantial assets in exchange for a promissory note and a security interest in those assets. *See G.P. Publ'ns, Inc. v. Quebecor Printing,* 125 N.C. App. 424, 434, 481 S.E.2d 674, 680 (1997) (holding that an asset purchase is valid so long as there is adequate consideration and it otherwise occurred in good-faith).

Because nothing Crown pleads makes the business sale fraudulent at all—or with respect to Crown—it necessarily follows that Brady and Tucker's repossession of the sold assets upon default is not fraudulent either. Brady and Tucker sold their business through a typical asset sale, abandoning all the rights of ownership and knowing that, after a few years, the purchasers would pay off the promissory note and would own the business assets free and clear from any encumbrance, thereby extinguishing any lingering rights Brady and Tucker had after the sale. As Crown tells it, Brady and Tucker took this tenuous position not to engage in a legitimate business sale, but instead to defraud Crown—at best a potential future *debtor* at the time of the sale—some four and a half years later when the machinery that the Corporation installed, thereby allegedly damaging Crown's property. This is the exact kind of tale that defies common sense and that *Iqbal* requires this Court to reject. Therefore, this Court should dismiss Counts Ten and Eleven with prejudice.

    **2. Crown has not identified the transactions with the particularity required by Rule 9(b) or in a manner satisfactory for the court to equitably void the transactions, and in any event, its demand for money is improper.**

The Court should also reject these counts because they improperly seek money damages rather than clearly delineate the thing Crown can actually recover: an order voiding specifically identified transactions involving particular assets and parties. Crown, however, fails to clearly delineate specific transactions with the exacting precision required by Rule 9(b) or as otherwise sufficient for the court to exercise its equitable powers to void particular transactions under the NCTFA. As Crown similarly notes in its memorandum, Rule 9(b) presents a heightened pleading standard under which it must specifically describe "the time, place, and contents" of the fraudulent transfer and identify the specific people and property involved with that fraud. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013). Crown has absolutely failed to do that, instead listing large bundles of transactions essentially covering every possible transfer it can imagine. This does not meet the heightened pleading standard of 9(b), nor does it even give this Court any direction as to the specific transactions Crown seeks to have the Court unwind. Instead, Crown explicitly asks the Court to give money damages in its prayer for relief at the end of each count—a kind of relief to which Crown is not entitled under the NCFTA. Therefore, for these reasons, the Court should dismiss these counts with prejudice.

## IV. CONCLUSION

In conclusion, Defendants respectfully request that this Court dismiss all counts applicable to them, including Crown's claims for breach of contract, negligence, breach of fiduciary duty, veil piercing and fraudulent transfers under the NCFTA. Crown's claim for breach of contract should fail because Crown has not pled facts that support the existence of an agency relationship between Pneu-Mech LLC and the Corporation, the party who entered the Contracts on its own behalf. Crown's claim that the LLC is liable for negligence due to the manner in which it performed under the Contracts is nonsensical because, again, Crown has not

made a plausible showing that the LLC was at all involved in the performance of the Corporation's agreements with Crown. Its claims that Brady and Tucker have committed a breach of a fiduciary duty owed to Crown should fail primarily because Crown has not demonstrated (or even bothered to make a general statement) that Crown was a creditor of equal or greater status than Brady and Tucker with respect to the Corporation, which is necessary in order for Crown to have been wronged by Brady and Tucker following the Corporation's insolvency. Finally, Crown's claims of fraudulent transfers should be dismissed because, despite being given ample opportunity, Crown has yet to identify a specific transfer that could be deemed fraudulent. The first transaction Crown attacks is the business sale between the LLC and the Corporation, which occurred long before Crown could have ever been deemed a creditor or likely future creditor of the Corporation. The next series of transactions Crown attacks is a scattered web of alleged transfers between Brady, Tucker, the LLC, the Brawtus Companies and other defendants, with little specificity as to what assets were transferred where. Based on Crown's pleadings in this regard, it would be impossible for this Court to use its equitable powers to effectively unwind any specific transactions. Therefore, Crown's claims should be dismissed entirely as to Defendants.

Dated: September 25, 2023          BY COUNSEL

/Abbi White Harris/
Abbi White Harris, Esq. (NC Bar No. 59883)
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
(Admitted *Pro Hac Vice*)
DARKHORSE LAW PLLC
8963 Northpointe Executive Park Dr., Suite 260
Huntersville, North Carolina 28078
Phone: 540-553-8149 ext. 701
Fax: 540-301-6460
abbi@darkhorse.law

andrew@darkhorse.law
*Lead Counsel*

and

John Riordan, Esq. (NC.  Bar No. 54973)
FIDELITY LAW GROUP
8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

*Counsel for Defendants David Brady, William Tucker, Brawtus Holding Co., Inc., Brawtus Management Co., LLC, and Pneu-Mech Dissolution LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served the foregoing on the following counsel of record who are CM/ECF participants:

Toby K. Henderson
Joanna W. Gisel
Sebaly Shillito & Dyer
1900 Kettering Tower
40 North Main Street
Dayton, OH 45423-1900
P: 937-222-2500
F: 937-222-6554
thenderson@ssdlaw.com
jgisel@ssdlaw.com

and

Fred M. Wood, Jr.
Evan M. Sauda
David Blue
Nelson Mullins Riley & Scarborough LLP
301 South College Street, Suite 2300
Charlotte, North Carolina 28202
P: 704-417-3059
F: 704-377-4814
fred.wood@nelsonmullins.com
evan.sauda@nelsonmullins.com
david.blue@nelsonmullins.com

*Counsel for Plaintiff*


/AbbiWHarris/
Abbi W. Harris, Esq. (NC Bar No. 59883)
DARKHORSE LAW PLLC
Phone: 540-553-8149 ext. 701
Fax: 540-301-6460
abbi@darkhorse.law

*Counsel for Defendants Brady,*
*Tucker, Pneu-Mech Dissolution LLC,*
*Brawtus Holding, Inc., and*
*Brawtus Management LLC*