**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:23-CV-059-KDB-DCK**

| | | |
|---|---|---|
| **CROWN EQUIPMENT CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **DAVID BRADY, WILLIAM TUCKER,** | ) | |
| **JOSEPH BOGGS, PNEU-MECH SYSTEMS** | ) | |
| **MANUFACTURING, INC., PNEU-MECH** | ) | |
| **SYSTEMS MANUFACTURING, LLC,** | ) | |
| **BRAWTUS HOLDING COMPANY, INC.,** | ) | |
| **BRAWTUS, MANAGEMENT COMPANY, LLC,** | ) | |
| **and UNITED FINISHING SYSTEMS LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

      **THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion To Dismiss For Failure To State A Claim" (Document No. 37). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

## I. BACKGROUND

      Crown Equipment Corporation ("Plaintiff" or "Crown") initiated this action with the filing of a "Complaint" (Document No. 1) on May 10, 2023. Crown has a principal place of business in New Bremen, Ohio and "manufactures, services, and sells material handling equipment, such as lift trucks, and related warehouse products." (Document No. 1, p. 3).

      The Complaint asserts claims against David Brady ("Brady"), William Tucker ("Tucker"), Joseph Boggs ("Boggs"), Brawtus Holding Company, Inc. (f/k/a Pneu-Mech Systems

Manufacturing, Inc.)("Brawtus Holding" or "Pneu-Mech 1.0"), Pneu-Mech Systems Manufacturing, LLC, (n/k/a Pneu-Mech Dissolution, LLC) ("Pneu-Mech 2.0" or "the LLC"), Brawtus Management Company, LLC ("Brawtus Management"), Pneu-Mech Systems Manufacturing, Inc. ("Pneu-Mech 3.0" or "the Corporation"), and United Finishing Systems LLC ("Pneu-Mech 4.0"). (Document No. 1, pp. 3-4). The individual Defendants all reside in Statesville, North Carolina. (Document No. 1, p. 3). The corporate entity Defendants all have the same principal place of business address in Statesville, NC – originally known as 201 Pneu-Mech Drive, now known as 201 United Drive. Id.

According to the Complaint, Plaintiff Crown entered into a contract "with a Pneu-Mech branded entity for the engineering and construction of a $15 million powder coating system." (Document No. 1, p. 1). The Pneu-Mech entity allegedly "failed to properly complete the project or fix its errors with the system" and "the system as constructed damaged the Crown facility." (Document No. 1, pp. 1-2). In addition, Crown "faced demands for payment from sub-contractors the Pneu-Mech branded entity used but did not pay for work on the powder coating system project." (Document No. 1, p. 2).

Plaintiff Crown alleges that it "has learned there were several iterations of the 'Pneu-Mech' company, all either owned or controlled by David Brady and William Tucker" who "developed a pattern of creating 'Pneu-Mech' companies over the years, transferring the assets of the old companies to the new companies and 'starting fresh.'" (Document No. 1, p. 2). Crown contends that it "unknowingly dealt with different iterations of 'Pneu-Mech.'" Id. Crown further alleges that the "convoluted nature of this matter is the result of David Brady's, William Tucker's and others' efforts to hide the Pneu-Mech entity's assets from collection." Id.

The Complaint includes the following Counts: (1) negligence causing damage to Crown's property (against Pneu-Mech 2.0 and Pneu-Mech 3.0); (2) negligence causing damage to the powder coating system (against Pneu-Mech 2.0 and Pneu-Mech 3.0); (3) breach of engineering contract, construction contract and addendum (against Pneu-Mech 2.0 and Pneu-Mech 3.0 (a/k/a "Pneu-Mech")); (4) breach of fiduciary duty (against Brady and Tucker); (5) breach of fiduciary duty (against Boggs); (6) aiding and abetting breach of fiduciary duty (against Boggs); (7) fraud (against Pneu-Mech 3.0); (8) successor liability under North Carolina and Federal Common Law (against Pneu-Mech 3.0); (9) successor liability under North Carolina and Federal Common Law (against Pneu-Mech 4.0); (10) fraudulent transfer in violation of the North Carolina Fraudulent Transfer Act ("NCFTA") (against Brady, Tucker, Pneu-Mech 2.0, and Pneu-Mech 3.0); (11) fraudulent transfer in violation of the North Carolina Fraudulent Transfer Act ("NCFTA") (against Brady, Tucker, Brawtus Management, Pneu Mech 1.0, Pneu-Mech 2.0, Pneu-Mech 3.0 and Pneu-Mech 4.0); (12) Common Law piercing of the corporate veil / alter ego (against Brady and Tucker); and (13) alter ego doctrine / single business enterprise / instrumentality rule (against all corporate entity Defendants). (Document No. 1, pp. 21-41).

The following responses to the Complaint have been filed: "Defendant Joseph Boggs' Answer To Plaintiff's Complaint" (Document No. 34); "Defendant United Finishing Systems, LLC's Answer" (Document No. 35); the pending "Motion To Dismiss For Failure To State A Claim" (Document No. 37); and "Defendant Pneu-Mech Systems Manufacturing, Inc. Answer And Defenses To Plaintiff's Complaint" (Document No. 42).

The "Motion To Dismiss…" (Document No. 37) and "Memorandum In Support…" (Document No. 38) were filed on August 21, 2023, by Brady, Tucker, Brawtus Holding, Brawtus Management, and Pneu-Mech Dissolution, LLC (f/k/a Pneu-Mech Systems Manufacturing LLC

("the LLC" or "Pneu-Mech 2.0")).  Plaintiff's Memorandum In Opposition…" (Document No. 43) was filed September 18, 2023;  and "Defendants' Reply…" (Document No. 45) was filed on September 25, 2023.

At this time, Defendants Boggs, Pneu Mech Systems Manufacturing, Inc. ("Pneu-Mech 3.0") and United Finishing Systems, LLC ("Pneu-Mech 4.0) have *not* moved for dismissal.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007));  see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the

grounds upon which it rests.'"   In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).  The court "should view the complaint in the light most favorable to the plaintiff."  Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III.  DISCUSSION

At the outset, the undersigned notes that one thing the parties appear to agree on is that this is a difficult case.  Plaintiff refers to the case's "convoluted nature," and Defendants acknowledge it "is a complex case."  (Document No. 1, p. 2;  Document No. 37, p. 4).  Keeping track of the various iterations of the Pneu-Mech and Brawtus parties is challenging, and not aided by each side's briefing using different short-hand names.  The undersigned intends to provide the Court and the parties a helpful summary of the arguments and a recommended disposition.

Brady, Tucker, Brawtus Holding, Brawtus Management, and Pneu-Mech 2.0 (together, "Movants") seek dismissal of all the claims against them.  (Document No. 37, p. 4).  Specifically, Movants argue that Counts One and Two for negligence (against Pneu-Mech 2.0);  Count Three for breach of contract (against Pneu-Mech);  Count Four for breach of fiduciary duty (against Brady and Tucker);  Counts Ten and Eleven for fraudulent transfer (against Brady, Tucker, and Pneu-Mech 2.0);  Count Twelve for veil piercing / alter ego (against Brady and Tucker);  and Count Thirteen for alter ego / single business enterprise / instrumentality rule (against Pneu-Mech 2.0) should be dismissed.

**A. Breach of Contract**  (against Pneu-Mech 2.0)

The Complaint asserts that in "January 2018, because Pneu-Mech 2.0 performed well on earlier projects, Crown included Pneu-Mech 2.0 as a potential bidder on a large project involving the design and construction of an automated powder coating system in one of Crown's plants in New Bremen, Ohio ("Crown Facility"). (Document No. 1, p. 14). On September 19, 2018, Crown awarded the Engineering Project to Pneu-Mech 2.0 "and issued Purchase Order #A408898 (the "Engineering Contract")." Id. (citing Document No. 1-8).

Crown "did not know that Brady and Trostle had months earlier orchestrated the transfer of Pneu-Mech 2.0 assets to Pneu-Mech 3.0." Id. "Jerry Trostle ("Trostle") joined Pneu-Mech 2.0 in 2012 and served as Vice-President of Sales." (Document No. 1, p. 6). Since Pneu-Mech 3.0's formation in or about December 2017, James Andrews ("Andrews") has been President and Trostle Vice President and Secretary. (Document No. 1, pp. 6-7). "Andrews' and Trostle's roles following the sale were no different than before when they were Pneu-Mech 2.0 employees." (Document No. 1, p. 8).

In February 2019, Crown contracted with Pneu-Mech 2.0 "to construct the powder coating system at a cost of $15,125,000 . . . less the $1.5 million paid under the Engineering Contract" and issued Purchase Order #A412353 (the "Construction Contract")" (Document No. 1, p. 15) (citing Document No. 1-14). Although Crown awarded the Engineering Contract and the Construction Contract to Pneu-Mech 2.0, it was invoiced by, and made multiple payments to, Pneu-Mech 3.0. (Document No. 1, pp. 14-15). Crown contends that "[b]ecause Pneu-Mech 3.0 was a mere continuation of Pneu-Mech 2.0," "Pneu Mech 3.0 is bound to the Contracts." (Document No. 1, p. 15).

The Complaint further alleges that "Crown and Pneu-Mech enter[ed] into an Addendum to Agreement to Design and Manufacture Powder Coating Paint System on June 7, 2022 ("Addendum")." (Document No. 1, p. 17) (citing Document No. 1-15). "The Addendum covered Pneu-Mech servicing, maintaining, correcting, repairing, replacing, or otherwise fixing issues unrelated to the cure oven." Id.

In Count Three of the Complaint, Plaintiff alleges that Pneu-Mech 2.0 and Pneu-Mech 3.0 ("Pneu-Mech") breached the Engineering Contract, the Construction Contract, and the Addendum (the "Contracts"). (Document No. 1, pp. 23-24).

In support of dismissal of the breach of contract claim, Movants contend "that the only person ever bound by the Contracts was either the Corporation ["Pneu-Mech 1.0" or "Brawtus Holding"] or those individuals who personally signed their names to the proposals or other offers received by Crown." (Document No. 38, p. 6). Movants further contend that "Brady, Tucker, [and] the Brady-Tucker Entities cannot possibly be bound to the Contracts."[1] Id.

Movants argue that Trostle did not have authority to bind the LLC (Pneu-Mech 2.0), and that the facts alleged do not support Crown's "conclusion that Trostle acted on the LLC's behalf when it executed the Contracts involving Crown." (Document No. 38, pp. 6-7). Movants further argue that there are no facts suggesting that Trostle was an agent of Pneu-Mech 2.0, and they assert that "Trostle established and purchased an entirely separate entity prior to entering the Contracts" and that he was not employed by Pneu-Mech 2.0 "in any capacity at the time he executed the Contracts." (Document No. 38, p. 7).

---

[1] Movants refer "to Brawtus Holding and Brawtus Management collectively as the 'Brawtus Companies,' and the Brawtus Companies together with the LLC [Pneu-Mech 2.0] as the 'Brady-Tucker Entities.'" (Document No. 38, p. 1).

Based on these arguments, Movants conclude that "this Court should dismiss Crown's claims against the LLC for breach of the Contacts and negligence in performing the Contracts." (Document No. 38, p. 7).

In response, Plaintiff Crown summarizes its argument as follows:

> Crown has pled a plausible breach of contract claim against Pneu-Mech 2.0. Crown attached to its Complaint the documents reflecting the terms of the agreements with Pneu-Mech 2.0, detailed how Pneu-Mech 2.0 breached its obligations, and identified the harm caused by the breaches. Moving Defendants' arguments related to theories of agency are irrelevant to the Court's Rule 12(b)(6) analysis and are for disposition following discovery.

(Document No. 42, p. 2).

Crown goes on to note that it "need plead only two elements to state a claim for breach of contract: (1) the existence of a valid contract and (2) breach of the terms of that contract." (Document No. 43, p. 5) (citing Montessori Children's House of Durham v. Blizzard, 244 N.C. App. 633, 636 (2016)). Crown suggests it has easily satisfied the requirements for stating a breach of contract claim. (Document No. 43, pp. 5-6).

In addition, Crown notes that it started doing business with Pneu-Mech 2.0 in 2015, and that the underlying proposals and Contracts all refer to Pneu-Mech Systems Mfg. LLC ("Pneu-Mech 2.0). (Document No. 43, pp. 7-8). Specifically, Crown points out that a proposal that led to the Engineering Contract was signed by "Jerry Trostle (VP Sales) Pneu-Mech Systems LLC" on or about February 5, 2018. (Document No. 43, p. 7) (citing Document No. 1-6, p. 51). Similarly, Crown awarded "Pneu-mech Systems Mfg. LLC" the Construction Contract on April 30, 2019; and in June 2019, agreed to the Addendum with "Pneu-Mech Systems Manufacturing LLC." (Document No. 43, p. 8). Crown states that its allegations and attachments support a plausible claim "that Pneu-Mech 2.0 contracted with Crown, just as the documents show." Id.

After reviewing all the parties' briefs, the undersigned is persuaded that Plaintiff Crown has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. In short, the undersigned finds that the allegations are sufficient to warrant discovery on this claim. As such, the undersigned will recommend that dismissal of the claim for breach of contract be <u>denied</u>, without prejudice to Movants raising their arguments again at a later date.

**B. Negligence** (against Pneu-Mech 2.0)

The Complaint asserts two Counts of negligence for alleged damage by Pneu-Mech to Crown's property "other than the powder coating system," and "to the powder coating system." (Document No. 1, pp. 21-22). Plaintiff alleges that the way Pneu-Mech designed and constructed the powder coating system caused damage to both the Crown Facility and components of the powder coating system. <u>Id.</u>

Regarding Counts One and Two for negligence, Movants re-assert their position regarding the contract claim and conclude that Trostle was not an agent of the LLC (Pneu-Mech 2.0) when he entered into the Contracts with Crown, and therefore, "damages Crown may have experienced because of the Corporation's (Pneu-Mech 1.0) performance of the Contracts are not the result of any action by the LLC." (Document No. 38, p. 17). Essentially, Movants seem to argue that Pneu-Mech 2.0 cannot be liable because it was not a party to the Contracts. <u>Id.</u> Movants then seem to present an alternative argument that *if* they were a party to the Contracts, they cannot face tort liability where Crown has relied "purely on a contractual duty to design and install the machinery described in the Complaint." <u>Id.</u> (citations omitted).

In response, Crown states that it "has a right to have its negligence and breach of contract claims proceed side-by-side because Pneu-Mech denies the existence of any contract, the common law duty is different than any contractual obligations Pneu-Mech 2.0 may have, and damages from

its negligence fall outside any applicable contract." (Document No. 43, p. 3). Plaintiff contends it has adequately alleged Pneu-Mech's negligence in causing physical damage to Crown's property. (Document No. 43, p. 10) (citing A. G. v. The City Of Statesville, No. 5:20-CV-165-KDB-DCK, 2021 WL 2582577, at *4 (W.D.N.C. June 23, 2021) ("must allege the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff.").

Plaintiff Crown effectively argues that regardless of the parties' contractual relationship, Defendants had a legal duty to act with reasonable care and not damage Crown's property. (Document No. 43, p. 11). Crown then seems to acknowledge that generally, a party cannot recover in tort for actions which arise from breach of contract; however, Crown observes that there is an exception to the general rule if damage occurs to property that was not subject to the contract. See (Document No. 43, p. 13) (citing Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) and Mason v. Yontz, 102 N.C.App. 817, 818 (1991)).

The undersigned is persuaded that Counts One and Two should also survive the instant motion to dismiss and be subjected to discovery. The undersigned will recommend that dismissal of the claims for negligence be denied, without prejudice to Movants raising their arguments again at a later date.

**C. Breach of Fiduciary Duty** (against Brady and Tucker)

Next, Movants challenge Plaintiff's claim for breach of fiduciary duty against Brady and Tucker. (Document No. 38, pp. 17-18). The Complaint alleges that Brady and Tucker were members of the Board of Directors of Pneu-Mech 3.0 in July 2022, when they declared the promissory note (the "Note") that supported the transfer of assets from Pneu-Mech 2.0 to Pneu-

Mech 3.0 to be in default.  See (Document No. 1, pp. 7, 24-25).  Brady and Tucker evicted Pneu-Mech 3.0, seized control of its assets, and caused it to stop operating.  (Document No. 1, p. 25).  Allegedly, Brady and Tucker knew by March 2022, that Pneu-Mech 3.0 was insolvent, and their actions were to Crown's detriment as a Pneu-Mech 3.0 creditor.  Id.

Crown contends that "Brady and Tucker were prohibited from using their intimate knowledge of Pneu-Mech 3.0's corporate affairs and from using their position of trust for their own benefit, to the detriment of Crown."  Id.

Movants argue that Brady and Tucker are not Crown's fiduciaries.  (Document No. 38, pp. 17-18).  In support, Movants provide the following legal authority:

> The "mere existence of a debtor-creditor relationship between [two parties] does not create a fiduciary relationship."  *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 368 (2014);  *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992).  In some cases, a creditor is permitted to bring an individual action against a third party for breach of a fiduciary duty when "(1) the wrongdoer owed [the creditor] a special duty;  or (2) [the creditor] suffered a personal injury distinct from the injury sustained by the corporation itself."  *Green v. Freeman*, 367 N.C. 136, 136, 749 S.E.2d 262, 265 (2013).

(Document No. 38, p. 18).

Here, Movants contend that there are no additional facts alleging a "special relationship" that justify extending their fiduciary duties to Crown.  Id.  Moreover, Movants argue that Plaintiff Crown does not have standing to bring this claim – "[t]o have standing to bring a particular claim against a particular party, a plaintiff must show that it 'suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'"  Id. (quoting Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017)).

In opposition, Crown first notes that "[t]o plead a breach of fiduciary duty claim, a plaintiff must allege facts to show that:  (1) the defendant owed the plaintiff a fiduciary duty of care, (2)

the defendant violated that fiduciary duty of care, and (3) this breach of duty proximately caused injury to the plaintiff." (Document No. 43, p. 13) (quoting <u>Noble Bottling, LLC v. Sherman</u>, No. 3:22-CV-083-KDB-DCK, 2023 WL 4535468, at *5 (W.D.N.C. July 13, 2023)). Crown acknowledges that "directors seldom owe a fiduciary duty to creditors," but asserts that such a duty can arise when a company is "closing up shop." (Document No. 43, p. 14) (citing <u>Keener Lumber Co. v. Perry</u>, 149 N.C.App. 19, 30 (2002) and <u>General Fid. Ins. Co. v. WFT, Inc.</u>, 269 N.C.App. 181, 186-87 (2020)).

Applying North Carolina law, Plaintiff Crown argues the following:

> Brady and Tucker's fiduciary duty stems from their position as directors of Crown's debtor, Pneu-Mech 3.0. (*See* Doc. No. 1, ¶¶31, 126; *id.* at ¶23). Their duty arose when, as Pneu-Mech 3.0 directors, they declared the Pneu-Mech 3.0 note in default, evicted Pneu-Mech 3.0, and effectively caused Pneu-Mech 3.0 to stop operating, only to then transfer its assets to themselves and Pneu-Mech 4.0. (*Id.* at ¶¶31, 43-44, 126-31). They took these actions despite knowing, among other things, Pneu-Mech 3.0 owed Crown substantial money, Pneu-Mech 3.0 was insolvent and unable to pay Crown, their actions would inure to their personal benefit and to Crown's detriment, and they would force the wind-up of Pneu-Mech 3.0's business.
> . . .
> Further still, a director breaches his fiduciary duty when he uses his "intimate knowledge of the corporate affairs" for "his own benefits and to the detriment of creditors" because the director "must treat all creditors[] equally by making any payments to such creditors on a pro rata basis."
> …
> Ultimately, whether corporate directors owe a fiduciary duty to a corporate creditor presents a "complex analysis" requiring a review of evidence and weighing several factors, including insolvency inquiries, plans for future business, liquidation of assets, and whether good faith business operations continued. *USA Trouser, S.A. de C.V. v. Andrews*, 612 F. App'x 158, 160 (4th Cir. 2015) (citing *Keener*, 149 N.C. at 825). When enough evidence is presented to show the existence of a fiduciary duty, it becomes a jury question.

(Document No. 43, pp. 14-15) (citations omitted).

Crown concludes that based on their cited authority, including the "Fourth Circuit's recognition that whether a director owes a creditor of a debtor-corporation a fiduciary duty is a 'complex analysis,'" dismissal of Count Four at this stage of the litigation would be improper. (Document No. 43, p. 17).

In reply, Movants seem to accept Crown's position that directors may have a fiduciary duty in some circumstances; however, Movants argue that "individuals who are directors *and* secured creditors may receive a greater priority." (Document No. 45, p. 14) (citing Hill v. Pioneer Lumber Co., 113 N.C. 173, 178, 180-81 (1893)). "Even after a fiduciary duty arises, directors of a corporation may prefer secured creditors over unsecured ones." Id. (citing Keener Lumber Co. v. Perry, 149 N.C. App. 19, 33 (2002) and Drug Co. v. Drug Co., 173 N.C. 502, 508 (1917)

Movants assert that the Complaint itself shows that Brady and Tucker "were secured creditors of Pneu-Mech Inc. [Pneu-Mech 3.0] by virtue of a promissory note for the purchase of the LLC's [Pneu-Mech 2.0's] business assets (referred to in the Complaint as the "Note"). (Document No. 45, p. 15 (citing Document No. 1, ¶ 29). "Crown has not alleged any facts that would tend to show that it is in the same class of creditors as the LLC, that Brady and Tucker took property in which they had no secured interest, or that Crown for any other reason should have had equal priority to Brady and Tucker." Id.

The undersigned finds that this claim presents a close call, and perhaps, Movants' strongest argument for dismissal of a claim. However, the undersigned is persuaded that dismissal of this claim should also be denied at this stage of the litigation. As noted above, the Fourth Circuit in USA Trouser stated that whether corporate directors owe a fiduciary duty to a corporate creditor presents a "complex analysis" USA Trouser, 612 Fed.Appx. at 160 (quoting Keener, 560 S.E.2d at 825). This "complex analysis" involves:

> various factors ..., including but not limited to: (1) whether the
> corporation was insolvent, or nearly insolvent, on a balance sheet
> basis; (2) whether the corporation was cash flow insolvent; (3)
> whether the corporation was making plans to cease doing business;
> (4) whether the corporation was liquidating its assets with a view of
> going out of business; and (5) whether the corporation was still
> prosecuting its business in good faith, with a reasonable prospect
> and expectation of continuing to do so.

Id.

The undersigned finds that this claim should be subjected to discovery and careful consideration of the "complex analysis" factors that may, *inter alia*, shed more light on Movants' alleged priority as secured creditors and how that impacts any fiduciary duty. Moreover, the undersigned notes that another case applying USA v. Trouser opined that "[t]he issue of the existence (and timing) of Defendants' fiduciary duty should be determined by a jury." Koch Foods, Inc. v. Pate Dawson Co., Inc., 2017 WL 4818426, at *7 (S.D. Miss. Oct. 25, 2017) (citing Tin Originals, 98 N.C.App. 663, 665 (1990)).

Based on the foregoing, the undersigned will recommend that the motion to dismiss be denied as to Count Four breach of fiduciary duty, without prejudice to Movants raising their arguments again at a later date.

**D. Fraudulent Transfer** (against Brady, Tucker, and Pneu-Mech 2.0)

Movants next argue that N.C.Gen.Stat. §§ 39-23.4 and 39-23.5 do not apply to the transactions described in Counts Ten and Eleven and are not fraudulent conveyances. (Document No. 38, pp. 19-22). Movants note that a plausible claim for relief under these Counts requires a showing that:

> (1) Crown was a creditor of a specific entity; (2) that specific debtor
> entity transferred something of value to a third party without
> receiving equivalent value in exchange and either (a) the debtor
> intended to incur debts it would not be able to pay, or (b) the
> remaining assets of the business were unreasonably small in relation

> to a current or future business transaction; and (3) the debtor entity made that transfer with the intent to hinder, delay, or defraud Crown or any other creditor.

(Document No. 38, p. 19) (citing N.C.Gen.Stat. §§ 39-23.4 and 39-23.5).

In seeking dismissal of the fraudulent transfer claims, Movants contend the "allegations are replete with deficiencies." Id. "The primary issue with this claim is that, while Crown's factual narrative presents a cornucopia of facts about a multiplicity of transactions, it fails to adequately narrow the field and clarify which ones it believes are fraudulent under N.C. Gen. Stats. §§ 39-23.4 and 39-23.5." Id. Movants suggest that the Complaint does not provide enough details "to identify which transaction(s) it believes to be fraudulent." (Document No. 38, pp. 20-21).

Plaintiff Crown's response summarizes the facts alleged to support its claims and states:

> Considering the many facts alleged, Crown has fairly identified the parties, dates, and property at issue, provided details about the transactions, and included other material facts, all without the benefit of discovery. Put differently, Crown's Complaint contains detailed facts to support each legal element of the claims in Counts Ten and Eleven and, those facts taken together as true, present plausible claims for relief supported by law.

(Document No. 43, p. 19); see also (Document No. 43, p. 18).

In reply, Movants assert that "[t]his is much ado about nothing." (Document No. 45, p. 15). Movants conclude that the alleged fraudulent transfers are just normal transactions and that these claims should be dismissed. (Document No. 45, pp. 15-18).

The undersigned is satisfied that Plaintiff Crown's allegations are sufficient to support plausible claims in Counts Ten and Eleven. The undersigned will recommend that dismissal of the claims for fraudulent transfer be denied, without prejudice to Movants raising their arguments again at a later date.

**E. Veil Piercing** (against Brady, Tucker, and Pneu-Mech 2.0)

"The 'piercing the corporate veil' doctrine is 'a drastic remedy' and 'should be invoked only in an extreme case where necessary to serve the ends of justice.'" *Keener Lumber,* 149 N .C. at 37, 569 S.E.2d at 829 (quoting *Dorton v. Dorton,* 77 N.C.App. 667, 672, 336 S.E.2d 415, 419 (1985)). Three elements that support a claim for piercing the corporate veil are:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a plaintiff's legal rights; and
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn,* 313 N.C. at 454-55, 329 S.E.2d at 330 (quoting *Spencer,* 268 N.C. at 9, 149 S.E.2d at 576). Factors that are considered in determining whether the corporate veil has been pierced [] include inadequate capitalization, non-compliance with corporate formalities, complete domination and control of the corporation so that it has no independent identity, excessive fragmentation of a single enterprise into separate corporations, non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, nonfunctioning of other officers or directors, and absence of corporate records. *Glenn,* 313 N.C. at 455-58. 329 S.E.2d at 330-32. However, these are "merely factors to be considered to determine whether sufficient control and domination is present to satisfy the first prong of the three-pronged rule known as the instrumentality rule." *Glenn,* 313 N.C. at 458, 329 S.E.2d at 332.

<u>Bear Hollow, LLC v. Moberk, LLC</u>, No. 5:05-CV-210-RLV, 2006 WL 1642126, at *17 (W.D.N.C. June 5, 2006).

In Counts Twelve and Thirteen, Plaintiff Crown asserts veil piercing claims seeking "an equitable remedy to impose liability." (Document No. 1, pp. 39-41). The Complaint alleges that "Brady and Tucker oversaw a convoluted network of business entities to avoid liability," while exercising "complete dominion and control over the Brady-Tucker Entities." (Document No. 1,

p. 39).  Plaintiff further alleges that Brady and Tucker have been in complete control of the finances, policies, and business practices of the Brady-Tucker Entities.  Id.

In further support of Count Thirteen, the Complaint provides in pertinent part:

> 237.  The Brady-Tucker Entities all operate from the same location.  The entities have the same chief financial officer (Boggs) and, on information and belief, the same actual or de facto owners (Brady and Tucker).  The board of managers or board of directors for the entities are, on information and belief, dominated by the same mangers or directors (Brady and Tucker).
>
> 238.  Pneu-Mech 4.0, Pneu-Mech 3.0, Pneu-Mech 2.0, and Brawtus Management are not separate and distinct entities from Pneu-Mech 1.0, which is itself controlled and dominated by Brady and Tucker.  The Brady-Tucker Entities are, in substance, a single business enterprise so that the alter ego doctrine applies.

(Document No. 1, p. 41).

Crown contends it is "entitled to a finding that the corporate veil for the Brady-Tucker Entities should be pierced" and it is "entitled to a finding that some or all of the Brady-Tucker Entities function as a single business enterprise in substance, their corporate veils should be disregarded, and the Court should declare that the Brady-Tucker Entities were and are the alter-egos of one another, Pneu-Mech 1.0 and Brady and Tucker."  (Document No. 1, ¶¶ 232, 239).

Movants note that courts impose this type of remedy "reluctantly and cautiously." (Document No. 38, p. 12) (quoting Dorton v. Dorton, 77 N.C. App. 667, 670 (1985)).  Movants argue that "Crown has not pled sufficient facts that, if believed, plausibly lay out a prima facie case for veil piercing against Brady, Tucker, or the Brady-Tucker Entities."  (Document No. 38, p. 13).  Movants contend that "[t]he most glaringly obvious problem with Crown's veil-piercing attempt against Brady and Tucker is that it has not alleged that Brady or Tucker were ever shareholders in the Corporation."  Id.

In addition, Movants argue that "Crown has not supplied any relevant facts that show whether Brady, Tucker, or the Brady-Tucker Entities used their alleged control over the Corporation to perpetrate a violation of any statutory or other positive legal right held by Crown." (Document No. 38, p. 14). Movants conclude that although "Crown presents a host of legal conclusions in an effort to satisfy each element and factor relevant to veil-piercing, the Complaint as pled falls woefully short of explaining how or why any of these are applicable." (Document No. 38, p. 16).

At the outset, Plaintiff summarizes its position in support of counts Twelve and Thirteen as follows:

> Crown alleges Brady and Tucker exercised ownership, control, and domination over certain entities and disregarded their corporate forms to perpetuate the fraudulent transfer of assets and personally enrich themselves, all while using the corporate forms to shield themselves from personal liability to Crown's detriment. These allegations are precisely what is needed to state a plausible claim under North Carolina law for disregarding corporate forms.

(Document No. 43, pp. 3-4).

In further support of its claims, Crown argues that "[a] motion to dismiss is generally [an] improper device to dispose of a veil piercing claim since discovery is necessary for a plaintiff to develop its claim." (Document No. 43) (citing <u>Bear Hollow, LLC v. Moberk, LLC</u>, No. 5:05-CV-210-RLV, 2006 WL 1642126 (W.D.N.C. June 5, 2006). In <u>Bear Hollow</u>, the Honorable Richard L. Voorhees opined that "[s]ince piercing the corporate veil depends upon facts that Plaintiffs must obtain through discovery, Defendants' Motion to Dismiss is premature and is *denied*." <u>Bear Hollow</u>, 2006 WL 1642126, at *17.

Crown argues that the Complaint is adequate as to these Counts because it

> alleges Brady and Tucker exercised ownership, control, and domination over the Brady-Tucker Entities, including Pneu-Mech

3.0, and disregarded their corporate forms to perpetuate the
fraudulent transfer of assets and personally enrich themselves, all
while using the corporate forms to shield themselves from personal
liability. (*See, e.g.,* Doc. No. 1, ¶¶38, 41, 86-105, 187, 197, 237).
And the Crown Complaint alleges Brady's and Tucker's control and
domination caused the injury at issue. (*Id.* at ¶¶105, 233). Thus,
Crown has alleged all that is needed to state a plausible claim under
North Carolina law for disregarding corporate forms, and the
Court's consideration of Moving Defendants' request to dismiss
Counts Twelve and Thirteen can end here.

(Document No. 43, p. 22).

In reply, Movants argue that Crown has overlooked a critical aspect of veil piercing: "it

can pierce the veil and reach the assets of Brady, Tucker, and their legal entities *only* if these

Defendants or their legal entities contracted with Crown—that is, only if Brady, Tucker, or their

entities owned the legal person with which Crown contracted." (Document No. 45, p. 6). Movants

assert that Plaintiff Crown has conveniently skirted "around the issue of actual ownership."

(Document No. 45, p. 10). Movants further suggest "that there are no facts supporting [Crown's]

claim that Brady, Tucker, the LLC, or the Brawtus Companies have ever had any ownership stake

in the Corporation.

Later, Movants acknowledge that "Crown does state that Brady and Tucker are the "*actual*

*or de facto owners*" of Pneu-Mech LLC, the Brawtus Companies, and Pneu-Mech Inc. . . . and

"states elsewhere that 'Andrews and Trostle were identified on paper as [Pneu-Mech Inc.]

owners.'" (Document No. 45, p. 12) (citing Document No. 1, ¶¶ 237, 38). However, Movants

argue that ownership "is a legal conclusion that must be supported by facts."

After careful consideration of the parties' arguments, the undersigned will recommend that

the Court follow the guidance of Judge Voorhees' opinion that "piercing the corporate veil depends

upon facts that Plaintiff[] must obtain through discovery." Bear Hollow, 2006 WL 1642126, at

*17. The undersigned is persuaded that here, as in Bear Hollow, Plaintiff has pled sufficient facts

to state a claim and that dismissal would be premature.  Id.  On this claim, as with most of the others, it appears that further development of the record will assist a determination on the merits, or in the alternative, a settlement.

The undersigned will recommend that dismissal of Counts Twelve and Thirteen related to veil piercing be <u>denied</u>, without prejudice to Movants raising their arguments again at a later date.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' "Motion To Dismiss For Failure To State A Claim" (Document No. 37) be **DENIED**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005);  <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Id.</u>  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: February 23, 2024

David C. Keesler
United States Magistrate Judge