IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00059-KDB-DCK

| | |
|---|---|
| CROWN EQUIPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BRADY; WILLIAM TUCKER; JOSEPH BOGGS; PNEU-MECH SYSTEMS MANUFACTURING, LLC; BRAWTUS HOLDING COMPANY, INC.; UNITED FINISHING SYSTEMS, LLC; BRAWTUS MANAGEMENT COMPANY, LLC; AND PNEU-MECH SYSTEMS MANUFACTURING, INC.,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Doc. No. 37),[1] the Memorandum and Recommendation of the Honorable Magistrate Judge David. C. Keesler ("M&R") entered February 23, 2024 (Doc. No. 48), Defendants' Objection to the M&R and Plaintiff's Reply (Doc. Nos. 49, 51). The Court has carefully considered

---

[1] Defendants Joseph Boggs, Pneu-Mech Systems Manufacturing, Inc. (Pneu-Mech 3.0), and United Finishing Systems, LLC (Pneu-Mech 4.0) have not moved for dismissal. Instead, each filed an Answer to the Complaint. *See* Doc. Nos. 34, 35, 37. Thus, this Order does not affect the claims against those Defendants.

1

this motion, the M&R, the objection, and the parties' filings in support of their respective positions. For the reasons discussed below, the Court will **DENY** the Objection and **AFFIRM** the M&R.

## I. LEGAL STANDARD

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (italics supplied). Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## II. FACTS AND PROCEDURAL HISTORY

In 1991, Defendant Brawtus Holding Company, Inc. ("Brawtus Holding") was incorporated as Pneu-Mech Systems Manufacturing, Inc. ("Pneu-Mech 1.0"). Doc. No. 1 at ¶ 18. Defendant David Brady was allegedly its President, CEO, or both, and Defendant William Tucker allegedly served as its Vice-President, General Manager, and Secretary. *Id.* The company

2

designed, fabricated, and installed paint finishing systems, and by 2001, it owned a commercial property (and the building on that property) located at 201 Pneu-Mech Drive in Statesville, North Carolina. *Id.* at ¶ 19.

In March 2004, Pneu-Mech 1.0 became Brawtus Holding. *Id.* at ¶ 20. Brady then formed Pneu-Mech Systems Manufacturing, LLC ("Pneu-Mech 2.0"). *Id.* Pneu-Mech 1.0, the sole member of Pneu-Mech 2.0, allegedly transferred its business operations to Pneu-Mech 2.0 and thus began to operate in the latter's name. *Id.* at ¶¶ 20-21, 23. Pneu-Mech 1.0 and Brady were the original designated Managers for Pneu-Mech 2.0, which operated at 201 Pneu-Mech Drive. *Id.* at ¶¶ 20-22. Brady also formed Brawtus Management Company, LLC ("Brawtus Management"), another single-member LLC with Pneu-Mech 1.0 as its sole member. *Id.* at ¶ 23. Like Pneu-Mech 2.0, Pneu-Mech 1.0 and Brady were the original designated Managers for Brawtus Management and it also maintained its headquarters at 201 Pneu-Mech Drive. *Id.* at ¶ 23. Further, Pneu-Mech 1.0 allegedly transferred its real estate holdings to Brawtus Management. *Id.* at ¶¶ 23-24.

This case arises out of a contract between Plaintiff Crown Equipment Corporation ("Crown Equipment") and Pneu-Mech 2.0, in which Crown Equipment paid Pneu-Mech 2.0 to engineer and construct a powder coating system. *Id.* at ¶¶ 65, 67. The engineering portion of the contract was awarded in September 2018 and the construction contract (together, the "Project") was awarded in February 2019. *Id.* at ¶¶ 67, 70.

This was not the first contract between the two companies. They previously did business in 2015 and 2017. However, between 2017 and the Project contract, Defendants Brady and Tucker transferred Pneu-Mech 2.0's assets to Pneu-Mech Systems Manufacturing, Inc. ("Pneu-Mech 3.0"). *Id.* at ¶¶ 27-29. The terms of the alleged $9 million asset transfer sale included James Andrews and Jerry Trostle buying Pneu-Mech 2.0's assets under a 100 percent owner financed

3

transaction, which included a multi-year lease of 201 Pneu-Mech Drive. *Id.* at ¶¶ 27, 29. Plaintiff alleges numerous relationships among these companies: Brady and Tucker were both the lender and landlord of Pneu-Mech 3.0. *Id.* at ¶ 28. Also, even though Andrews became President and Trosle became Vice-President and Secretary of Pneu-Mech 3.0, Brady and Tucker remained in control and were on Pneu-Mech 3.0's Board of Directors. *Id.* at ¶ 31. Joseph Boggs, Pneu-Mech 3.0's Chief Financial Officer not only sat on the Board of Directors, but also served as the accountant for Brady and Tucker's other companies. *Id.* Pneu-Mech 3.0 took over Pneu-Mech 2.0's equipment, ordinary business obligations, records and documents, and employees. *Id.* at ¶ 33. And, finally, Brady and Tucker allegedly stripped Pneu-Mech 2.0 of approximately $2 million in cash before the sale closed. *Id.* at ¶ 37.

Crown Equipment was unaware of the transfer of assets at the time the Project contracts were awarded. *Id.* at ¶¶ 61, 72. It alleges that it paid 28 invoices total under the Project to Pneu-Mech 3.0, despite the contract having been awarded to Pneu-Mech 2.0. *Id.* at ¶¶ 68, 71.

In early 2022, once work had been substantially completed, Crown Equipment discovered numerous problems with the completed work. *Id.* at ¶ 75. Around the same time, Pneu-Mech[2] asked Crown Equipment for an additional payment of $330,000. *Id.* at ¶ 76. The parties entered into an Addendum to the Project contracts covering "Pneu-Mech's servicing, maintaining, correcting, repairing, replacing or otherwise fixing issues unrelated to the cure oven" (which it allegedly later acknowledged it could not fix). *Id.* at ¶ 77. In connection with those negotiations, Pneu-Mech informed Crown Equipment that it was actively engaged with a third-party to either sell its assets or sell an equity interest in the company. *Id.* at ¶ 78. Pneu-Mech agreed in the

---

[2] In this portion of the Complaint, "references to 'Pneu-Mech' are to Pneu-Mech 2.0 and Pneu-Mech 3.0, collectively." *Id.* at ¶ 73.

4

Addendum that any purchaser would assume its full obligations under the parties' agreement. *Id.* at ¶ 80.

In July 2022, Pneu-Mech stopped working on the Project. *Id.* at 82. At that point, Pneu-Mech allegedly owed millions to its creditors. *Id.* at ¶ 39. Wenker Inc. ("Wenker"), a subsidiary of a German company providing finishing systems similar to Pneu-Mech 3.0, explored a potential acquisition. *Id.* at ¶ 40. Brady and Tucker, who allegedly exercised enough control over Pneu-Mech 3.0 that the company could not spend more than $10,000 at one time without their approval, required Wenker to present any offer to them. *Id.* at ¶¶ 38, 41. Wenker held a meeting with Brady and Tucker (Trostle and Andrews were allegedly excluded from the meeting) and rejected the sale. *Id.* at ¶¶ 39, 42. At the end of July 2022, Brady and Tucker[3] declared Trostle and Andrews in default and ordered them to vacate 201 Pneu-Mech Drive immediately. *Id.* at ¶ 43. Brady and Tucker, with the help of Boggs, allegedly changed the locks at 201 Pneu-Mech Drive, took control of all Pneu-Mech 3.0 assets, and transferred those assets to another successor company after Pneu-Mech 3.0 became insolvent. *Id.* at ¶¶ 44-45. That successor company, United Finishing Systems LLC ("Pneu-Mech 4.0") was registered as a North Carolina LLC, with Alwyn Moody as its President and Brady its Vice President. *Id.* at ¶ 47.

Pneu-Mech 4.0 allegedly utilized the same property as Pneu-Mech 3.0 (although it changed the name of the physical address to 201 United Drive), provided the same services, used a nearly identical website, and took credit for contracts with several major companies which had actually worked with Pneu-Mech 3.0. *Id.* at ¶¶ 48, 52. It also allegedly retained Pneu-Mech 3.0's

---

[3] The Complaint states that "On around Wednesday, July 27, 2022, within days of the Wenker meeting, Brady and Trostle declared the Note in default and gave Trostle and Andrews notice to vacate 201 PneuMech Drive or be deemed trespassers." *Id.* at ¶ 43. The Court presumes the sentence should have read "Brady and Tucker," not "Brady and Trostle" because the following sentence states that "Brady and Tucker instructed Andrews and Trostle to turn in their keys…" *Id.*

5

employees. Brady and Tucker allegedly were on the Board of Directors for Pneu-Mech 4.0 and dominated it the same way as they did Pneu-Mech 3.0. *Id.* at ¶ 51.

While this was occurring, Crown Equipment was forced to hire a third-party contractor to correct and repair the cure oven at significant expense. *Id.* at ¶¶ 83-84. In addition, one of Pneu-Mech's subcontractors filed a lien on the Crown Equipment facility and then sued Crown Equipment in August 2022 for more than $300,000 it claimed it is owed by Pneu-Mech for its work on the Project. *Id.* at ¶ 85. Crown Equipment's settlement with the subcontractor included the subcontractor assigning its claims against Pneu-Mech to Crown Equipment. *Id.*

Crown Equipment filed its Complaint in May 2023, bringing claims for (1) negligence causing damage to Crown's property (against Pneu-Mech 2.0 and Pneu-Mech 3.0); (2) negligence causing damage to the powder coating system (against Pneu-Mech 2.0 and Pneu-Mech 3.0); (3) breach of engineering contract, construction contract and addendum (against Pneu-Mech 2.0 and Pneu-Mech 3.0 (a/k/a "Pneu-Mech")); (4) breach of fiduciary duty (against Brady and Tucker); (5) breach of fiduciary duty (against Boggs); (6) aiding and abetting breach of fiduciary duty (against Boggs); (7) fraud (against Pneu-Mech 3.0); (8) successor liability under North Carolina and Federal Common Law (against Pneu-Mech 3.0); (9) successor liability under North Carolina and Federal Common Law (against Pneu-Mech 4.0); (10) fraudulent transfer in violation of the North Carolina Fraudulent Transfer Act ("NCFTA") (against Brady, Tucker, Pneu-Mech 2.0, and Pneu-Mech 3.0); (11) fraudulent transfer in violation of the North Carolina Fraudulent Transfer Act ("NCFTA") (against Brady, Tucker, Brawtus Management, Pneu Mech 1.0, Pneu-Mech 2.0, Pneu-Mech 3.0 and Pneu-Mech 4.0); (12) Common Law piercing of the corporate veil / alter ego (against Brady and Tucker); and (13) alter ego doctrine / single business enterprise / instrumentality rule (against all corporate entity Defendants). *Id.* at ¶¶ 106-239.

6

In August 2023, the Defendants filed their Motion to Dismiss for Failure to State a Claim. Doc. No. 37. The Magistrate Judge subsequently issued his M&R, in which he recommended that Defendants' motion be denied. Doc. No. 48. The Defendants filed an Objection to the M&R and Plaintiff then filed its Reply. Doc. Nos. 49, 51. Thus, the Motion is now ripe for this Court's review.

## III. DISCUSSION

### A. Breach of Contract and Negligence (against Pneu-Mech 2.0 and 3.0)

Defendants first object to the Magistrate Judge's recommendation to allow the breach of contract and negligence claims against Pneu-Mech 2.0 to go forward on the grounds that any contracts were exclusively between Pneu-Mech 3.0 (not party to this motion) and Crown Equipment. The Court agrees with the recommendation in the M&R.

Crown Equipment attached to its Complaint several exhibits showing that the two companies are effectively interchangeable. The Project contracts were made with Pneu-Mech Systems Manufacturing, *LLC*, (Pneu-Mech 2.0) not *Inc.* (Pneu-Mech 3.0). *See* Doc. Nos. 1-6 (project bid from Pneu-Mech 2.0 dated February 2018), 1-7 (project bid from Pneu-Mech 2.0 dated August 2018), 1-8 (a purchase order from Crown Equipment to Pneu-Mech 2.0 dated January 2019). However, invoices from October 2018, November 2018, January 2019 and February 2019 come from Pneu-Mech 3.0. Doc. No. 1-8, 1-9, 1-10, 1-11. And yet, the Addendum signed in June 2022 is between Crown Equipment and Pneu-Mech 2.0. Doc. No. 1-14. Perhaps unsurprisingly, Crown Equipment has specifically alleged that even Pneu-Mech 3.0's employees saw it as a "mere continuation of Pneu-Mech 2.0." *See* Doc. No. 1 at ¶ 63.

This assertion is bolstered by allegations that Brady and Tucker, who were in charge of Pneu-Mech 2.0, were on Pneu-Mech 3.0's Board of Directors and maintained enough control over

7

Pneu-Mech 3.0 that they were able to unilaterally veto the offer from Wenker, evict Andrews and Trostle (the President and Vice President of Pneu-Mech 3.0) from the property, block their access to Pneu-Mech 3.0's email and banking information, and transfer Pneu-Mech 3.0's assets to another successor company on their own initiative. *Id.* at ¶¶ 38-39, 41-42, 44-45. Further, their control over Andrews and Trostle began well before the sale. Andrews worked for both Pneu-Mech 1.0 and 2.0 (eventually serving as Pneu-Mech 2.0's President) and Trostle served as Pneu-Mech 2.0's Vice President of Sales. Moreover, Pneu-Mech 3.0 allegedly operated its predecessor's equipment, assumed its ordinary business obligations, kept its records and documents, operated with most of the same employees, and shared several of its owners/directors/officers. *Id.* at ¶ 33. Thus, the Court finds that Pneu-Mech 2.0 and Pneu-Mech 3.0 were plausibly both party to the Project contracts.

As for Defendants argument that Pneu-Mech 2.0 cannot be liable for tort/negligence liability because Crown Equipment relied on a contractual duty to design and install the machinery described in the Complaint, the Court agrees with, and adopts, the M&R's reasoning that Crown Equipment has plausibly argued that this principle does not apply given that (1) Defendants dispute their contractual relationship, (2) there is a legal duty to act with reasonable care notwithstanding a contract, and (3) that the damage to Crown Equipment's property was not subject to the contract. *See* M&R at 10.

### B. Breach of Fiduciary Duty (against Brady and Tucker)

Defendants next object that the Magistrate Judge erred in concluding that Plaintiff plausibly alleged that they owed it a fiduciary duty. However, Defendants offer no specific argument on this point. Thus, "even if [their] brief takes a passing shot at the issue," they have waived it by failing to develop it. *Carr v. Commission of Social Security*, 3:20-cv-00425-FDW-

DSC, 2022 WL 987336 (W.D.N.C. Mar. 31, 2022) (quoting *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)).

### C. Fraudulent Transfer (against Brady and Tucker and Pneu-Mech 2.0)

Defendants next object that the Magistrate Judge erred in concluding that the fraudulent transfer claims are plausible because Plaintiffs did not identify which transactions were allegedly fraudulent under the North Carolina Fraudulent Transfers Act or any predicate facts suggesting those transactions were fraudulent.

However, in the Complaint, Crown Equipment specifically alleged that "While dominating and controlling the Brady-Tucker Entities, Brady and Tucker, on information and belief, caused Pneu-Mech 2.0 and Pneu-Mech 3.0 to transfer certain assets to Brady and Tucker." Doc. No. 1 at ¶ 205. Crown Equipment further alleges that the unlawful transfers include the transfer of cash from Pneu-Mech 2.0 to Brady and Tucker, *id.* at ¶¶ 37, 208, and transfers made (after threat of a lawsuit) to a lienor who in turn transferred the assets to an insider of the debtors, *id.* at ¶ 209. Moreover, throughout the Complaint, Crown Equipment alleges that Defendants transferred assets between Pneu-Mech 2.0 and 3.0 without receiving equivalent value, leaving behind entities engaged in business with unreasonably small remaining assets in relation to their business. *Id.* at ¶¶ 9, 33, 55, 207, 216-217.

Thus, at this stage, Crown Equipment has plausibly and specifically alleged fraudulent transfer claims and the Court will deny the objection.

### D. Veil Piercing (against Brady and Tucker and Pneu-Mech 2.0)

Defendants lastly object to the recommendation to allow the veil piercing claims to go forward on the grounds that Brady and Tucker sold the assets in Pneu-Mech 2.0 to Andrews and

9

Case 5:23-cv-00059-KDB-DCK   Document 52   Filed 03/21/24   Page 9 of 10

Trostle/Pneu-Mech 3.0 and Pneu-Mech 3.0 is the only enterprise that issued invoices and received payment from Crown Equipment.

As discussed in Section A, documents attached the Complaint show that while invoices came from Pneu-Mech 3.0, all bidding proposals and even the later Addendum involve Pneu-Mech 2.0. The Court further reincorporates its analysis of the control Brady and Tucker exercised over Pneu-Mech 3.0. Taken together, those allegations plausibly allege that Brady and Tucker completely dominated Pneu-Mech 3.0, used their authority to enrich themselves while failing to complete their contractual obligations, and that these actions were the proximate cause of Crown Equipment's alleged injuries. *See State ex. rel. Cooper v. Ridgeway Brands Mfg., LLC*, 666 S.E.2d 107, 114 (N.C. 2008). Thus, the Court will deny this objection as well.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The M&R (Doc. No. 48) is **AFFIRMED;**
2. Defendants' Objection (Doc. No. 50) is **DENIED**; and
3. This case shall **proceed toward trial on the merits** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 21, 2024

Kenneth D. Bell
United States District Judge

10

Case 5:23-cv-00059-KDB-DCK   Document 52   Filed 03/21/24   Page 10 of 10