IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CROWN EQUIPMENT CORPORATION, | )<br>) |
| PLAINTIFF, | )<br>) |
| | ) Civil Action No. 5:23-cv-00059<br>) |
| v. | )<br>) |
| DAVID BRADY, WILLIAM TUCKER, JOSEPH BOGGS, BRAWTUS HOLDING COMPANY, INC. (f/k/a Pneu-Mech Systems Manufacturing, Inc.), BRAWTUS, MANAGEMENT COMPANY, LLC, PNEUMECH SYSTEMS MANUFACTURING, LLC (K.N.A. Pneu-Mech Dissolution, LLC), PNEU-MECH SYSTEMS MANUFACTURING, INC., UNITED FINISHING SYSTEMS LLC | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| DEFENDANTS, | )<br>) |
| v. | )<br>) |
| JAMES ANDREWS and JERRY TROSTLE, | )<br>)<br>) |
| THIRD-PARTY DEFENDANTS. | ) |

_____

## THIRD-PARTY COMPLAINT

David Brady, William Tucker, Brawtus Holding Company, LLC, and Brawtus Management Company, LLC ("Third-party Claimants"), hereby bring this Third-Party Complaint against James Andrews ("Andrews") and Jerry Trostle ("Trostle"), as Third-Party Defendants, stating as follows.

### JURISDICTION AND VENUE

1. Third-party claimants are citizens of North Carolina and reside in this District.

2. Andrews and Trostle are citizens of North Carolina and reside in this District.

3. This Court has general jurisdiction over the Third-Party Defendants.

4. This Court has subject matter jurisdiction over Defendants under Federal Rule of Civil Procedure 14(a), because this Third-Party Complaint otherwise presents a federal question, and/or because supplemental or ancillary jurisdiction over these claims is otherwise proper.

**FACTS**

5. David Brady ("Brady") and William Tucker ("Tucker") successfully ran Pneu-Mech Systems Manufacturing, LLC (the "Company") for nearly 20 years. During this period, they took on numerous employees, some of which ultimately expressed interest, in 2017, in taking over control of the Company and wishing to purchase the Company's assets, as Brady and Tucker were nearly retirement age and no longer wished to run the Company as a going concern.

6. The employees that ultimately noted interest in the Company were James Andrews ("Andrews") and Jerry Trostle ("Trostle"). At the time that they expressed interest in purchasing the Company's assets, Andrews and Trostle were both in positions of trust within the Company and were assisting with running day-to-day operations, as well as undertaking new client acquisition and contract acquisition for Pneu-Mech.

7. The parties, after discussing a sale price, ultimately utilized the law firm Pope McMillan in Statesville, North Carolina to draw up an Asset Purchase Agreement ("Agreement") in late December 2017, with an effective date of 12:01am, January 1, 2018. The parties, along with the Company's parent company, Brawtus Holding Company, Inc., executed this Agreement. Brawtus Holding Company, Inc., was wholly owned by Brady and Tucker.

8. The Agreement included a sales price of $8,500,000.00, payable in monthly installments of $65,024.43, for 180 total months.

9. The terms of the Agreement included the transfer of the physical assets and going concerns of the Company, including accounts receivable after a certain date. The physical assets also included extensive equipment, vehicles, office supplies, and works-in-process.

10. Brady and Tucker, when the sale ultimately closed, were paid $1,865,380.00 in cash from the Company's bank account. On deposit left with the Buyer was a remainder of $500,000.00 of operating capital.

11. A Promissory Note, detailing the amortization and total balance of the finance agreement was entered into by Andrews and Trostle, with a first repayment date of February 1, 2018.

12. Pneu-Mech Holdings, Inc., a company created by Andrews and Trostle to purchase the assets from Pneu-Mech Systems Manufacturing, LLC, also entered into a lease agreement for 201 Pneu-Mech Drive (now United Drive). The owner of this real estate was Brawtus Management Company, LLC, whose members are Brady and Brawtus Holding, Inc., of which Brady and Tucker are shareholders.

13. The sale price of Pneu-Mech's assets were split between intangible assets, valued at $6,932,000.00, and the physical assets, valued for the remainder, $1,568,000.00.

14. After the sale was executed, Pneu-Mech Systems Manufacturing, LLC was renamed to Pneu-Mech Dissolution, LLC, and administratively dissolved thereafter.

15. Pneu-Mech Holdings, Inc., the Company created by Andrews and Trostle to purchase the assets of now-Pneu-Mech Dissolution, LLC, changed its name to Pneu-Mech Systems Manufacturing, Inc., after the name-change was effectuated from Brady.

16. Brady and Tucker advised Trostle and Andrews on business operations from time-to-time, both to help Trostle and Andrews and to ensure profitable operations so that Trostle and Andrews could pay off the Promissory Note.

17. Throughout 2018 and until Pneu-Mech Systems Manufacturing ultimately failed in 2022, Brady and Tucker routinely warned Andrews and Trostle that they needed to substantially cut spending and take smaller jobs, given the state of the market, as well as the inability of a smaller operation like Pneu-Mech to take on much larger jobs. These warnings went ignored, and Andrews and Trostle, who had the sole authority to make business decisions and take on jobs, decided to take on jobs well-beyond their capacity and skill level. This included jobs like the project involving the Plaintiff, which vastly exceeded the annual revenue of the business.

18. Brady and Tucker specifically warned Trostle and Andrews not to take the Crown job for these reasons.

19. Trostle and Andrews took the Crown job anyway, despite the repeated warnings of Brady and Tucker.

20. After the purchase of the Company in late-2017, Andrews and Trostle immediately gave themselves significant salary raises of $25,000.00, each, and incorporated those raises into the Asset Purchase Agreement.

21. Andrews and Trostle took out significant "shareholder loans" from the business after the sale. These loans totaled, depending on whether interest was calculated, between $89,127.92 in 2019, and $93,196.84, being owed as of December 2021.

22. Even though Pneu-Mech Systems Manufacturing, LLC had changed its name to Pneu-Mech Dissolution, LLC in February 2018, Andrews and Trostle continued to use the name

Pneu-Mech Systems Manufacturing, LLC on its letterhead and in other communications, even though the name had changed substantially (to a name that would suggest to any reader that the entity was not an ongoing concern), and even though Trostle and Andrews knew that the actual company was now operating under Pneu-Mech Systems Manufacturing, Inc., a name change that occurred after the sale of the Company because the Company had the right to that name before the sale.

23. Andrews and Trostle are sophisticated businessmen, with several company ownership interests each. They knew of this clear difference, and yet they continued to use this false letterhead, and other false communications suggesting that Pneu-Mech Systems Manufacturing, LLC was an ongoing concern in which customers were engaging.

24. Nevertheless, Trostle and Andrews used this false letterhead, and other false communications claiming to represent or implying that they represented the essentially defunct Pneu-Mech Systems Manufacturing, LLC, in dealing with Crown Equipment Corporation, despite their sophistication and knowledge that such communications were false and knowing that in fact the entity was named Pneu-Mech Dissolution LLC and that it was not an ongoing concern.

25. Only when Crown had to issue payment under the contract did Andrews inform them that they would be writing checks to the "Inc.," as they didn't have a bank account for the dissolved LLC.

26. Brady and Tucker were not included in any communications between Andrews, Trostle, and any Crown representatives.

27. The Crown job did not come to fruition until nearly a year after Brady and Tucker had sold Pneu-Mech's assets to a legal entity wholly owned by Andrews and Trostle and/or a parent company wholly owned by Trostle and Andrews.

28. Brady and Tucker did not speak a single time with anyone from Crown for the job described in the Complaint that Crown alleges gives rise to liability.

29. Brady and Tucker were of such limited involvement that they were only at annual meetings to discuss the finances of the Company. They were completely, and intentionally, left out of any operating business discussions, after having sold the Company.

30. In the limited number of meetings with Andrews and Trostle, Brady and Tucker gave progressively dire warnings about Andrew and Trostle's excessive overhead and the fact that they would likely soon be unable to cover ordinary operating expenses, especially if they took on additional high operating expense work.

31. Trostle is also an executive level board member of a company called "AFI Carolinas." AFI conducts liquid and powder sign coating. Trostle was a member of this Company at the same time that he was a shareholder of Pneu-Mech, Inc.

32. Brand Performance Fabrication, LLC ("BPF") is another wholly owned subsidiary of AFI that conducts welding and fabrication services and creating made-to-order custom parts. Andrews is the member-manager of BPF. Andrews was a shareholder, officer, and board member of Pneu-Mech Systems Manufacturing, Inc. at the same time he was a member-manager of BPF.

33. By mid-2022, Pneu-Mech Systems Manufacturing, Inc. was severely deficient in its obligation to pay Brady and Tucker pursuant to the financing agreement they had reached.

On information and belief, this had exceeded $600,000 in arrearage principal, being roughly 10 months in arrears.

34. In the final annual meeting that was held by Andrews and Trostle, to which Brady and Tucker were invited, they informed Brady and Tucker that the 15-year note was likely not going to be repaid without significant hardship. When queried how they would need to restructure the note, the accountant working on the matter informed them that it was likely too late and that Pneu-Mech Systems Manufacturing, Inc. didn't have cash sufficient pay up the interest or even begin making progress against the arrearage payments.

35. By the time that Brady and Tucker, as creditors of Pneu-Mech Systems Manufacturing, Inc. called the note in default and repossessed the various assets of the business, they discovered a number of outstanding invoices and accounts receivable to both AFI and BPF.

36. AFI owed an invoice for the provision of certain items, totaling $26,500.00.

37. AFI also owed several other invoices totaling $20,124.34.

38. AFI also owed accruing interest on those invoices, which were, as of 2022, unpaid. The total balance, with interest, was $58,112.24, when Pneu-Mech Systems Manufacturing, Inc. ceased operations.

39. BPF, on the other hand, had an accounts payable balance to Pneu-Mech Systems Manufacturing, Inc. of $179,072.37, by the end of 2021.

40. On information and belief, Andrews and Trostle were siphoning away work that could have been completed by Pneu-Mech Systems Manufacturing, Inc., because they were seeking to have the money earned by their subsidiaries, and carrying an open balance with Pneu-Mech Systems Manufacturing, Inc., an enterprise they fully intended to bankrupt, being well underwater by the period of 2021-2022.

41. On information and belief, there was no intention of ever paying the invoices to AFI or BPF by either Andrews or Trostle, because they were aware of the financial straits of Pneu-Mech Systems Manufacturing, Inc. and knew the money was going to disappear into interest arrearage payments.

42. On information and belief, Pneu-Mech Systems Manufacturing, Inc. supplied materials and labor to both AFI and BPF during the period of ownership by Andrews and Trostle, and was rarely, if ever, paid.

43. Andrews and Trostle have routinely sought to palm off liability for their failure to intelligently conduct the business of Pneu-Mech Systems Manufacturing, Inc., onto Brady and Tucker, despite failing to heed any of their financial advice regarding running the Company.

44. Andrews and Trostle have directly spoken to the Plaintiff in this case, and are actively aiding the Plaintiff in this case, including by misdirecting blame for the Plaintiff's alleged wrongdoing at Brady and Tucker, even though Brady and Tucker have nothing to do with the wrongdoing alleged in the Complaint.

45. Andrews and Trostle have also pointed the finger at Brady and Tucker regarding contracts that were entered into in 2022 with another business, Queen's Logistics, LLC, nearly 4 years after the sale, and have told opposing parties to sue them directly, claiming insufficient assets to make various prior customers whole.

46. At the time the Queen's Logistics contracts were negotiated by Andrews and Trostle, Pneu-Mech Systems Manufacturing, Inc. was functionally bankrupt, with assets outweighed by liabilities 3 to 1 or more, and were likely not going to maintain operations much longer.

Despite this knowledge, Andrews and Trostle continued taking on new work and entering new contracts with no intention of ever paying invoices.

47. Brady and Tucker have engaged in no wrongdoing in this case, given that they had zero authority to manage day-to-day business operations of Pneu-Mech Systems Manufacturing, Inc., and given the fact that they specifically told Andrews and Trostle not to take the job that led to this lawsuit.

**COUNT I**
**INDEMNITY**

48. Third-Party Claimants hereby incorporate by reference paragraphs 1-47.

49. Under these facts, Third-Party Claimants are entitled to indemnity from Trostle and Andrews if any liability attaches to Third-Party Claimants in this suit, whether by written contract, at common law, or as otherwise provided in law or equity in North Carolina.

50. Third-Party Claimants are further entitled to recover attorney's fees and costs for the same reason.

**COUNT II**
**VIOLATION OF LANHAM ACT § 43(a)**

51. Third-Party Claimants hereby incorporate by reference paragraphs 1-47.

52. Trostle and Andrews made a false or misleading statement of fact when they (a) told Crown and their other vendors that Third-Party Claimants were responsible for what was actually Trostle and Andrews' malfeasance; (b) told Crown and other vendors that Third-Party claimants secretly controlled the operations of Pneu-mech following the sale of the enterprise to Trostle and Andrews; (c) told Crown and other vendors that Third-Party Claimants had control over the actions of Pneu-mech after the sale; and/or (d) when they engaged in the other acts alleged in this Third-Party Complaint.

53. These acts were likely to cause mistake, or to deceive as to the affiliation, connection, or association of Third-Party Claimants with Trostle and Andrews' business, or as to the origin, sponsorship, or approval of Trostle and Andrew's goods, services, or commercial activities, and in fact these acts did cause such mistake or deception.

54. Third-party Claimants are entitled to all damages suffered, its costs, and its attorneys fees, including all damages, costs, and attorneys fees incurred as the result of this suit.

## COUNT III
## DEFAMATION

55. Third-Party Claimants hereby incorporate by reference paragraphs 1-47.

56. Trostle and Andrews made a false statement of fact when they (a) told Crown and their other vendors that Third-Party Claimants were responsible for what was actually Trostle and Andrews' malfeasance; (b) told Crown and other vendors that Third-Party claimants secretly controlled the operations of Pneu-mech following the sale of the enterprise to Trostle and Andrews; (c) told Crown and other vendors that Third-Party Claimants had control over the actions of Pneu-mech after the sale; and/or (d) when they engaged in the other acts alleged in this Third-Party Complaint.

57. These acts defamed Third Party Claimants with respect to their trade or business, and otherwise caused them to suffer damage, insofar as Trostle and Andrews wrongly made others believe that Third Party Claimants were responsible for the bad acts in which Trostle and Andrews engaged, as described in this Third Party Complaint and in the underlying suit.

58. Trostle and Andrews knew that these statements were false and made them knowingly, intentionally, wilfully, and maliciously to harm the reputation of Third-Party Claimants and thereby shift blame for Trostle and Andrew's incompetence.

59. Third-party Claimants are entitled to all damages suffered, its costs, including all damages and costs incurred as the result of this suit.

60. Third Party Claimants are also entitled to punitive damages in the maximum amount permitted by law.

## COUNT IV
## VIOLATION OF NCGS 75-1.1 – DECEPTIVE TRADE PRACTICES

61. Third-Party Claimants hereby incorporate by reference paragraphs 1-47 and 55-60.

62. The defamation recited in Count III further violates the North Carolina Deceptive Trade Practices Act, entitling Third Party Claimants to treble damages and attorneys' fees.

## COUNT IV
## BREACH OF FIDUCIARY DUTIES

63. Third-Party Claimants hereby incorporate by reference paragraphs 1-47.

64. Trostle and Andrews had an obligation to Third-Party Claimants, as secured creditors, to use company assets to their benefit and in a manner that did not prefer unsecured creditors.

65. Trostle and Andrews breached this duty when, knowing that their business was becoming insolvent, they siphoned substantial sums of money to their other enterprises and to themselves, as otherwise set forth in this Third-Party Complaint.

66. Third-Party Claimants were damaged in that they did not fully recover the money owed to them under the promissory note, or as otherwise owed under the asset sales agreement.

67. Third-Party Claimants did these acts intentionally, knowingly, willfully, and maliciously.

68. Third-Party Claimants are therefore entitled to its damages and costs, and further, to punitive damages to the maximum extent permitted by law.

WHEREFORE, Third-Party Claimants respectfully request that this Court order the relief requested above, and any other relief it deems just and proper.

Dated: May 2, 2024

BY COUNSEL

/Andrew P. Connors/
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
(Admitted *Pro Hac Vice*)
DARKHORSE LAW PLLC
119 Tradewynd Dr., Suite B
Lynchburg, Virginia 24502
Phone: 540-553-8149 ext. 2
Fax: 540-301-6460
andrew@darkhorse.law

John Riordan (NC. Bar No. 54973)
FIDELITY LAW GROUP
8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

Abbi White Harris, Esq. (NC Bar No. 59883)
Naman, Howell, Smith, and Lee
400 Austin Ave., Suite 800
Waco, TX 76701
Phone: 254-755-4112
Fax: 254-754-6331

*Counsel for Defendants David Brady, William Tucker, Brawtus Holding Co., Inc., Brawtus Management Co., LLC, and Pneu-Mech Dissolution LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all counsel of record via CM/ECF.


<u>/Andrew P. Connors/</u>
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
DARKHORSE LAW PLLC
Phone: 540-553-8149 ext. 701
Fax: 540-301-6460
andrew@darkhorse.law

*Counsel for Defendants Brady,*
*Tucker, Brawtus Holding, Inc.,*
*Brawtus Management LLC, and Pneu-*
*Mech Dissolution LLC*