IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | |
|---|---|
| CROWN EQUIPMENT CORPORATION, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>DAVID BRADY, *et al.* )<br>)<br>DEFENDANTS. ) | Civil Action No. 5:23-cv-00059 |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS CROSSCLAIM

### I. INTRODUCTION

Defendants David Brady ("Brady"), William Tucker ("Tucker"), Brawtus Holding Company, Inc., Brawtus Management Company, LLC, and to the extent they have any interest in Pneu-mech Dissolution, LLC (collectively, the "Brady-Tucker Defendants"), hereby submit this Memorandum in Opposition to the Motion to Dismiss by crossclaim Defendant, Pneu-Mech Systems Manufacturing, Inc. (the "Corporation"). The Corporation's Motion to Dismiss fundamentally ignores substantial facts pled in both the initial complaint and the Brady-Tucker Defendants' crossclaim, all of which provide more than ample support for their claim of indemnity. After all, the rule authorizing the crossclaim that the Brady-Tucker Defendants filed explicitly provides that "[t]he crossclaim may include a claim that the coparty is or *may be liable* to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." Fed. R. Civ. Pro. 13(g) (emphasis added). This is exactly what these Defendants have done here, explaining through their pleading that, if they are indeed liable under the plaintiff's veil piercing

1

or other theories,[1] it follows that they are entitled to indemnity from the Corporation for several distinct reasons, as this memorandum sets forth in more detail below.

## II. STATEMENT OF FACTS

Crown Equipment Corporation ("Crown") filed suit against a large group of defendants based on damages they allegedly suffered from the allegedly negligent design and manufacture of the oven by Pneu-mech Systems Manufacturing. *See generally* Compl. This action diverges from a more typical negligence action in that the defendants include the previous owners of Pneu-mech Systems Manufacturing, Brady and Tucker, and their legal entities. *See generally* Compl. The Complaint includes detailed factual allegations against these prior owners alleging that they engaged in a sale of their business to Jerry Trostle ("Trostle") and James Andrews ("Andrews"), new owners who then set up the Corporation to take over all the business' assets several months before the start of the curing oven project that is the subject of the Complaint and years before the alleged negligence arose and the alleged damage occurred. Compl. ¶ 3, 4, 27. Nevertheless, the Complaint alleges that Brady and Tucker were members of a Board of Directors for the Corporation and had a fiduciary duty to Crown as a creditor by virtue of their position as directors. Compl. ¶ 38, 132. The Complaint further alleges Brady and Tucker effectively exercised plenary control over the Corporation, even though, on the Complaint's own terms, Brady and Tucker had sold the business well-before the alleged negligence. Compl. ¶ 29, 38. Even so, the Complaint alleges that Brady and Tucker were the "de facto" owners of the Corporation, so that the Complaint could make a case to pierce the veil and potentially reach their assets. Compl. ¶ 38, 103.

---

[1] Notably, the Rule explicitly says that a crossclaim plaintiff can assert a theory in which the crossclaim defendant "may be liable," an obvious reference to exactly what the Brady-Tucker Defendants have done here by seeking indemnity *if* they are found liable. Of course, these Defendants make no admission that they have any liability by asserting this theory.

2

Case 5:23-cv-00059-KDB-DCK    Document 82    Filed 06/21/24    Page 2 of 12

For their part in their Crossclaim, Brady and Tucker deny that they exercised any significant control over the Corporation or that they owned anything, and it is nonsensical for Crown to allege they exercised control given that they sold the business to Trostle and Andrews. See generally Crossclaim. Instead, Brady and Tucker allege in the crossclaim that they merely advised Trostle and Andrews on the operations of the Corporation from time-to-time, and that they explicitly warned Trostle and Andrews repeatedly not to take the Crown job, given its size and scope, which was well-beyond the size and scope of any project the company had previously done. Crossclaim ¶ 17, 19. Yet, according to the Crossclaim, Trostle and Andrews ignored this advice, and instead took several jobs, including the one with Crown, knowing or having reason to know they could not properly fulfill them, and all the while engaging in extravagant expenses designed to sap the company of its resources and fill Andrews' and Trostle's personal coffers. Crossclaim ¶ 18, 20. As alleged in the Crossclaim, Andrews and Trostle not only ignored Brady and Tucker's business advice, but also continued to deceive potential clients as they used the both Pneu-mech Systems, LLC's letterhead and false signatures on communications, even though Andrews and Trostle knew they were operating under a new business entity. Crossclaim ¶ 23-4. Both Andrews and Trostle are sophisticated businessmen who intentionally chose to use this misnomer to obtain clients and deceive them into thinking Pneu-mech Systems, LLC was still in existence. Crossclaim ¶ 24. Andrews and Trostle did not reveal they were a separate business entity until it was time to receive payment from Crown. Crossclaim ¶ 26.

Brady and Tucker allege they gave this advice while members of the board for the Corporation in which duly enacted bylaws provided for indemnity for any acts they engaged in on behalf of the Corporation. Crossclaim ¶ 52-4. Those bylaws are attached to this Memorandum

3

in Opposition as Exhibit 1 and are referred to explicitly in the Crossclaim as providing indemnity for the acts of the Directors.[2]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading, like a crossclaim, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a court may dismiss a crossclaim for failure to state such a claim. The purpose of this rule is to "test the sufficiency of a [crossclaim] and not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff need not demonstrate the merits of allegations made or draw conclusions about evidence to satisfy *Iqbal* and *Twombly*. *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012), nor must a crossclaim "make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim." *Id.* at 291 (internal quotations omitted).

Thus, a crossclaim plaintiff need only allege facts in in its pleading which, if true, demonstrate that the plaintiff is entitled to relief. *Baker v. McCall*, 842 F. Supp. 2d 938, 942-43 (W.D. Va. 2012). Those facts should be construed in the light most favorable to the plaintiff, and the court should further draw all factual inferences in favor of the plaintiff. *Id.* at 943. Although a court is generally confined to the facts alleged in the complaint, "'a court may consider . . . documents central to [a] plaintiff's claim . . . and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.'" *Id.* (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006)). Ultimately, a crossclaim "may proceed

---

[2] The bylaws are for "Pneu-mech Holdings, Inc.," which is the former name of the Corporation before it changed its name to Pneu-mech Systems Manufacturing, Inc. At Article VII, the bylaws provide broad indemnity for any member of the Board of Directors, which it says include Brady and Tucker.

4

even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 434 (4th Cir. 2015) (quoting *Twombly* 550 U.S. at 556). "Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ne. Solite Corp. v. Unicon Concrete, LLC*, 102 F. Supp. 2d 637, 640 (M.D.N.C. 2000). In other words, "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Id.* (quoting *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989)).

## IV. ARGUMENT

This Court should easily deny the third-party defendants' bare bones motion to dismiss, which ignores large swaths of significant facts pled in both the Complaint and the Crossclaim that are relevant to the single indemnity count that the Brady-Tucker Defendants have properly pled. As explained in this memorandum, the allegations in the pleadings—including both the Complaint and the Amended Crossclaim—are sufficient to support a theory of indemnity recognized in North Carolina, whether based on an express contract, an implied-in-fact contract, or a contract implied-in-law.

First, Crown says simply that "there is not a written contract with an indemnification provision" while completely ignoring the specific allegations in the Crossclaim that when the Corporation was formed, Brady and Tucker were appointed to a board of directors for the Corporation; the duly enacted bylaws of the Corporation gave indemnity to the members of the board for their assistance to the Corporation; and Brady and Tucker specifically assisted the Corporation by giving advice on its operations from time-to-time, including advice specifically relating to the project for which they now seek indemnification. This plainly satisfies the low bar

5

for pleading based upon an express contract for indemnity, and to remove all doubt of its existence, the Brady-Tucker Defendants have attached the bylaws to this filing.

Second, assuming *arguendo* that a jury would not be satisfied that the above conduct exemplified an express contract, it at least represents an implied-in-fact contract for indemnity, giving a second independent basis to permit a jury to conclude that the Brady-Tucker Defendants are indemnified by the Corporation.

Third and finally, even if no express or implied-in-fact contract existed for indemnity, there is at least an obligation of indemnity implied-in-law supported by the allegations in the Complaint and the Amended Crossclaim. While the Complaint may take conflicting positions on whether, in Crown's view, The Brady-Tucker Defendants directly engaged in the negligence that Crown alleges, Crown at least alleges that the Brady-Tucker Defendants could have been completely removed from the wrongdoing that Crown alleges and are liable only based upon a veil piercing theory. Nevertheless, it is plain from the Amended Crossclaim that this is not the view of the Brady-Tucker Defendants, who allege that Brady and Tucker were merely passive advisors with no control over the day-to-day operations of the Corporation, and that they had in fact repeatedly advised the Corporation not to take the Crown job that is now the subject of this lawsuit.

Thus, as explained in further detail below, any of these theories are sufficient for the court to deny the motion to dismiss and sustain the Amended Crossclaim.

A. **The Brady-Tucker Defendants Have Sufficiently Pled the Existence of an Express Indemnity Clause Provided in the Written Bylaws of the Corporation.**

The corporate bylaws expressly described in the Amended Crossclaim are sufficient to establish an express contract for indemnity under North Carolina law. North Carolina law

expressly permits a corporation to afford its directors indemnity for acts that the directors carry out in good-faith and in his official capacity. N.C. Gen. Stat. § 55-8-51. Corporations, in turn, may act through their bylaws, and therefore they may incorporate such an indemnity provision in their bylaws. *See* N.C. Gen. Stat. § 55-2-06. Moreover, N.C. Gen. Stat. § 55-8-52 makes indemnity of a director mandatory when that director "was wholly successful, on the merits or otherwise, in the defense of any proceeding to which he was a party because he is or was a director of the corporation." Indeed, because the North Carolina Business Corporation Act expressly provides that a corporation can indemnify its directors and given the broad mandate to indemnify a director for suits against them because they are a director, it is unsurprising that corporate bylaws in North Carolina frequently provide directors with indemnity. *See, e.g.*, *Kingsdown, Inc. v. Hinshaw*, 2016 NCBC 16, 2016 NCBC LEXIS 15, *1, 2016 WL 661823 (2016) (describing such an indemnity provision in corporate bylaws). While these might arguably need to satisfy the typical conditions for a contract of offer, acceptance, and consideration, those are always satisfied, since the offer and acceptance is embodied in the bylaws themselves, and the consideration is naturally the official acts that a director engages in and for which he later seeks indemnification. *See generally Executive Leasing Associates, Inc. v. Rowland,* 30 N.C. App. 590 (N.C. App. 1976) (holding that acceptance can be indicated by a signature or by conduct).

   The Brady-Tucker Defendants could not have been any clearer when they alleged in their Crossclaim that "Trostle and Andrews formed a 'Board' under the [Corporation's] written Bylaws and promised indemnity to all members of the Board expressly in writing," and that both Brady and Tucker were named as members of the Board in those bylaws. Crossclaim ¶ 14, 15. That allegation is not conclusory, and it is plausible given the ubiquitous nature of indemnity for

7

members of corporate boards. Nevertheless, it seems as if the Corporation is arguing that merely because the Brady-Tucker Defendants did not attach a copy of the bylaws to their Crossclaim that somehow makes the crossclaim deficient, even though they are under no obligation to attach to [their pleading] documents upon which [it] is based." *GMAC Mortg., LLC v. Flick Mortg. Inv'rs, Inc.*, 2010 U.S. Dist. LEXIS 53595, at *13 (W.D.N.C. May 25, 2010). Nevertheless, to remove all doubt, the Brady-Tucker Defendants have attached to this filing a copy of those bylaws as a proffer of evidence that the Corporation would otherwise obtain in discovery. Brady and Tucker, by their conduct, plainly accepted the offer embodied in those Bylaws, or it can be naturally inferred from the circumstances, and these exchange of promises plainly represent adequate consideration. Thus, the Crosslaim has presented more than ample factual allegations and the natural inferences arising from them to meet the relatively low bar presented by the pleading rules, and they should be allowed to reach a trial and offer evidence to support their claim for indemnity.

> **B. Additionally, the Brady-Tucker Defendants Have Sufficiently Plead an Implied-in-Fact Contract.**

Assuming *arguendo* that the circumstances alleged are insufficient to demonstrate a binding, written contract, they are at least sufficient to demonstrate an implied-in-fact contract based upon implied consent. "[T]he primary distinction between [implied-in-fact and implied-in-law indemnity] is that [implied-in-fact] indemnity involves a true contract based on implied consent while [implied-in-law] indemnity is a legal fiction used to avoid unfairness." *Carl v. State*, 192 N.C. App. 544, 558, 665 S.E.2d 787, 798 (2008). The binding contract of indemnity-in-fact is not based upon any signed document, but rather exists based upon the facts and actions that are best explained as a binding contract. *Id.* All the plaintiff is required to show is the special circumstances from which an agreement can be implied. *Id.* An offer, acceptance, and

consideration all still exist, but with one or more of these elements implied from the circumstances rather than by an express action. *Crossroads Trucking Corp. v. Trunorth Warranty Plans of N. Am., LLC*, 2022 U.S. Dist. LEXIS 156792, *7 (W.D.N.C. Aug. 31, 2022).

As already explained in section A, *supra*, the Amended Crossclaim alleges that the Corporation indemnified Brady and Tucker as members of a board through which they offered their advice from time-to-time. Under those circumstances, it is necessarily implied that Brady and Tucker took part in this board with the expectation that the Corporation would protect them should they be sued in their official capacity, which is reasonable both because it is a common expectation that is sometimes even mandatory under North Carolina law, and it was explicitly promised in the written bylaws of the Corporation. Indeed, it makes little sense for someone to serve in this capacity for a company making heavy machinery while having complete exposure to any claims of negligence, like the one Crown has brought here. Accordingly, at a minimum there must be an implied-in-fact contract for indemnity here, giving all inferences a the most favorable reading in favor of the crossclaim plaintiffs.

C. **Indemnity-At-Law Exists Because, at Best, the Brady-Tucker Entities are Passive Tortfeasors Which is Subordinate to the Wrongdoing of the Corporation and its Owners, Andrews and Trostle.**

Although the Brady-Tucker Entities are plainly entitled to assert indemnity against the Corporation based on either an express or implied-in-fact contract, they are additionally entitled to assert indemnity implied-in-law, too. "Where a passively negligent tortfeasor has discharged an obligation for which the actively negligent tortfeasor was primarily liable, as a matter of fairness, the actively negligent tortfeasor may be found to have made an implied promise to indemnify the passively negligent tortfeasor." *Greene v. Charlotte Chem. Labs., Inc.,* 254 N.C. 680, 691, 120 S.E.2d 82, 89 (1961) (internal quotations omitted). Indemnity implied-in-law is the

9

"duty imposed by law upon the actively negligent tort-feasor to reimburse the passively negligent tort-feasor for the damages paid by him to the victim of their joint tort was based on an implied contract, meaning a contract implied in law from the circumstance that the passively negligent tort-feasor had discharged an obligation for which the actively negligent tort-feasor was primarily liable." *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 39; 587 S.E.2d 470, 474 (2003).

A theory of indemnity implied-in-law is viable because the Brady-Tucker Defendants have pled that they were passive advisors that had no control over the day-to-day operations of the Corporation, and moreover, they actively advised the people in charge of the day-to-day operations that they should not take on the Crown project, which is now the subject of this lawsuit. The Corporation argues that Crown has alleged that the Brady-Tucker Defendants were actively involved in the negligence that Crown complains of, but this ignores the additional facts alleged in the Crossclaim and the obvious alternative theories which even Crown presents in its own Complaint. After all, Crown specifically alleges a veil piercing theory, and by its nature, veil piercing attaches in the absence of direct negligence. In other words, Crown's veil piercing theory would make the Brady-Tucker Defendants passive tortfeasors entitled to indemnity as a matter of law, even if the Crossclaim included no additional allegations. And yet, the Crossclaim has ample allegations of not merely "corporate history," as the Corporation calls it in its motion to dismiss, but rather, specific wrongdoing that makes the Corporation more culpable. This includes, among other things, allegations that the Corporation and its owners intentionally hid from Crown, and other potential creditors or business partners, its existence or made those persons believe that they were dealing with a predecessor entity belonging to Brady and Tucker.

This kind of trickery is the exact sort of thing that the law of North Carolina is designed to guard against by applying a duty to indemnify at law, which the Court should do here.

## V. CONCLUSION

For the foregoing reasons, this Court should permit the Crossclaim for indemnity to remain in this suit. The Brady-Tucker Defendants have met their minimal burden to allege plausible facts to support theories of express, implied-in-fact, or implied-in-law indemnity. Therefore, this Court should deny the third-party defendant's motion to dismiss.

Dated: June 21, 2024

BY COUNSEL

/Andrew P. Connors/
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
(Admitted *Pro Hac Vice*)
DARKHORSE LAW PLLC
119 Tradewynd Dr., Suite B.
Lynchburg, VA 24502
Phone: 540-553-8149 ext. 2
Fax: 540-301-6460
andrew@darkhorse.law

John Riordan (NC. Bar No. 54973)
FIDELITY LAW GROUP
8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

## CERTIFICATE OF SERVICE

   I hereby certify that on June 21, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all counsel of record via CM/ECF.


/Andrew P. Connors/
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
DARKHORSE LAW PLLC
Phone: 540-553-8149 ext. 701
Fax: 540-301-6460
andrew@darkhorse.law

*Counsel for Defendants Brady,
Tucker, Brawtus Holding, Inc.,
Brawtus Management LLC, and Pneu-
Mech Dissolution LLC*