## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CIVIL ACTION FILE NO. 5:23-cv-00059

| | |
|---|---|
| **Crown Equipment Corporation,**<br>                                        **Plaintiff,**<br>**v.**<br>**David Brady, William Tucker,**<br>**Joseph Boggs, Brawtus Holding Company,**<br>**Inc. (f/k/a Pneu-Mech Systems**<br>**Manufacturing, Inc.), Brawtus**<br>**Management Company, LLC, Pneu-Mech**<br>**Systems Manufacturing, LLC (K.N.A.**<br>**Pneu-Mech Dissolution, LLC), Pneu-Mech**<br>**Systems Manufacturing, Inc., United**<br>**Finishing Systems LLC,**<br>                                        **Defendants,**<br>**v.**<br>**James Andrews and Jerry Trostle,**<br>                      **Third Party Defendants.** | **<u>Third Party Defendants' Memorandum of</u>**<br>**<u>Law in Support of their Motion to Dismiss</u>** |

**NOW COME** Third Party Defendants James Andrews and Jerry Trostle ("Third Party Defendants"), by and through the undersigned counsel and pursuant to Local Civil Rule 7.1(c) and respectfully submit the following Memorandum of Law in Support of their Motion to Dismiss the Third Party Complaint. (Document No. 63.)

## I.      <u>Factual Allegations</u>

The facts alleged in the Third Party Complaint are taken as true for purposes of this motion. *See Francis v. Giacomelli,* 588 F.3d 186, 190 (4th Cir. 2009). Third Party Defendants worked at Pneu-Mech Systems Manufacturing LLC ("Pneu-Mech 2.0") under Third Party Plaintiffs. (Document No. 63, ¶ 5, p. 2.) In 2018, Third Party Defendants, through Pneu-Mech Holdings, Inc., a company they created for this sole purpose, purchased the assets of Pneu-Mech 2.0 pursuant to an owner-financed Financing Agreement (the "Financing Agreement."). (Document No. 63, ¶¶ 7-8, 12, pp. 2-3.) After the sale was completed, Pneu-Mech 2.0 changed its name to Pneu-Mech Dissolution, LLC, and the entity was later administratively dissolved. (Document No. 63 ¶ 14, p.

3.)  Third Party Defendants then changed the name of Pneu-Mech Holdings, Inc. to Pneu-Mech Systems Manufacturing, Inc. ("Pneu-Mech 3.0") (Document No. 63 ¶ 15, p. 3).

Third Party Plaintiffs allege that Third Party Defendants incorporated salary increases of $25,000 each into the asset purchase agreement[1] (Document No. 63 ¶ 20, p. 4), and took out shareholder loans that totaled more than $90,000 with interest (Document No. 63 ¶ 21, p. 4.) According to Third Party Plaintiffs, after the asset sale, Third Party Defendants continued to use the name "Pneu-Mech Systems Manufacturing, LLC" on letterhead and in other communications, including communications with Crown Equipment Corporation ("Crown"), the plaintiff in the case in chief (*See* Document No. 1), despite the fact that the legal name of the business Third Party Defendants were actually operating was "Pneu-Mech Systems Manufacturing, Inc."  (Document No. 63 ¶ 22, pp. 4-5.)

After the asset sale, Third Party Plaintiffs allege that they "were of such limited involvement [with the operation of Pneu-Mech 3.0] that they were only at annual meetings to discuss the finances of the Company…" and that Third Party Plaintiffs "were completely, and intentionally, left out of any operating business discussions…"  (Document No. 63 ¶ 29, p. 6.)  In what seems a contradiction to their claim of once-per-year involvement, Third Party Plaintiffs also allege that they "advised [Third Party Defendants] on business operations from time to time" (Document No. 63 ¶ 16, p. 4), and that they "routinely warned" Third Party Defendants to cut spending and take on smaller jobs.  (Document No. 63 ¶ 17, p. 4.)

According to the Third Party Complaint, by mid-2022, Pneu-Mech 3.0 was more than

---

[1] Paragraph 7 of the Third Party Complaint alleges that the effective date of the Asset Purchase Agreement was January 1, 2018, while Paragraph 20 claims Third Party Defendants gave themselves $25,0000 raises "immediately…after the purchase of the Company in 2017."  Third Party Plaintiffs do not clarify how the $25,000 raises could have taken place "after the purchase of the Company" and yet also have been incorporated into the Asset Purchase Agreement itself.

$600,000 in arrearage on the Financing Agreement, having failed to make payment for 10 months. (Document No. 63 ¶ 33, pp. 6-7.)  At a meeting between Third Party Defendants and Brady and Tucker, an accountant for Pneu-Mech 3.0 stated that Pneu-Mech 3.0 did not have enough cash to pay even the overdue interest, much less the principal, on the Financing Agreement.  (Document No. 63 ¶ 16, p. 4.)  At some point, Third Party Plaintiffs repossessed the assets of Pneu-Mech 3.0 based on Third Party Defendants' alleged default on the Financing Agreement.  (Document No. 63 ¶¶ 33-35, pp. 6-7.)  When Third Party Plaintiffs repossessed the business, the Third Party Complaint alleges, they discovered that two companies in which Third Party Defendants had interest, AFI Carolinas ("AFI") and Brand Performance Fabrication ("BPF"), owed money to Pneu-Mech 3.0 (Document No. 63 ¶¶ 35-42, pp. 7-8).  Third Party Plaintiffs allege that Third Party Defendants directed work away from Pneu-Mech 3.0 to AFI and BPF in order to profit from the work themselves rather than have the money for the work go to Pneu-Mech 3.0, where the money would be put toward satisfying the Financing Agreement.  (Document No. 63 ¶¶ 41-42, p. 8.)

Third Party Plaintiffs allege that Third Party Defendants have spoken directly to and are "actively aiding" Crown in the present litigation, "including by misdirecting blame…" at Third Party Plaintiffs, even though, according to Third Party Plaintiffs, they "have nothing to do with the wrongdoing" Crown alleges.   (Document No. 63 ¶ 44, p. 8.)

Finally, Third Party Plaintiffs allege that Third Party Defendants "have pointed the finger" at Third Party Plaintiffs "regarding contracts that were entered into in 2022 with another business, Queen's Logistics…and … told opposing parties to sue [Third Party Plaintiffs] directly, claiming insufficient assets to make various prior customers whole."  (Document No. 63 ¶ 45, p. 8.)

3

## II.     Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be plausible on its face, a complaint must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.  In other words, to survive a motion to dismiss, a plaintiff must allege sufficient facts to establish the elements of its claim. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).  "Although a complaint need not contain 'detailed factual allegations,' it must include more than 'a formulaic recitation of the elements of the cause of action.'" *Squitieri v. Piedmont Airlines, Inc.,* No. 3:17CV441, 2018 U.S. Dist. LEXIS 25485, at *4-5 (W.D.N.C. Feb. 16, 2018) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "An unadorned, the defendant-unlawfully-harmed-me accusation is insufficient; rather, legal conclusions must be supported by factual allegations." *Id*.

In reviewing a complaint, the court must accept all factual allegations as true, but need not accept any legal conclusions the plaintiff draws from the facts, nor need the court "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n.26 (4th Cir. 2009).

## III.     Argument

## A.     No Individual Liability/No Veil Piercing

To the extent the actions alleged by Third Party Plaintiffs took place while Third Party Defendants were officers of Pneu-Mech 3.0 and acting on its behalf, Third Party Defendants are protected from individual liability by N.C. Gen. Stat. § 55-8-42.  Because Third Party Plaintiffs

4

have not set forth facts sufficient to establish a veil-piercing claim, any such claims against Third Party Defendants individually should be dismissed.

**B.**    **Third Party Plaintiffs Fail to State a Claim for Indemnity**

Because Third Party Plaintiffs did not allege any facts indicating their entitlement to indemnity under any legal theory, they fail to state a claim for relief.

    1.  **Legal Standard for Indemnity**

"In North Carolina, a party's right to indemnity can rest on three bases: (1) an express contract;[2] (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law." *Lineage Logistics LLC. v. Primus Builders Inc.*, No. 21 CVS 2372, 2024 WL 759948, at \*11 (N.C. Super. Ct. Feb. 23, 2024) (quoting *Kaleel Builders v. Ashby,* 161 N.C.App. 34, 41, 587 S.E.2d 470, 475 (2003) (358 N.C. 235, 595 S.E.2d 152 (2004) (*discretionary review denied*).

    **a) Indemnity Implied in Fact**

A court may find an implied-in-fact right to indemnity when a party "establishes special circumstances, such as words or conduct, from which the court could find a binding contract that fairly implies the right of indemnity." *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 267 (M.D.N.C. 2005) (citing *TransDulles Ctr., Inc. v. USX Corp.,* 976 F.2d 219, 228 (4th Cir. 1992)). To determine whether a right to implied-in-fact indemnity exists, the court considers whether the parties' relationship and conduct indicates that they intended to create an "indemnitor/indemnitee relationship." *Kaleel Builders*, 161 N.C. App. at 38, 587 S.E.2d at 474.

---

[2] Because Third Party Plaintiffs alleged no facts to support their contention in Paragraph 49 of the Third Party Complaint that they are entitled to indemnity "by written contract," this memorandum does not discuss the legal standard for express contract indemnity

### b) Indemnity Implied in Law

"North Carolina recognizes a right to 'implied-in-law' indemnity when a passive tortfeasor pays the judgment owed by an active tortfeasor to the injured third party because the actively negligent tortfeasor made an implied promise to indemnify the passively negligent tortfeasor. *Pekin Ins. Co. v. Innovative Coatings & Materials, L.L.C.*, Civil Action No. 5:19-CV-128-KDB-DSC, 2020 U.S. Dist. LEXIS 196855, at *10 (W.D.N.C. Oct. 22, 2020) (citations omitted). To state a claim for indemnity implied-in-law, the party seeking indemnity must establish each element of an underlying tort. *Ascot Corp., LLC v. I&R Waterproofing, Inc.*, 286 N.C. App. 470, 485, 881 S.E.2d 353, 365 (2022).

### 2. Third Party Plaintiffs' Indemnity Allegations

Third Party Plaintiffs claim that, with respect to any liability Third Party Plaintiffs may have to Crown, Third Party Plaintiffs are entitled to indemnity from Third Party Defendants "whether by written contract, at common law, or as otherwise provided in law or equity in North Carolina," and that Third Party Plaintiffs "are further entitled to recover attorney's fees and costs for the same reason." (Document No. 63, ¶ 49-50, p. 9.)

### 3. Indemnity Argument

### a) Third Party Plaintiffs are not Entitled to Attorney's Fees

At the outset, Third Party Defendants respectfully request that the Court dismiss Third Party Plaintiffs' claim for attorney's fees related to its claim for indemnity. Under North Carolina law, attorney's fees can only be awarded under certain circumstances (See *Hicks v. Albertson*, 284 N.C. 236, 238, 200 S.E.2d 40, 42 (1973)). Third Party Plaintiffs have alleged no such circumstances or statutory authority related to their claim for indemnity, and thus have no credible

6

claim for attorney's fees. Therefore, Third Party Defendants respectfully request the Court dismiss this part of the claim.

### b) Third Party Plaintiffs Fail to State a Claim for Indemnity Implied in Fact

Because Third Party Plaintiffs fail to allege the type of special circumstances from which the Court could find a binding contract that establishes Third Party Plaintiffs' right to indemnity from Third Party Defendants, Third Party Defendants cannot recover under the legal theory of indemnity implied in fact.

In *McDonald Bros., Inc. v. Tinder Wholesale LLC*, the plaintiff alleged that the defendant had a history of honoring prior warranty claims, and regarding the claim giving rise to that lawsuit, had given the plaintiff assurances that it would do the same. *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 267 (M.D.N.C. 2005). The *McDonald Bros.* court held that the "relationship of the parties, the [defendant's] history of honoring warranty claims, and the alleged assurances by the [d]efendant…sufficiently stated a claim for implied-in-fact indemnity." *Id.* Similarly, in *McDonald v. Scarboro*, the court held that a third party's promise to provide or pay for an attorney if the plaintiff sued the defendant gave rise to the defendant's claim to indemnity implied in fact from that third party. *McDonald v. Scarboro*, 91 N.C. App. 13, 22, 370 S.E.2d 680, 686 (1988).

Unlike the facts in *McDonald Bros.* and *McDonald v. Scarboro*, the facts in the present case do not indicate any sort of special relationship between the Parties, do not elucidate anything about the circumstances of the Parties' conduct that would give rise to implied-in-fact indemnity, and do not indicate that Third Party Defendants intended to agree to indemnify Third Party Plaintiffs. Because Third Party Plaintiffs fail to allege sufficient facts to state a claim for indemnity implied in fact, they have no legal claim to this type of indemnity.

7

### c) Third Party Plaintiffs Fail to State a Claim for Indemnity Implied in Law

Because Third Party Plaintiffs fail to allege the elements of any underlying tort and fail to allege facts indicating an active-passive tortfeasor relationship, they fail to state a claim for indemnity implied-in-law. North Carolina law requires that, for a court to find indemnity implied-in-law, the plaintiff must allege the elements of an underlying tort claim for which it seeks indemnity from the defendant, as well as facts indicating the plaintiff was only passively negligent while the defendant was actively negligent. (See, e.g. *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003) ("However, there is no *prima facie* tort case made out to allege negligence … On that basis alone, …we hold that plaintiff has not stated a claim for…implied-in-law… indemnity.")

### C.  Third Party Plaintiffs Fail to State a Claim for Violation of the Lanham Act §43(a)

Because Third Party Plaintiffs lack the requisite standing and fail to plead facts sufficient to establish the elements of this cause of action, they fail to state a claim for relief for a violation of the Lanham Act § 43(a).

#### 1.  Legal Standard for Violation of the Lanham Act Section § 43(a)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects trademarks, service marks, and trade names from infringement "even though the mark or name has not been federally registered." *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 124 (4th Cir. 1990). It provides that:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person,

or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.S. § 1125 (LexisNexis, Lexis Advance through Public Law 118-65, approved June 17, 2024, with a gap of Public Law 118-63).

Section (a)(1)(A) creates liability for false association (also known as false designation of origin), and Section (a)(1)(B) creates liability for false advertising. [3] *Vill. Tavern, Inc. v. Catbird Hosp., LLC*, No. 1:21-cv-00228-MR, 2022 U.S. Dist. LEXIS 145888, at *6 n.1 (W.D.N.C. Aug. 16, 2022) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 122, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)).

### a) Standing

As a statutory cause of action, the Lanham Act creates a cause of action, and thus standing, only for potential plaintiffs 1) whose interests "fall within the zone of interests" the statute was enacted to protect, and 2) who allege injuries proximately caused by violations of the statute. *See Siler v. Lejarza*, 415 F. Supp. 3d 687, 700-01 (M.D.N.C. 2019) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. at 118, 128, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)).

### i. Zone of Interests

To determine the relevant zone of interests, courts look to the Lanham Act's purpose statement, which declares in relevant part that "The intent of this Act is to regulate commerce

---

[3] Although the Third Party Complaint does not specify whether Third Party Plaintiffs seek relief for false association/false designation of origin under Section (a)(1)(A), or for false advertising under Section (a)(1)(B), Third Party Plaintiffs' failure to plead any facts indicating the alleged violations took place in commercial advertising or promotion indicates their only potential basis for relief would be under Section (a)(1)(A) for false association or false designation of origin. Thus, this memorandum only examines the legal standards relevant to a claim under Section (a)(1)(A).

within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce [and] … to protect persons engaged in such commerce against unfair competition."[4]  15 U.S.C.S. § 1127 (LexisNexis, Lexis Advance through Public Law 118-65, approved June 17, 2024, with a gap of Public Law 118-63).  A plaintiff meets the zone of interests test if it sufficiently alleges facts showing its claim furthers one of the Lanham Act's enumerated purposes. *Farm Fresh Direct Direct By a Cut Above, LLC v. Downey,* Civil Action No. ELH-17-1760, 2017 U.S. Dist. LEXIS 178190, at *18 (D. Md. Oct. 26, 2017) (quoted with approval in *Siler v. Lejarza*, 415 F. Supp. 3d 687, 702 (M.D.N.C. 2019)).

### ii.    Proximate Cause

The Lanham Act creates a cause of action only for "plaintiffs whose injuries are proximately caused by violations of the statute" and whose injuries have a "sufficiently close connection to the conduct the statute prohibits*." Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 134 S. Ct. 1377, 1390 (2014).

### b)  Elements of a Lanham Act § 43(a)(1)(A) Violation

To establish a claim for false association or designation of origin, a plaintiff must allege:

> (1)  that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3)  that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4)  that the defendant's use of the mark is likely to confuse consumers.

*Vill. Tavern, Inc. v. Catbird Hosp., LLC*, No. 1:21-cv-00228-MR, 2022 U.S. Dist. LEXIS 145888, at *7 (W.D.N.C. Aug. 16, 2022) (quoting *Rosetta Stone Ltd. v. Google, Inc.,* 676 F.3d 144, 152 (4th Cir. 2012) (further citations omitted)).

---

[4] Although the Lanham as a whole, and thus its purpose statement, concerns the protection of registered and unregistered trademarks as well as international trade, the present case concerns only unregistered trademarks. Therefore, sections of the purpose statement pertaining to registered marks and international trade have been omitted from the quotation.

## 2. Third Party Plaintiffs' Lanham Act Allegations

Third Party Plaintiffs allege that Third Party Defendants made false or misleading statements of fact when they:

> (a) told Crown and their other vendors that Third-Party Claimants were responsible for what was actually Trostle and Andrews' malfeasance;
> (b) told Crown and other vendors that Third-Party claimants secretly controlled the operations of Pneu-mech following the sale of the enterprise to Trostle and Andrews;
> (c) told Crown and other vendors that Third-Party Claimants had control over the actions of Pneu-mech after the sale; and/or
> (d) when they engaged in the other acts alleged in this Third-Party Complaint.

(Document No. 63, ¶ 52, p. 9.)  Although Third Party Plaintiffs do not specify which "other acts alleged" in the Third Party Complaint they consider violations of the Lanham Act, the only other alleged violation appears to be Third Party Defendants' use of the name "Pneu-Mech Systems Manufacturing, LLC" when operating Pneu-Mech Systems Manufacturing, Inc.  (Document No. 63, ¶¶ 22,24, p. 5.)

## 3. Lanham Act Argument

### a) Third Party Plaintiffs Lack Standing

#### i. Third Party Plaintiffs' Interests do not Fall within the Zone of Interests of the Lanham Act

Third Party Plaintiffs fail to allege facts indicating their interests fall within the zone of interests the Lanham Act protects.  A review of case law interpreting the Lanham Act in relation to claims for false association/ false designation of origin indicates that a party will come within the zone of interest if it is engaged in commerce and faces "unfair competition."  *See Farm Fresh Direct*, Civil Action No. ELH-17-1760, 2017 U.S. Dist. LEXIS 178190, at *19-20 (D. Md. Oct. 26, 2017) (*quoting* 15 U.S.C. § 1127).  Third Party Plaintiff have put forward no facts indicating they were engaged in commerce or that the alleged violation resulted in unfair competition.

11

In *Siler v. Lejarza,* the Middle District of North Carolina found that a plaintiff was within this zone of interest because it alleged it was engaged in commerce and was filing suit "to protect against unfair competition." *Siler v. Lejarza*, 415 F. Supp. 3d 687, 702 (M.D.N.C. 2019). Similarly, in *Belmora Ltd. v. Bayer*, the Fourth Circuit found a plaintiff was within the zone of interests when it alleged it lost sales revenue because the defendant's "deceptive and misleading use of [a mark] convey[ed] to consumers a false association with [plaintiff's] product." *Belmora Ltd. Liab. Co. v. Bayer Consumer Care AG*, 819 F.3d 697, 711 (4th Cir. 2016), 580 U.S. 1159, 137 S. Ct. 1202 (2017) (*cert denied*). Third Party Plaintiffs put forward no facts indicating their interests fall within the zone protected by the Lanham Act, and thus they have not established standing to bring a Lanham Act §43(a) claim.

### ii. Third Party Plaintiffs Fail to Allege Proximate Cause

In addition to their failure to meet the first prong of the standing test for Lanham Act § 43(a) claims, Third Party Plaintiffs cannot meet the second prong because they allege no facts indicating that they suffered any damages or that any such damages were proximately caused by a violation of the Lanham Act. To establish the second prong of the test for standing under the Lanham Act § 43(a), a plaintiff must "show economic or reputational injury flowing directly from the deception." *Siler v. Lejarza*, 415 F. Supp. 3d 687, 701 (M.D.N.C. 2019). Although Third Party Plaintiffs did use the word "damages" in Paragraph 54, they put forward no factual allegations to support any damages. Merely reciting the elements of a cause of action does not establish their existence sufficient to survive a motion to dismiss. *Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 664 (W.D.N.C. 2012).

**b)  Third Party Plaintiffs Fail to State a Claim for Violation of the Lanham Act**

**i.    Third Party Plaintiffs Fail to Allege Possession of a Valid Mark**

Even if the Court finds that Third Party Plaintiffs have standing to assert a claim under the Lanham Act, Third Party Plaintiffs fail to do so because they have not plead sufficient factual allegations to make out a colorable claim.  To state a claim "under § 43(a) of the Lanham Act, a plaintiff must first and most fundamentally prove that it has a valid and protectable mark." *Charlotte Chiropractic Clinic, P.A. v. Chiro-Carolina Family & Sports Care, PLLC*, No. 3:14-CV-585-RJC-DCK, 2015 U.S. Dist. LEXIS 124970, at *4 (W.D.N.C. June 24, 2015) (quoting *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002) (*further citation omitted*). *See also McFee v. CPP Int'l*, No. 3:16-cv-00165-RJC-DCK, 2017 U.S. Dist. LEXIS 21462, at *4-5 (W.D.N.C. Feb. 15, 2017) ("claims under…Section 43(a) of the Lanham Act … require that the Plaintiff own the intellectual property rights in order for the claims to be plausible.")

Nowhere in the Third Party Complaint do Third Party Plaintiffs allege they own the name "Pneu-Mech Systems Manufacturing, LLC."  In fact, Third Party Plaintiffs establish that, although they once owned an LLC by that name, they changed the LLC's name from Pneu-Mech Systems Manufacturing LLC to Pneu-Mech Dissolution, LLC after the asset sale in late 2017 or early 2018. (Document No. 63, ¶ 14, p. 3.)  Third Party Plaintiffs did not allege any facts indicating they still own the name or have rights to its use.  Because ownership of a valid mark is a fundamental element of a claim for false association or false designation under §1125(a), and Third Party Plaintiffs allege no facts indicating they own the mark at issue, Third Party Plaintiffs fail to state a claim for relief.

**D.    <u>Third Party Plaintiffs Fail to State a Claim for Defamation</u>**

Because Third Party Plaintiffs have not established that the present claim for defamation

comes within the relevant statute of limitations, and because the statements they allege do not constitute defamation by any legal standard, they fail to state a claim for defamation.

### 1. Legal Standard for Defamation

To state a claim for defamation, a "plaintiff must allege … that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation.'" *Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) (quoting *Griffin v. Holden*, 180 N.C. App. 129, 636 S.E.2d 298, 302 (N.C. Ct. App. 2006). A defamatory statement is one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) (*quoting* Restatement (Second) of Torts § 559 (1977) (May 2022 Update).

Defamation encompasses two separate torts: libel (written defamation) and slander (spoken defamation). *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020). Third Party Plaintiffs did not allege facts indicating which type of defamation (libel or slander) they claim. Third Party Plaintiffs also fail to allege whether they claim defamation *per se* or *per quod*, but because a claim for defamation *per quod* requires a plaintiff to plead extrinsic, explanatory circumstances and special damages, and Third Party Plaintiffs have not done so in this case, this memorandum only examines the legal standard for defamation *per se*.

### a) Statute of Limitations

Claims for defamation must be brought within one year after publication of the allegedly defamatory statement. *Curry v. Philip Morris USA, Inc.,* No. 3:08cv609, 2010 U.S. Dist. LEXIS 9679, at *14 (W.D.N.C. Feb. 4, 2010) (*citing* N.C. Gen. Stat. § 1-54(3)).

### b) Defamation *Per Se*

A statement is defamatory *per se* if it (1) "…touch[es] the plaintiff in his special trade or occupation, and (2) …contain[s] an imputation necessarily hurtful in its effect on his business." *Diagnostic Devices, Inc. v. Doctor Diabetic Supply, Inc*., No. 3:09CV135-GCM, 2010 U.S. Dist. LEXIS 1709, at *6 (W.D.N.C. Jan. 11, 2010) (quoting *Clark v. Brown*, 99 N.C. App. 255, 393 S.E.2d 134 (N.C. App. 1990) (further citations omitted).

### 2.      Third Party Plaintiffs' Defamation Allegations

Although Third Party Plaintiffs do not provide any specific statements they claim constitute defamation, it appears they base their claim for defamation on the following statements:

1.      Third Party Defendants told Crown and other vendors that Third Party Plaintiffs were responsible for what was actually Third Party Defendants' malfeasance.  (Document No. 63, ¶ 56(a), p. 10.)

2.      Third Party Defendants told Crown and other vendors that Third Party Plaintiffs secretly retained control of the operations and actions of Pneu-Mech 3.0 after the asset purchase agreement.  (Document No. 63, ¶ 56(b) and (c), p. 10.)

3.      Third Party Defendants are actively aiding Crown in the present litigation.  (Document No. 63, ¶ 44, p. 8.)

4.      Third Party Defendants told Queen's Logistics that Third Party Plaintiffs were somehow liable for contracts from 2022 and told Queen's Logistics to sue Third Party Plaintiffs directly because Third Party Defendants had insufficient assets to make them whole.  (Document No. 63, ¶ 45, p. 8.)

5.      Third Party Defendants wrongly made others believe that Third Party Plaintiffs were responsible for Third Party Defendants' bad acts.  (Document No. 63, ¶ 57, p. 10.)

### 3.  Argument- Third Party Plaintiffs Fail to State a Claim for Defamation

### a)  The Statute of Limitations has Run

Third Party Plaintiffs fail to state a claim for defamation because they did not allege sufficient information from which the Court could reasonably conclude that the alleged defamation occurred within the 1-year statute of limitations.

15

Items #1, #2, #3, and #5 above appear to relate to statements that took place leading up to the present litigation, in which Crown filed its Complaint on May 10, 2023. Third Party Plaintiffs did not file their Third Party Complaint until May 2, 2024, a little over one week shy of one year later. To assume that Third Party Defendants made the allegedly defamatory statements to Crown on or after May 2, 2023, and Crown, immediately after hearing the allegedly defamatory statements, hurriedly drafted and filed a detailed 45-page lawsuit within 8 days strains credulity and requires one to make the type of "unwarranted inference" or "unreasonable conclusion" courts need not make when deciding a motion to dismiss. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) ([the court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

Although item #4 above does not relate to the Crown litigation, it also lacks supporting facts that would indicate when it allegedly occurred. By failing to plead the dates on which they allege the defamation occurred, Third Party Plaintiffs have failed to state a claim for defamation because they have provided no facts from which the Court could reasonably conclude that the statements were made within the statute of limitations.

### b) Third Party Plaintiffs Fail to State a Claim for Defamation *Per Se*

Because Third Party Plaintiffs have not plead the allegedly defamatory statements in *haec verba*, it is difficult to determine whether they constitute defamation *per se*. Furthermore, to the extent that items #3 and #5 above do not constitute "statements," they cannot constitute defamation. Although the Federal Rules of Civil Procedure impose no heightened standard of pleading on claims of defamation (*See Exclaim Mktg., LLC v. DIRECTV, Inc.,* No. 5:11-CV-00684-FL, 2012 U.S. Dist. LEXIS 102770, at *23 (E.D.N.C. July 23, 2012)), such claims must still meet the basic plausibility requirements set forth in *Iqbal*.

16

Accusations of "malfeasance" or "bad acts," or that Third Party Plaintiffs are "liable for contracts," do not rise to the level of defamation *per se* because these statements do not touch Third Party Plaintiffs in their "special trade or occupation," and do not "contain in imputation necessarily hurtful in [Third Party Plaintiffs'] business." See *Diagnostic Devices, Inc. v. Doctor Diabetic Supply, Inc.*, No. 3:09CV135-GCM, 2010 U.S. Dist. LEXIS 1709, at *6 (W.D.N.C. Jan. 11, 2010). Third Party Plaintiffs have plead no facts indicating their current trade, occupation, or type of business, thus they have given the Court no facts from which the Court could reasonably conclude that the alleged statements constitute defamation *per se*.

Similarly, the remaining statements, statement #2 that Third Party Defendants told Crown and other vendors that Third Party Plaintiffs were secretly controlling the operations and actions of Pneu-Mech 3.0, and statement #3 that Third Party Defendants are aiding Crown in the present litigation (again, assuming *arguendo* that this would constitute a statement), do not constitute defamation *per se*. Accusing someone of operating or controlling a company, whether publicly in secret, does not "impeach [them in their] trade or profession, or otherwise tend to subject [them] to ridicule, contempt or disgrace" as would be required to state a claim for defamation *per se*. *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020). Likewise, assisting a third party in litigation does not constitute defamation *per se*. *Id*.

Finally, Third Party Plaintiffs' assertion that the alleged defamation harmed them in their trade or business does not transform their deficient pleadings into plausible claims for defamation *per se* simply because harm in one's trade or profession is an element of that tort. On the contrary, ""[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Synovus Bank v. Coleman*, 887 F. Supp. 2d 659, 664 (W.D.N.C. 2012). Because Third Party Plaintiffs fail to state a claim for

violation of the Lanham Act, Third Party Defendants respectfully request the Court dismiss this cause of action.

**E.** **Third Party Plaintiffs Fail to State a Claim for UDTP**

Third Party Plaintiffs' claim of Unfair and Deceptive Trade Practices in Violation of N.C. Gen. Stat. § 75-1.1 ("UDTP") fails because: a) Their claim for defamation, the sole basis for their UDTP claim, cannot survive a motion to dismiss, b) They fail to allege facts indicating the alleged defamation was "in commerce," c) The UDTP Act does not apply to the present circumstances, and d) They fail to allege facts indicating proximate cause and damages.

**1. Legal Standard for UDTP**

To state a claim for a violation of the North Carolina Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat. 75-1.1 *et seq.*, a party must allege (1) an unfair or deceptive act or practice; (2) that the act or practice was in or affecting commerce; and (3) that the act or practice proximately caused the injury to the party. *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 35, 568 S.E.2d 893, 901 (2002).

**a) Defamation as an Unfair and Deceptive Trade Practice**

Under certain circumstances, defamation can constitute an unfair or deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1. *See Ellis v. Northern Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990) and *Ausley v. Bishop*, 133 N.C. App. 210, 216, 515 S.E.2d 72, 77 (1999).

**i. Heightened Pleading Standard**

When a plaintiff bases its UDTP claim on alleged "misrepresentations or fraudulent statements," however, such a plaintiff "must meet the heightened standard of Rule 9(b) and make its allegations with particularity." *Mountaineer Motors of Lenoir, LLC v. Carvana, LLC*, No. 5:22-

18

CV-00171-KDB-DCK, 2023 U.S. Dist. LEXIS 188379, at *17-19 (W.D.N.C. Oct. 18, 2023).

### 2. Third Party Plaintiffs' UDTP Allegations

Third Party Plaintiffs claim that "[t]he defamation recited in Count III further violates the North Carolina Deceptive Trade Practices Act, entitling [Third Party Plaintiffs] to treble damages and attorneys' fees." (Document No. 63, ¶ 62, p. 11.)

### 3. UDTP Argument

#### a) Third Party Plaintiffs' Defamation Claim Cannot Support a UDTP Claim

First, Third Party Plaintiffs fail to state a claim for UDTP because their sole grounds for this claim is the alleged defamation, which, as set forth herein, cannot survive a motion to dismiss.

#### b) The Alleged Defamation was not "In Commerce"

Even if Third Party Plaintiffs' defamation claim could survive a motion to dismiss, it would still not constitute UDTP. Third Party Plaintiffs' claim for a violation of UDTP fails because Third Party Plaintiffs have not alleged facts sufficient for the Court to reasonably conclude that the defamatory statements were "in commerce." Although the Third Party Complaint fails to provide details about what the allegedly defamatory statements were or when they were made, the context of the Third Party Complaint indicates that the alleged defamation would have taken place after Third Party Plaintiffs repossessed Pneu-Mech 3.0's assets and removed Third Party Defendants from their roles in the company. (Document No. 63, ¶¶ 45-46, 56, pp. 8, 10.) Because Third Party Defendants were no longer operating a business at the time they allegedly made the defamatory statements, the statements could not have been made in the course of "business activities," the statutory definition of commerce. *See* N.C. Gen. Stat. § 75-1.1(b). *See also Indus. Timber, LLC v. Jackson Furniture Indus.*, No. 3:22-CV-00229-KDB-DCK, 2022 U.S. Dist. LEXIS 182975, at *6 (W.D.N.C. Oct. 6, 2022) (quoting *Sara Lee Corp. v. Carter*, 351 N.C. 27, 519 S.E.2d 308, 311

19

(N.C. 1999) ("Business activities is defined as 'the manner in which businesses conduct their regular, day-today activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized.'")

### c) Third Party Plaintiffs Lack Standing to Bring a UDTP Claim

Third Party Plaintiffs' claim for UDTP also fails because the type of wrong Third Party Plaintiffs allege is outside the UDTP Act's limited purpose of protecting consumers. At the time Third Party Plaintiffs allege the defamation occurred, Third Party Plaintiffs were not in the marketplace acting as consumers or otherwise engaged in commercial dealing with Third Party Defendants, nor were Third Party Plaintiffs and Third Party Defendants competitors, nor did the alleged defamation have any negative effect on the consuming public. (*See Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015)).

The Fourth Circuit Court of Appeals applied this principle in *Food Lion, Inc. v. Capital Cities/ABC, Inc*., when it reversed a district court judgment based in part on the district court judge's finding that the defendant violated the UDTP Act simply because the defendant was "a business that engaged in deception." *Food Lion, Inc. v. Capital Cities/ABC, Inc*., 194 F.3d 505, 520 (4th Cir. 1999). Because the defendant's deception "did not harm the consuming public," because the defendant did not compete with the plaintiff, and because the defendant did not have a business relationship with the plaintiff, the Fourth Circuit held that the defendant's deception was not within the ambit of the UDTP Act. *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 194 F.3d 505, 520 (4th Cir. 1999). Similar to the plaintiff and defendant in *Food Lion*, Third Party Plaintiffs and Third Party Defendants were not competitors, were not in a business relationship at the time of the alleged defamation, and Third Party Defendants' alleged deception did not harm the

consuming public. Therefore, like the UDTP claim in *Food Lion*, Third Party Plaintiffs' claim for UDTP is outside the scope of the UDTP Act and thus should be dismissed

### d) Third Party Plaintiffs Fail to Allege Proximate Cause or Damages

Finally, Third Party Plaintiffs' claim for UDTP fails because Third Party Plaintiffs fail to allege proximate cause or any actual injury or damages suffered as a result of relying on the alleged deception. The only harm Third Party Plaintiffs allege related to their UDTP cause of action is that they claim Third Party Defendants "wrongly made others believe that [Third Party Plaintiffs] were responsible for the bad acts in which [Third Party Defendants] engaged." (Document No. 63, ¶ 57, p. 10.) Even if Third Party Plaintiffs can establish that Third Party Defendants made misrepresentations, Third Party Plaintiffs have no claim for UDTP unless they can establish that they suffered harm as a result of their own reliance on the misrepresentations. See *D C Custom Freight, LLC v. Tammy A. Ross & Assocs., Inc.*, 273 N.C. App. 220, 848 S.E.2d 552, 562 (N.C. Ct. App. 2020), 376 N.C. 551, 851 S.E.2d 45 (2020) (*discretionary review denied*) (No cause of action for UDTP when the harm the plaintiff alleges was caused by a third party's reliance on a misrepresentation.)

## F. Third Party Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

Third Party Plaintiffs fail to state a claim for breach of fiduciary duty because they did not sufficiently allege that Pneu-Mech 3.0 was winding up or in dissolution during the relevant period, and therefore fail to allege the existence of a fiduciary relationship.

### 1. Legal Standard for Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a party must first establish the existence of a fiduciary relationship that would give rise to fiduciary duty. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 531, 723 S.E.2d 744, 752 (2012) (quoting *Dalton v.*

*Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). "As a general rule, directors of a corporation do not owe a fiduciary duty" to its creditors. *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 560 S.E.2d 817 (2002), 356 N.C. 164, 164, 568 S.E.2d 196 (2002) (*discretionary review denied*). North Carolina courts will only find the existence of such a fiduciary relationship if the transaction at issue occurs "under circumstances amounting to a 'winding-up' or dissolution of the corporation." *Whitley v. Carolina Clinic*, 118 N.C. App. 523, 528, 455 S.E.2d 896, 900 (1995). The Fourth Circuit in *USA Trouser, S.A. de C.V. v. Andrews* recognized that courts undertake a "complex analysis" to determine whether a corporation is winding up or dissolving, and no one single factor is dispositive. *USA Trouser, S.A. de C.V. v. Andrews*, 612 F. App'x 158 (4th Cir. 2015) (citing *Keener*, 149 N.C. App. at 826, 560 S.E.2d at 817)).

### a) Factors for Winding Up or Dissolution

*USA Trouser* provides a non-exhaustive list of factors courts consider in determining whether circumstances amounting to winding-up or dissolution existed at the time of an alleged breach of fiduciary duty:

1. whether the corporation was insolvent, or nearly insolvent, on a balance sheet basis;
2. whether the corporation was cash flow insolvent;
3. whether the corporation was making plans to cease doing business;
4. whether the corporation was liquidating its assets with a view of going out of business; and
5. whether the corporation was still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so.

*USA Trouser*, 612 Fed.Appx. at 160.

In other words, insolvency alone does not create a fiduciary relationship between a corporation's directors and its creditors. *Norman Owen Trucking Inc. v. Morkoski*, 131 N.C. App. 168, 175-76, 506 S.E.2d 267, 272 (1998). Such a relationship will only exist if the corporation is insolvent **and** "it has ceased to do business, or has taken, or is in the act of taking, a step which

will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue…" *Whitley*, 118 N.C. App. at 528, 455 S.E.2d at 900 (citations omitted)

## 2. Third Party Plaintiffs' Breach of Fiduciary Duty Allegations

Third Party Plaintiffs allege that Third Party Defendants "had an obligation to [Third-Party Plaintiffs], as secured creditors, to use company assets to their benefit and in a manner that did not prefer unsecured creditors," and that Third Party Defendants breached this duty "when, knowing that their business was becoming insolvent, they siphoned substantial sums of money to their other enterprises and to themselves…" (Document No. 63 ¶ ¶ 64-65, p. 11.)

## 3. Breach of Fiduciary Duty Argument

Third Party Plaintiffs fail to state a claim for breach of fiduciary duty because they fail to establish the existence of a fiduciary relationship, which would only have existed if Pneu-Mech 3.0 was winding up or in dissolution at the time of the alleged breach.

### a) Insolvency Alone Does Not Give Rise to a Fiduciary Relationship

Third Party Plaintiffs' factual allegations, when stripped of unsupported conclusions, amount only to insolvency, thus Third Party Plaintiffs have not plead facts indicating Pneu-Mech was winding up or in dissolution at the time of any alleged breach. Many of Third Party Plaintiffs' allegations amount to nothing more than the type of unwarranted conclusions and unreasonable inferences that are not entitled to the assumption of truth and thus cannot support a claim for relief. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949-50 (2009). For example, Third Party Plaintiffs claim that that in 2022, Pneu-Mech 3.0 was "likely not going to maintain operations much longer," and that Third Party Defendants had "no intention of ever paying invoices." (Document No. 63, ¶ 46, pp. 8-9.) These conclusions are not supported by any facts in the Third

Party Complaint. On the contrary, Third Party Plaintiffs admit that Third Party Defendants were actively "taking on new work and entering new contracts," at the same time they attempt to claim Pneu-Mech 3.0 was going out of business. Furthermore, the Third Party Complaint contains no factual support for Third Party Plaintiffs' claim that Third Party Defendants had "no intention of ever paying invoices." Third Party Plaintiffs plead no facts indicating they had knowledge of Third Party Defendants' state of mind or intentions. Because they lack factual support, these and other conclusory allegations in the Third Party Complaint fail to state a claim for relief.

The factual allegations Third Party Plaintiffs do set forth in the Third Party Complaint establish nothing more than insolvency, which by itself, absent other factors, does not give rise to a fiduciary relationship.

### b) Third Party Plaintiffs Fail to Allege Breach

To the extent the Third Party Complaint alleges that Third Party Defendants "siphoned substantial sums of money to their other enterprises," it fails to state a claim for breach of fiduciary duty because the Third Party Complaint lacks any facts to support this conclusory allegation. The only mention of "other enterprises" owned by Third Party Defendants is in paragraphs 31-40 on pages 6-7. These paragraphs, however, do not allege that any sum of money was transferred from Pneu-Mech 3.0 to these "other enterprises," nor does that information appear anywhere else in the Third Party Complaint. Without factual support, Third Party Plaintiff's allegation that Third Party Defendants "siphoned substantial sums of money to their other enterprises" amounts to nothing more than notice pleading and cannot survive a motion to dismiss.

The Third Party Complaint also fails to state a claim for breach of fiduciary duty when it claims Third Party Defendants "siphoned substantial sums of money…to themselves." (Document No. 63 ¶ 65, p. 11.) The only factual allegations indicating Third Party Defendants directed money

to themselves are Paragraph 20, which claims Third Party Defendants gave themselves $25,000 raises some time in late 2017 or early 2018, and Paragraph 21, which claims Third Party Defendants took out shareholder loans sometime before the end of 2021.  (Document No. 63, p. 4.)  As set forth herein, these transactions would only amount to breaches of fiduciary duty if Pneu-Mech 3.0 was winding up or in dissolution at the time Third Party Defendants made the transactions.  The $25,000 raises Third Party Defendants allegedly gave themselves in late 2017 or early 2018 cannot constitute breaches of fiduciary duty because Third Party Plaintiffs allege no facts indicating Pneu-Mech 3.0 was winding up or in dissolution at that time.  Additionally, Third Party Plaintiffs fail to allege the dates on which they claim Third Party Defendants took out shareholder loans, indicating only that the loans were taken some time before the end of 2021.  Because Third Party Plaintiffs cannot establish that any of the transactions they claim were breaches of fiduciary duty took place at a time when a fiduciary duty existed, they fail to state a claim for relief.

## IV.    Conclusion

Because Third Party Plaintiffs fail to state a claim on which relief can be granted, Third Party Defendants respectfully request that the Court dismiss the Third Party Complaint with prejudice.

Respectfully submitted, this, the 8th day of July, 2024.

**HULL & CHANDLER**

By:     */s/ Elizabeth Vennum*
Elizabeth Vennum
N.C. State Bar No. 49747
1009 East Boulevard
Charlotte, NC 28203
lvennum@lawyercarolina.com
Tel. (704) 375-8488
*Counsel for Third Party Defendants*

## Certificate of Service

This is to certify that on this date the undersigned filed the foregoing using the Court's CM/ECF system which will send notification of such filing to all counsel of record through CM/ECF.

This the 8th day of July, 2024,

**HULL & CHANDLER**

By:    */s/ Elizabeth Vennum*
Elizabeth Vennum