UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | | |
|---|---|---|
| CROWN EQUIPMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:24-cv-00167 |
| | ) | JURY TRIAL DEMANDED |
| DAVID BRADY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# FIRST AMENDED THIRD-PARTY COMPLAINT

David Brady, William Tucker, Brawtus Holding Company, LLC, and Brawtus Management Company, LLC ("Third-party Claimants"), hereby bring this Third-Party Complaint against James Andrews ("Andrews") and Jerry Trostle ("Trostle"), as Third-Party Defendants, stating as follows.

## JURISDICTION AND VENUE

1. Third-party claimants are citizens of North Carolina and reside in this District.

2. Andrews and Trostle are citizens of North Carolina and reside in this District.

3. This Court has general jurisdiction over the Third-Party Defendants.

4. This Court has subject matter jurisdiction over Defendants under Federal Rule of Civil Procedure 14(a), because this Third-Party Complaint otherwise presents a federal question, and/or because supplemental or ancillary jurisdiction over these claims is otherwise proper.

## FACTS

5. David Brady ("Brady") and William Tucker ("Tucker") successfully ran Pneu-Mech Systems Manufacturing, LLC (the "Company") for nearly 20 years, designing and manufacturing specialized industrial equipment and providing related engineering and

installation services, providing these services to countless business customers. As a result, Pneu-mech Systems Manufacturing, LLC established itself as a distinctive brand for providing these goods and services in the minds of such consumers, and Pneu-mech Systems Manufacturing, LLC spent large sums of money and time establishing this distinctive brand identity.

6. During this period, they took on numerous employees, some of which ultimately expressed interest, in 2017, in taking over control of the Company and wishing to purchase the Company's assets, as Brady and Tucker were nearly retirement age and no longer wished to run the Company as a going concern.

7. The employees that ultimately noted interest in the Company were James Andrews ("Andrews") and Jerry Trostle ("Trostle"). At the time that they expressed interest in purchasing the Company's assets, Andrews and Trostle were both in positions of trust within the Company and were assisting with running day-to-day operations, as well as undertaking new client acquisition and contract acquisition for Pneu-Mech.

8. The parties, after discussing a sale price, ultimately utilized the law firm Pope McMillan in Statesville, North Carolina to draw up an Asset Purchase Agreement ("Agreement") in late December 2017, with an effective date of 12:01am, January 1, 2018. The parties, along with the Company's parent company, Brawtus Holding Company, Inc., executed this Agreement. Brawtus Holding Company, Inc., was wholly owned by Brady and Tucker.

9. The Agreement included a sales price of $8,500,000.00, payable in monthly installments of $65,024.43, for 180 total months.

10. The terms of the Agreement included the transfer of the physical assets and going concerns of the Company, including accounts receivable after a certain date. The physical assets also included extensive equipment, vehicles, office supplies, and works-in-process.

11. Brady and Tucker, when the sale ultimately closed, were paid $1,865,380.00 in cash from the Company's bank account. On deposit left with the Buyer was a remainder of $500,000.00 of operating capital.

12. A Promissory Note, detailing the amortization and total balance of the finance agreement was entered into by Andrews and Trostle, with a first repayment date of February 1, 2018.

13. Pneu-Mech Holdings, Inc., a company created by Andrews and Trostle to purchase the assets from Pneu-Mech Systems Manufacturing, LLC, also entered into a lease agreement for 201 Pneu-Mech Drive (now United Drive). The owner of this real estate was Brawtus Management Company, LLC, whose members are Brady and Brawtus Holding, Inc., of which Brady and Tucker are shareholders.

14. The sale price of Pneu-Mech's assets were split between intangible assets, valued at $6,932,000.00, and the physical assets, valued for the remainder, $1,568,000.00.

15. After the sale was executed, Pneu-Mech Systems Manufacturing, LLC was renamed to Pneu-Mech Dissolution, LLC, and administratively dissolved thereafter.

16. Pneu-Mech Holdings, Inc., the Company created by Andrews and Trostle to purchase the assets of now-Pneu-Mech Dissolution, LLC, changed its name to Pneu-Mech Systems Manufacturing, Inc., after the name-change was effectuated from Brady.

17. Brady and Tucker advised Trostle and Andrews on business operations from time-to-time, both to help Trostle and Andrews and to ensure profitable operations so that Trostle and

Andrews could pay off the Promissory Note. In this vein, Brady and Tucker remained on the Board of Pneu-Mech Systems Manufacturing, Inc. until the satisfaction of the Note.

18. Throughout 2018 and until Pneu-Mech Systems Manufacturing ultimately failed,, Brady and Tucker routinely warned Andrews and Trostle that they needed to substantially cut spending and take smaller jobs, given the state of the market, as well as the inability of a smaller operation like Pneu-Mech to take on much larger jobs. These warnings went ignored, and Andrews and Trostle, who had the sole authority to make business decisions and take on jobs, decided to take on jobs well beyond their capacity and skill level. This included jobs like the project involving the Plaintiff, which vastly exceeded the historical annual revenue of the business.

19. Brady and Tucker specifically warned Trostle and Andrews not to take the Crown job for these reasons.

20. Trostle and Andrews took the Crown job anyway, despite the repeated warnings of Brady and Tucker.

21. After the purchase of the Company in late-2017, Andrews and Trostle immediately gave themselves significant salary raises of $25,000.00, each, and incorporated those raises into the Asset Purchase Agreement.

22. Andrews and Trostle took out significant "shareholder loans" from the business after the sale. These loans totaled, depending on whether interest was calculated, between $89,127.92 in 2019, and $93,196.84, being owed as of December 2021. On information and belief, these loans were taken out for the purpose of providing capital infusions to AFI, Carolinas and Brand Performance Fabrication, LLC, two companies in which Trostle and Andrews had an interest at the time.

4

23. Even though Pneu-Mech Systems Manufacturing, LLC had changed its name to Pneu-Mech Dissolution, LLC in February 2018, Andrews and Trostle continued to use the name Pneu-Mech Systems Manufacturing, LLC on its letterhead and in other communications, and on information and belief, they specifically intended to confuse their business consumers into believing that the business was still controlled by Brady and Tucker, and further, that it continued to operate under the LLC and its name, even though it now operated as a brand new, very young legal entity, Pneu-mech Systems Manufacturing, Inc.

24. On information and belief, even though Trostle and Andrews knew that the actual company was now operating under Pneu-Mech Systems Manufacturing, *Inc.*, they continued using the *LLC's* letterhead and information, hoping that it would increase their likelihood at landing larger contracts, given the historical success of the LLC under Brady and Tucker's leadership.

25. Andrews and Trostle are sophisticated businessmen, with several company ownership interests each. They knew of this clear difference, and yet they continued to use this false letterhead, and other false communications suggesting that Pneu-Mech Systems Manufacturing, LLC was an ongoing concern in which customers were engaging.

26. Trostle and Andrews continued this deception throughout their tenure as shareholder-owners of Pneu-Mech Systems Manufacturing, Inc., affecting a great number of vendors, consumers, and other companies, including Crown Equipment Corporation and Queens Logistics, LLC, both of which have filed suits against numerous parties, including Brady and Tucker.

27. Brady and Tucker are being included in these lawsuits due to Trostle and Andrews' representations to the same customer base that the LLC marketed to that the LLC, was an

5

ongoing business concern that Brady and Tucker continued to operate, and had ultimate authority and control over the contracts Trostle and Andrews were entering into and the ultimate work performed under those contracts, even though in truth these projects were the sole responsibility of Andrews, Trostle, and their wholly owned Corporation.

28. Nevertheless, Trostle and Andrews used this false letterhead, and other false communications claiming to represent or implying that they represented the essentially defunct Pneu-Mech Systems Manufacturing, LLC, in dealing with Crown Equipment Corporation, despite their sophistication and knowledge that such communications were false and knowing that in fact the entity was named Pneu-Mech Dissolution, LLC and that it was not an ongoing concern.

29. Only when Crown had to issue payment under the contract did Andrews inform them that they would be writing checks to the "Inc.," as they didn't have a bank account for the dissolved LLC.

30. Brady and Tucker were not included in any communications between Andrews, Trostle, and any Crown representatives.

31. The Crown job did not come to fruition until nearly a year after Brady and Tucker had sold Pneu-Mech's assets to a legal entity wholly owned by Andrews and Trostle and/or a parent company wholly owned by Trostle and Andrews.

32. Brady and Tucker did not speak a single time with anyone from Crown for the job described in the Complaint that Crown alleges gives rise to liability.

33. Brady and Tucker were of such limited involvement that they were only at annual meetings to discuss the finances of the Company. They were completely, and intentionally, left out of any operating business discussions, after having sold the Company.

6

34. In the limited number of meetings with Andrews and Trostle, Brady and Tucker gave progressively dire warnings about Andrew and Trostle's excessive overhead and the fact that they would likely soon be unable to cover ordinary operating expenses, especially if they took on additional high operating expense work.

35. Trostle is also an executive level board member of a company called "AFI Carolinas." AFI conducts liquid and powder sign coating. Trostle was a member of this Company at the same time that he was a shareholder of Pneu-Mech, Inc.

36. Brand Performance Fabrication, LLC ("BPF") is another wholly owned subsidiary of AFI that conducts welding and fabrication services and creating made-to-order custom parts. Andrews is or was the member-manager of BPF. Andrews was a shareholder, officer, and board member of Pneu-Mech Systems Manufacturing, Inc. at the same time he was a member-manager of BPF.

37. By early to mid-2022, Pneu-Mech Systems Manufacturing, Inc. was severely deficient in its obligation to pay Brady and Tucker, pursuant to the financing agreement they had reached. On information and belief, this had exceeded $600,000 in arrearage principal, being roughly 10 months in arrears.

38. In the final annual meeting that was held by Andrews and Trostle, to which Brady and Tucker were invited, they informed Brady and Tucker that the 15-year note was likely not going to be repaid without significant hardship. When queried how they would need to restructure the note, the accountant working on the matter informed them that itwas likely too late and that Pneu-Mech Systems Manufacturing, Inc. didn't have cash sufficient pay up the interest or even begin making progress against the arrearage payments.

39. By the time that Brady and Tucker, as creditors of Pneu-Mech Systems Manufacturing, Inc. called the note in default and repossessed the various assets of the business, they discovered a number of outstanding invoices and accounts receivable to both AFI and BPF.

40. AFI owed an invoice for the provision of certain items, totaling $26,500.00.

41. AFI also owed several other invoices totaling $20,124.34.

42. AFI also owed accruing interest on those invoices, which were, as of 2022, unpaid. The total balance, with interest, was $58,112.24, when Pneu-Mech Systems Manufacturing, Inc. ceased operations.

43. BPF, on the other hand, had an accounts payable balance to Pneu-Mech Systems Manufacturing, Inc. of $179,072.37, by the end of 2021.

44. On information and belief, Andrews and Trostle were siphoning away work that could have been completed by Pneu-Mech Systems Manufacturing, Inc., because they were seeking to have the money earned by their subsidiaries, and carrying an open balance with Pneu-Mech Systems Manufacturing, Inc., an enterprise they fully intended to bankrupt, being well underwater by the period of 2021-2022.

45. Also, on information and belief, after the work was diverted to Trostle and Andrews' other interested Companies, Pneu-Mech would "lend" both manpower and materials to AFI and BPF to complete the work. The Plaintiffs believe that this deception was undertaken to prevent Pneu-Mech Systems Manufacturing, Inc. from acquiring cash that could have been used to pay down the Plaintiffs' secured Note.

46. On information and belief, there was no intention of ever paying the invoices to AFI or BPF by either Andrews or Trostle, because they were aware of the financial straits of Pneu-

Mech Systems Manufacturing, Inc. and knew the money was going to disappear into interest arrearage payments.

47. On information and belief, Pneu-Mech Systems Manufacturing, Inc. supplied materials and labor to both AFI and BPF during the period of ownership by Andrews and Trostle, and was rarely, if ever, paid.

48. Trostle and Andrews' failure to treat their own interested entities at arm's length directly harmed both Brady and Tucker, as secured creditors, as well as customers, clients, vendors, and other companies engaged with Pneu-Mech Systems Manufacturing, Inc.

49. As the natural and probable result of Trostle and Andrews' mismanagement of Pneu-Mech Systems Manufacturing, Inc., Brady and Tucker's Note went largely unpaid, with over $5,600,000.00 being left in arrearage principal at default, with more than $600,000 of that having accrued pre-default.

50. As a natural and probable result of Trostle and Andrews' mismanagement of Pneu-Mech Systems Manufacturing, Inc., multiple third parties, including the Plaintiff in the case at bar, were injured and were subsequently told that their injuries were caused by Brady and Tucker's negligence.

51. Andrews and Trostle have routinely sought to palm off liability for their failure to intelligently conduct the business of Pneu-Mech Systems Manufacturing, Inc., onto Brady and Tucker, despite failing to heed any of their financial advice regarding running the Company.

52. Andrews and Trostle have directly spoken to the Plaintiff in this case, Crown Equipment Corporation, and are actively aiding the Plaintiff in this case, including by misdirecting

blame for the Plaintiff's alleged wrongdoing at Brady and Tucker, even though Brady and Tucker have nothing to do with the wrongdoing alleged in the Complaint.

53. Trostle and Andrews, in emails to vendors, clients, acquaintances, employees, and other as-of-yet undetermined persons routinely identified Brady and Tucker as the people responsible for various liabilities solely the responsibility of Trostle and Andrews, including unpaid debts of Pneu-Mech Systems Manufacturing, Inc. and the wrongful actions described in the Complaint. On information and belief, Trostle and Andrews have had numerous conversations with Crown and their counsel making these false and wrongful allegations that, among other things, Brady and Tucker were responsible for the negligent design, manufacturer, and installation of the oven described in the Complaint, and that they were otherwise engaged in a fraudulent scheme to deprive Crown of compensation for any potential liability that may exist. Indeed, there is no way that Crown could have some complex, specific knowledge of asset purchase between Brady and Tucker on the one hand and Andrews and Trostle on the other without the complete cooperation of Andrews and Trostle and receiving countless false, defamatory, and wrongful allegations of this kind.

54. Trostle and Andrews made these routine comments to their creditors or potential creditors, including Crown, while Pneu-Mech Systems Manufacturing, Inc. was still operating, falsely alleging that (1) Brady, Tucker, and their legal entities were responsible for work performed and that Brady, Tucker, and their legal entities had negligently performed the work; (2) Brady and Tucker had engaged in a systematic, decades long scheme to defraud any potential creditors and shield themselves for liability of all kinds, including contractual debts and negligence, as set forth by Crown in their Complaint; and (3) Brady and Tucker

10

never had any intent to pay for any liability arising from any of their debts, and therefore were deceitful business people engaging intentionally in a criminally fraudulent scheme to literally steal millions of dollars from unsuspecting business customers.

55. Pneu-Mech Systems Manufacturing, Inc. continued their operations under Trostle and Andrews' leadership until May of 2023, when it was administratively dissolved by the North Carolina Secretary of State's office. The comments referenced in the preceding paragraph were made throughout 2022 and continuing until the dissolution of the Company in 2023.

56. On information and belief, Trostle and Andrews continued making the same patently false and defamatory assertions about Brady and Tucker as previously set forth in this pleading even after the dissolution of the Pneu-Mech Systems Manufacturing, Inc.

57. For example, Andrews and Trostle have also pointed the finger at Brady and Tucker regarding contracts that were entered into in 2022 with another business, Queen's Logistics, LLC, nearly 4 years after the sale, and have told this business to sue Brady and Tucker directly, claiming that Brady and Tucker are actually responsible for failure to pay contractual debts to this company, with Andrew's and Trostle claiming that they have insufficient assets to make Queen's Logistics and various other business customers whole.

58. At the time the Queen's Logistics contracts were negotiated by Andrews and Trostle, Pneu-Mech Systems Manufacturing, Inc. was functionally bankrupt, with assets outweighed by liabilities 3 to 1 or more, and were likely not going to maintain operations much longer. Despite this knowledge, Andrews and Trostle continued taking on new work and entering new contracts with no intention of ever paying invoices.

59. Brady and Tucker have engaged in no wrongdoing in this case, given that they had zero authority to manage day-to-day business operations of Pneu-Mech Systems Manufacturing, Inc., and given the fact that they specifically told Andrews and Trostle, when they sold them the business in late-2017, not to take the job that led to this lawsuit.

60. To date, defending two suits has cost the Third-Party Plaintiffs significantly in attorney's fees, mental stress and fatigue, and harm to their reputations. These suits come solely because of the false and defamatory allegations that Trostle and Andrews have made as previously described in this Amended Third Party Complaint. Without these allegations by Trostle and Andrews to their various customers, that Brady and Tucker are ultimately responsible for Pneu-Mech Systems Manufacturing, Inc.'s defaulted obligations, these costs would never have been incurred.

61. Further, Pneu-Mech Systems Manufacturing, Inc., as enacted in its bylaws by Andrews and Trostle, explicitly promised to any member of their Board, including Brady and Tucker, complete indemnity for any acts carried out for the corporations benefit, which extends to the Crown job, since Brady and Tucker explicitly advised Trostle and Andrews not to take the job. The bylaws are attached to this pleading as Exhibit 1, which is a true and accurate copy of the duly enacted bylaws of the corporation.

## COUNT I
## INDEMNITY

62. Third-Party Claimants hereby incorporate by reference each preceding paragraph.

63. Under North Carolina law, a party is entitled to indemnity when the party "is exposed to liability by the action of another who, in law or equity, should make good the loss of another." *Carl v. State*, 192 N.C.App. 544, 557, 665 S.E.2d 787, 797 (2008) (internal quotations omitted). The most common form of indemnity is indemnity expressly provide

12

for in a written document, although "[a] contract of indemnity need not be express; indemnity may be recovered if the evidence establishes an implied contract. In addition, a right to indemnity exists whenever one party is exposed to liability by the action of another who, in law or equity, should make good the loss of the other." *McDonald v. Scarboro*, 91 N.C. App. 13, 22, 370 S.E.2d 680, 686 (1988) (internal quotations omitted). The first category of indemnity is self-explanatory. The second category "of indemnity implied-in-fact stems from the existence of a binding contract between two parties that necessarily implies the right," which "is derived from the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship is derivative of the contracting parties' intended agreement." *Crescent Univ. City Venture*, LLC v. AP Atl., Inc., 2019 NCBC LEXIS 46, *116, 2019 NCBC 46, 2019 WL 3765313 (internal quotations omitted). The third category, indemnity implied in law, "arises from an underlying tort, where a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third party." *Woody v. FlightGest, Inc.*, 265 N.C. App. 602, 827 S.E.2d 346 (2019).

64. If the third party claimants are found liable under the Complaint, then the third party claimants are entitled to indemnity from Andrews and Trostle based upon the express promise of indemnity to Brady and Tucker found in the company's bylaws, as previously explained in this pleading. Because Andrews and Trostle caused the dissolution of the Corporation, it follows that as the sole shareholders they must honor any lingering liabilities from the Corporation, which must naturally flow to them, including this express indemnity for Board members.

65. If the cross-claimants are found liable under the Complaint, they are further entitled to indemnity based on a theory of implied-in-fact contract, since the complete circumstances described in this pleading and those alleged in the Complaint demonstrate that any passive advisor like Brady and Tucker would have indemnity by implication.

66. Finally, if the cross-claimants are found liable under the Complaint, they are entitled to indemnity based on a theory of indemnity implied-by-law because the active tortfeasors as alleged in the Complaint, and as further factually alleged in this cross claim, is Trostle and Andrews and their wholly-owned and wholly-controlled corporation, Pneu-Mech Systems Manufacturing, Inc.

67. The cross-claimants are further entitled to recover attorney's fees and costs for the same reason.

68. Because Pneu-Mech Systems Manufacturing, Inc. is a defunct company which has been dissolved by the State of North Carolina, the cross-claimants are entitled to recover from the only shareholders of this corporation, Trostle and Andrews.

**COUNT II**
**VIOLATION OF LANHAM ACT § 43(a)**
**FALSE ADVERTISING**

69. Third-Party Claimants hereby incorporate by reference each preceding paragraph.

70. Trostle and Andrews made a false or misleading statement of fact when they (a) told Crown and their other vendors that Third-Party Claimants were responsible for what was actually Trostle and Andrews' malfeasance; (b) told Crown and other vendors that Third-Party claimants secretly controlled the operations of Pneu-mech following the sale of the enterprise to Trostle and Andrews; (c) told Crown and other vendors that Third-Party

14

Claimants had control over the actions of Pneu-mech after the sale; and/or (d) when they engaged in the other acts alleged in this Third-Party Complaint.

71. These acts were likely to cause mistake, or to deceive as to the affiliation, connection, or association of Third-Party Claimants with Trostle and Andrews' business, or as to the origin, sponsorship, or approval of Trostle and Andrew's goods, services, or commercial activities, and in fact these acts did cause such mistake or deception.

72. Third-party Claimants are entitled to all damages suffered, its costs, and its attorney's fees, including all damages, costs, and attorney's fees incurred as the result of this suit.

### COUNT III
### VIOLATION OF LANHAM ACT § 43(a)
### INFRINGEMENT OF AN UNREGISTERED TRADEMARK

73. Third-Party Claimants hereby incorporate each preceding paragraph.

74. Third-Party Claimants have a valid unregistered trademark in "Pneu-mech Systems Manufacturing, LLC."

75. Trostle and Andrews knowingly, willfully, and intentionally used this trademark without authorization as described in this Amended Third-Party Complaint in a manner likely to cause confusion.

76. This conduct caused the damages described in this complaint, including costs and attorneys' fees incurred in this suit.

77. This use of "Pneu-mech Systems Manufacturing, LLC" also amounts to counterfeiting under 15 U.S.C. § 1117(b) and (c), entitling to Third-Party Claimants to treble damages, statutory damages of up to $2 million, and costs and attorneys fees as provided for in the statute.

## COUNT IV
## DEFAMATION

78. Third-Party Claimants hereby incorporate by reference each preceding paragraph.

79. Trostle and Andrews made a false statement of fact when they (a) told Crown and their other vendors that Third-Party Claimants were responsible for what was actually Trostle and Andrews' malfeasance; (b) told Crown and other persons that Third-Party claimants secretly controlled the operations of Pneu-mech following the sale of the enterprise to Trostle and Andrews; (c) told Crown and other persons that Third-Party Claimants had control over the actions of Pneu-mech after the sale; (d) told Crown and other persons that Brady and Tucker and secretly engaged in a multi-decades-long fraudulent scheme to insulate themselves from any liability ever from any potential creditor; and/or (e) when they engaged in the other acts alleged in this Third-Party Complaint.

80. These acts defamed and impeached Third Party Claimants with respect to their trade or business, and alleged criminal conduct, and otherwise caused them to suffer damage, insofar as Trostle and Andrews wrongly made others believe that Third Party Claimants were responsible for the bad acts in which Trostle and Andrews engaged, as described in this Third-Party Complaint and in the underlying suit.

81. Trostle and Andrews knew that these statements were false and made them knowingly, intentionally, willfully, and maliciously to harm the reputation of Third-Party Claimants and thereby shift blame for Trostle and Andrew's incompetence.

82. Third-party Claimants are entitled to all damages suffered, its costs, including all damages and costs incurred as the result of this suit.

83. Third Party Claimants are also entitled to punitive damages in the maximum amount permitted by law.

## COUNT V
## VIOLATION OF NCGS 75-1.1 – DECEPTIVE TRADE PRACTICES

84. Third-Party Claimants hereby incorporate by reference each preceding paragraph.

85. Third-Party Plaintiffs and Third-Party Defendants were engaged in commerce during the relevant times reference throughout this Complaint. Notably, Third-Party Defendants owed Third-Party Plaintiffs nearly $6,000,000.00 and were attempting, though failing, to satisfy that obligation.

86. Trostle and Andrews, through many of their business decisions, up to and including siphoning substantial business opportunities, and the manpower and materials to undertake them, to their other companies, engaged in unfair and deceptive practices. The Defamation *per se* alleged in the Factual portion of this First Amended Third-Party Complaint, as well as in Count IV of the same, also constitutes an unfair or deceptive act under N.C. Gen. Stat. § 75-1.1.

87. These business practices actively harmed both the consuming public, being Pneu-Mech Systems Manufacturing, Inc.'s customers, as well as its secured creditors, by divesting Pneu-Mech Systems Manufacturing, Inc. of its ability to successfully operate.

88. Third-Party Plaintiffs have been damaged in the total amount of their unpaid Note, in addition to the attorney's fees incurred defending lawsuits that have erupted as a result of the Third-Party Defendant's defamatory statements, and harm to their reputation, as detailed in Claim IV.

## COUNT VI
## BREACH OF FIDUCIARY DUTIES

89. Third-Party Claimants hereby incorporate by reference each preceding paragraph.

90. Trostle and Andrews had an obligation to Third-Party Claimants, as secured creditors, to use company assets to their benefit and in a manner that did not prefer unsecured creditors.

91. Trostle and Andrews breached this duty when, knowing that their business was becoming insolvent, they siphoned substantial business opportunities, and the manpower and materials to undertake them, to their other enterprises , as otherwise set forth in this Third-Party Complaint.

92. Third-Party Claimants were damaged in that they did not fully recover the money owed to them under the promissory note, or as otherwise owed under the asset sales agreement.

93. Third-Party Defendants did these acts intentionally, knowingly, willfully, and maliciously.

94. Third-Party Claimants are therefore entitled to its damages and costs, and further, to punitive damages to the maximum extent permitted by law.

WHEREFORE, Third-Party Claimants respectfully request that this Court order the relief requested above, and any other relief it deems just and proper.

Dated: July 22, 2024                    BY COUNSEL

/Andrew P. Connors/
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
(Admitted *Pro Hac Vice*)
DARKHORSE LAW PLLC
119 Tradewynd Dr., Suite B
Lynchburg, Virgnia 24502
Phone: 540-553-8149 ext. 2
Fax: 540-301-6460
andrew@darkhorse.law

John Riordan (NC. Bar No. 54973)
FIDELITY LAW GROUP

18

8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

*Counsel for Defendants David Brady, William Tucker, Brawtus Holding Co., Inc., Brawtus Management Co., LLC, and Pneu-Mech Dissolution LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served all counsel of record via CM/ECF.


/Andrew P. Connors/
Andrew P. Connors, Esq. (Va. Bar. No. 80248)
DARKHORSE LAW PLLC
Phone: 540-553-8149 ext. 701
Fax: 540-301-6460
andrew@darkhorse.law

*Counsel for Defendants Brady,*
*Tucker, Brawtus Holding, Inc.,*
*Brawtus Management LLC, and Pneu-*
*Mech Dissolution LLC*