IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Statesville Division

| | |
|---|---|
| CROWN EQUIPMENT CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:23-cv-00059-KDB-DCK |
| DAVID BRADY, *et al.*, | ) |
| Defendants. | ) |
| DAVID BRADY, *et al.*, | ) |
| Brady/Tucker Defendants, | ) |
| v. | ) |
| JAMES ANDREWS AND JERRY TROSTLE, | ) |
| Third-Party Defendants. | ) |

**ACTION FOR DECLARATORY JUDGMENT**

David Brady, William Tucker, Brawtus Holding Company, LLC, and Brawtus Management Company, LLC ("Brady/Tucker Defendants"), hereby bring this action for declaratory judgment against Crown Equipment Corporation ("Crown"), James Andrews ("Andrews") and Jerry Trostle ("Trostle") (as Third-Party Defendants), and Pneu-Mech Systems Manufacturing, Inc. This action is limited in purpose and is brought to specifically plead facts related to the ownership of an entity, previously believed to be Brady-Tucker entity, now believed by Brady/Tucker Defendants to be owned by Pneu-Mech Systems Manufacturing, Inc., which is wholly owned by James Andrews and Jerry Trostle. The Brady/Tucker Defendants plead the following:

1. Pneu-Mech Systems Manufacturing, LLC is a Company created in 2004 by David Brady and Jeff Tucker. This entity has been stylized by Crown Equipment Corporation as "Pneu-Mech 2.0," and for continuity purposes will be referred to as such throughout, though Brady/Tucker Defendants dispute the stylization.

2. Jerry Trostle became the President of Pneu-Mech 2.0 in 2011 and retained this role nearly his entire tenure at Pneu-Mech 2.0. He then continued in this same role when he and Andrews purchased Pneu-Mech 2.0 in the December of 2017.

3. Jim Andrews became the Vice President of sales at Pneu-Mech 2.0 in 2011 and retained this role nearly his entire tenure at Pneu-Mech 2.0. He then continued in this same role when he and Trostle purchased Pneu-Mech 2.0 in the December of 2017.

4. Later, Trostle and Andrews negotiated with Brady and Tucker for the sale of Pneu-Mech 2.0 in middle and late 2017. Documents generally referring to the terms of this sale are attached as Exhibit A.

5. Negotiations were finalized and formalized by sale documents that delivered 100% of the membership interest in "Pneu-Mech Systems Manufacturing, LLC" to Trostle and Andrews' new entity, Pneu-Mech Systems Manufacturing, Inc. (F.K.A. Pneu-Mech Holdings, Inc. Moreover, there was a complete purchase and assignment of all of the assets of Pneu-Mech 2.0 to "Pneu-Mech Holdings, Inc." A document reflecting this assignment of membership interest is attached as Exhibit B.

6. Pneu-Mech Holdings, Inc. was renamed, within a month, to Pneu-Mech Systems Manufacturing, Inc. (stylized by Crown as "Pneu-Mech 3.0" and continued herein)

7. Trostle and Andrews are the sole and exclusive shareholders, and were ever the only the shareholders, at any point, of Pneu-Mech 3.0.

8. As of December 31, 2017, Pneu-Mech 3.0 was the sole and exclusive member of Pneu-Mech 2.0.

9. Since 2017, neither Brady nor Tucker has been involved in the day-to-day operations of Pneu-Mech 2.0 or 3.0, both entities being fully owned by Trostle and Andrews.

10. Further, since 2017, Brady and Tucker's only involvement with Pneu-Mech 3.0 was as secured creditors (through their Company, Brawtus Holding Company, Inc. ("Pneu-Mech 1.0"), as the result of the seller-finance nature of the sale of Pneu-Mech 2.0

11. On information and belief, Crown attempted to, or did, serve Pneu-Mech 2.0 via David Brady, as he was the last registered of agent according to the North Carolina Secretary of State (Document No. 14).

12. On information and belief, Trostle and Andrews never took any steps to establish their record ownership of Pneu-Mech 2.0, because the entity was not going to be used for much longer beyond the transfer of assets to their new corporate entity, Pneu-Mech 3.0.

13. Moreover, Trostle and Andrews never made a single filing with the NC Secretary of State regarding their ownership of Pneu-Mech 2.0. From March 30, 2004, when the Company was originally created, through April 17, 2017, David Brady was not delinquent in filing a single annual report.

14. However, after December 2017, when Trostle and Andrews purchased the Company, they missed the 2018 annual report filing, the 2019 annual report filing, and the 2020 annual report filing, and thereafter received notice of administrative dissolution. Pneu-Mech 2.0 was then formally dissolved by the State office in June of 2021.

15. Pneu-Mech 2.0, dissolved or otherwise, was an asset of Pneu-Mech Holdings, Inc. n/k/a Pneu-Mech Systems Manufacturing, Inc, as of January 1, 2018.

16. Crown is pleading wrongdoing and malfeasance against Pneu-Mech 2.0 that post-dates January 1, 2018.

17. The Brady/Tucker Defendants did not own Pneu-Mech 2.0 at the time of the alleged malfeasance.

18. Pneu-Mech 3.0 was the sole member of Pneu-Mech 2.0 at the time of any alleged malfeasance.

## COUNT ONE
### (Declaratory Judgment)

19. Brady-Tucker Defendants replead, as if more fully laid out here, the preceding paragraphs.

20. An actual case or controversy exists between the parties for which a declaratory judgment is necessary and appropriate under the Declaratory Judgment Act.

21. An actual case or controversy arose when the Brady-Tucker Defendants transferred 100% of the membership interest in Pneu-Mech 2.0 to Pneu-Mech 3.0. Further an actual case or controversy exists in that Plaintiff has instituted the above-captioned suit that alleges the Brady-Tucker Defendants, or at least one of them, are the parties responsible for Pneu-Mech 2.0.

22. Brady-Tucker Defendants assert that they are not the record owners (or "non-record owners") of Pneu-Mech 2.0.

23. Brady-Tucker Defendants assert that they have not been owners of Pneu-Mech 2.0 since a time pre-dating even the earliest allegation of malfeasance by Crown, the Plaintiff in the captioned action.

24. Documents establishing the sale of Pneu-Mech 2.0's entire membership interest and entire scope of assets, including intellectual property and goodwill are existing, uncontroverted, and no question has been made of their authenticity by counsel for any Party.

25. Documents establishing this sale are signed by the Parties against which this action seeking declaratory judgment is levied against, being Trostle and Andrews.

26. Trostle and Andrews made payments to Pneu-Mech 1.0, a Brady-Tucker entity, under a secured interest seller-finance agreement, further establishing the legitimacy of the sale of Pneu-Mech 2.0 and intent of the parties.

27. Counsel has conferred with Trostle and Andrews' counsel, as well as counsel for Pneu-Mech 3.0, and neither has agreed with the position that either Trostle and Andrews, as shareholder, or Pneu-Mech 3.0, as parent company over Pneu-Mech 2.0, owns the purchased entity.

28. Crown has sent extensive discovery to all Brady-Tucker Defendants, including discovery to Pneu-Mech 2.0, believing it to be within the ambit of Brady-Tucker control. As discovery developed further, it was determined that the Company had been definitively sold, including all interest, all assets, unrestricted, to Trostle and Andrews' new Company, Pneu-Mech 3.0.

29. The Brady-Tucker Defendants are entitled to a declaration that they are not the legal owners of Pneu-mech 2.0 and request the Court enter a declaration consistent with that conclusion.

PRAYER FOR RELIEF

30. Brady-Tucker Defendants request this Court enter a declaratory judgment establishing that none of them are the party legally responsible for representing Pneu-Mech 2.0 in this Action.

31. Brady-Tucker Defendants request this Court enter a declaratory judgment establishing Pneu-Mech 3.0 as the record owner of Pneu-Mech 2.0.

32. That Trostle and Andrews be taxed the costs of bringing this action.

33. That Trostle and Andrews bear the attorney's fees of the Brady-Tucker attorneys for being required to bring this action to establish the otherwise uncontroverted ownership of Pneu-Mech 2.0, considering their counsel has been in possession of documents establishing such ownership for several months. Moreover, Trostle and Andrews knew of their ownership of Pneu-Mech 2.0 since January 1, 2018, and their refusal to engage in good faith discussion with Brady-Tucker counsel to enter responses on behalf of an uncontroverted entity ownership demonstrates only bad faith attempts to increase attorney's fees against a crossclaimant.

34. Any further such relief as this Court deems the Brady-Tucker Defendants so entitled.

Dated: October 31, 2024.

BY COUNSEL

/John B. Riordan/
John Riordan (NC. Bar No. 54973)
FIDELITY LAW GROUP
8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

Abbi White Harris, Esq. (NC Bar No. 59883)

Andrew P. Connors, Esq. (Va. Bar. No. 80248)
(Admitted *Pro Hac Vice*)
DARKHORSE LAW PLLC
7331 Timberlake Rd., Suite 201A
Lynchburg, VA 24502
Phone: 540-553-8149 ext. 2
Fax: 540-301-6460
abbi@darkhorse.law
andrew@darkhorse.law
*Lead Counsel*

*Counsel for Defendants David Brady, William*

*Tucker, Brawtus Holding Co., Inc., Brawtus Management Co., LLC, and Pneu-Mech Dissolution LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2024, I electronically filed the foregoing, along with a proposed order on the same, with the Clerk of the Court by using the CM/ECF system, which served the foregoing on the following counsel of record who are CM/ECF participants:

Toby K. Henderson &
Joanna W. Gisel
Sebaly Shillito & Dyer
1900 Kettering Tower
40 North Main Street
Dayton, OH 45423-1900
P: 937-222-2500
F: 937-222-6554
thenderson@ssdlaw.com
jgisel@ssdlaw.com
*Counsel for Plaintiff*

Cory Bradley Patterson
Nelson Mullins Riley & Scarborough LLP
301 South College Street, 23rd Floor
Charlotte, NC 28202
704-417-3154
Fax: 704-377-4814
Email: cory.patterson@nelsonmullins.com
*Counsel for Plaintiff*

Clifton Andrew Alexander Dandison &
Kayla Nicole McDaniel
Cranfill Sumner LLP
5535 Currituck Dr., Suite 210
Wilmington, NC 28403
910-777-6075
Fax: 910-777-6157
Email: adandison@cshlaw.com
Kmcdaniel@cshlaw.com
*Counsel for Defendant Boggs*

Ryan Lee Bostic
Stott, Hollowell, Palmer & Windham
401 E. Franklin Blvd.
P.O. Box 995
Gastonia, NC 28053
704-864-3425
Email: rbostic@cshlaw.com
*Counsel for Defendant Boggs*

Gerald Anderson Stein, II
Hedrick Gardner Kincheloe & Garofalo
4201 Congress St., Suite 300
28209
Charlotte, NC 28209
704-319-5464
Email: astein@hedrickgardner.com
*Counsel for Defendant Pneu-Mech Systems Manufacturing, Inc.*

Bo Brandon Caudill
Villmer Caudill, PLLC
P.O. Box 18186
Charlotte, NC 28218
704-216-8255
Fax: 704-216-8555
Email: bocaudill@villmercaudill.com
*Counsel for United Finishing Systems LLC*

Jarrod Summey
Jsummey@hedrickgardner.com

*Attorney for Third-Party Defendants Jerry W. Trostle and James R. Andrews*

/s/ John B. Riordan/
John Riordan (NC. Bar No. 54973)
FIDELITY LAW GROUP
8511 Davis Lake Pkwy, C6-138,
Charlotte, NC, 28269
Phone: 704-285-8111
j.riordan@theflg.com

*Counsel for Defendants Brady, Tucker, Brawtus Holding, Inc., Brawtus Management LLC, and Pneu-Mech Dissolution LLC*

Exhibit A

November 2, 2017

RE: Proposed Sale of One Hundred Percent (100%)
Of the Membership Interest in Pneu-Mech Systems, LLC

Dear David and Jeff:

This letter confirms our understanding of the mutual present intention of **James R. Andrews** and **Jerry W. Trostle** (the "Purchasers"), and **Brawtus Holdings, Inc.**, a North Carolina corporation, (the "Seller"), with respect to the principal terms and conditions under which the purchasers will purchase all the equity ("membership interest") in the North Carolina limited liability company, known as **Pneu-Mech Systems, LLC** ("Pneu-Mech"). Said transaction is hereafter referred to as the" Acquisition".

The parties acknowledge that this letter does not contain all matters upon which an agreement must be reached in order for the Acquisition to be consummated. Further, among other conditions specified herein or otherwise agreed to by the parties, the obligations of the parties hereto to consummate the Acquisition are subject to the negotiation and execution of the Definitive Purchase Agreement referred to in paragraph 11 below. Accordingly, this letter is intended to be and does not constitute a legally binding agreement. Any business decision either party makes in anticipation of a definitive agreement is at the sole risk of the party making the decision, even if the other party is aware of, or has indicated approval of, such decision.

1. **Purchase of Assets**. At the closing (the "Closing"), subject to the satisfaction of all conditions precedent contained herein and in the Definitive Purchase Agreement, the Purchasers will purchase from the Seller, and the Seller will sell to the Purchasers, free and clear of any liens, charges, restrictions or encumbrances thereon (except as expressly otherwise provided herein), the entire membership interest owned by Seller in the NC limited liability company known as, Pneu-Mech Systems, LLC (the "membership interest"). The Seller warrants and represents that at the time of the Closing, the membership interest will be free from any encumbrances whatsoever, including any taxes or assessments from any governmental authority, Any liens or encumbrances currently existing against the membership interest will be paid from the proceeds of the sale at the Closing, Seller will furnish to the Purchasers such documentations as Purchasers or its attorneys deem necessary to satisfy the condition of the provision.

2. **Purchase Price.** The aggregate purchase price of the membership interest will be Eight Million Five Hundred Thousand Dollars ($8,500,000.00). .



1

3. **Manner of Payment.** The Purchase Price shall be paid by the delivery by the Purchasers to the Buyer of a Purchase Money Promissory Note in the amount of $8,500,000.00 payable with interest at 4.5% in one hundred eighty (180) equal monthly payments of $ $65,024.43 (the "Note"). The first payment on the Note shall be due on the first (1st) day of the first month following closing and a like payment shall be due on the first (1st) day of each month thereafter until paid in full.

4. **Security.** The Purchase Money Note will be secured by a pledge of the membership interest as well as by the limited personal guarantees of James R. Andrews and Jerry W. Trostle. Prepayment of the Purchase Money Note shall not be permitted until after January 1, 2021. Said personal guarantees shall be evidenced by a separate agreement.

5. **Effective Date.** The Effective Date and term of the transaction shall be 12:01 a.m., January 1, 2018.

6. **Pre-Closing Distribution.**

    a. Estimated Distribution. .Prior to the Effective Date, Seller will cause Pneu-Mech to distribute to the Seller all its cash except five hundred thousand dollars ($500,000.00) and the cash which represents unearned money deposited by customers as security for purchase orders. Unearned cash shall be estimated by Coffey Lovins and Co. using currently accepted accounting standards and practices.

    b.. True Up. No later than March 15, 2018, Coffey Lovins and Co. will definitively calculate the cash to be distributed. In the event the estimated distribution was less than the correct amount, the Company will distribute additional cash to Sellers. In the event cash distributed was in excess of the correct amount, the excess will be applied to reduce the Note.

7. **Seller Delivery.** At the closing, the Seller will deliver such instruments and documents as reasonably required by legal counsel including an executed original of a Definitive Purchase Agreement, an assignment of the membership interest, and a covenant from David Brady and Jeff Tucker that they will not compete with the purchasers anywhere in the continental U.S. for three (3) years. For tax purposes, three hundred thousand dollars ($300,000.00) of the purchase price shall be allocated to the covenant from David Brady and three hundred thousand dollars ($300,000.00) shall be allocated to the covenant of Jeff Tucker.

8. **Lease.** Purchasers shall lease from the owners the currently used manufacturing and office buildings. The lease will be for the term of five (5) years with rent in the initial amount of $13,500 per month. Rent will be adjusted annually based on changes in the Consumer Pricing Index. Purchasers shall have the option to renew for up to 2 additional terms of five years each. The lease will be evidenced by a separate agreement executed by Purchasers as Lessee and the owner, Brawtus Management, LLC as Lessor.

9. **Miscellaneous additional terms.**

   a. Following the closing, the Purchasers shall cause Pneu-Mech to be governed by a Board of Managers of at least 5 people. David Brady and Jeff Tucker will serve on the Board of Managers until the Purchase Money Note is satisfied.

   b. Purchasers shall each be entitled to increase their base salaries for 2018 by $25,000 over 2017 salaries. Thereafter, salary adjustments for Purchasers in excess of 5% per annum shall require approval of the full Board of Managers.

   c. No merger, consolidation, sale, or disposition of any assets other than in the normal course of business will occur prior to payment of the Promissory Note

   d. Until the Promissory Note is paid, Pneu-Mech will provide David Brady and Jeff Tucker copies of weekly bank and monthly financial reports.

   e. Until full payment of the Promissory Note no change will be made in the CPA firm without the approval of the full Board of Managers except for cause.

   f. Pneu-Mech will apply for life insurance in the amount of $4,000,000.00 on each James R. Andrews and Jerry W. Trostle and, if issued, will assign same as security for the payment of the Promissory Note.

   g. Each party will be responsible for its own expenses and professional fees incurred in connection with consummation of the transaction contemplated by this Letter of Intent.

   h. This Letter of Intent is the product of mutual negotiations and is not to be construed against or in favor of either party. The parties will jointly engage Bill Coffey and Bill Pope to prepare closing documents and each party will seek independent accounting, legal and professional advice.

10. **Definitive Agreement.** The Purchasers and the Seller hereby agree to use reasonable diligence to commence good faith negotiations in order to execute and deliver a definitive asset purchase relating to the Acquisition (the" Definitive Purchase Agreement") acceptable to parties hereto on or prior to November 30, 2017. All terms and conditions concerning the Acquisition shall be stated in the Purchase Agreement, including without limitation, representation, warranties, covenants, and indemnities that are usual and customary in a transaction of this nature as such may be mutually agreed upon between the parties. Subject to the satisfaction of all conditions precedent contained herein or in the Definitive Purchase Agreement, the Closing will take place at a mutually agreed time and place but no later than March 15, 2018.



3

11. **Representations and Warranties**. The Definitive Purchase Agreement will contain representations and warranties customary to transactions of this type including without limitation, representations and warranties by the Seller as to (a) the physical condition, suitability, ownership, and absence of liens , claims, and other adverse interest with respect to the Assets; (b) the absence of material adverse change in the condition ( financial or otherwise), business, properties, assets; (c) absence of pending material    litigation, investigations or other matters affecting the Acquisition: (d) the Seller's compliance with laws and regulations applicable to its business and obtaining all licenses and  permits required for its business

12. **Conditions to Consummation of the Acquisition**. The respective obligations of the parties with respect to the Acquisition shall be subject to satisfaction of conditions customary to transactions of this type, including without limitation, ( a) execution of the Definitive Purchase Agreement by all parties; (b) the obtaining of all requisite regulator, administrative, or governmental authorization and consents; (c) absence of a material adverse change in the condition (financial or otherwise), business, properties, assets; ( d) absence of pending litigation, investigations or other matters affecting the Seller   or   its Assets or the Acquisition; (e) satisfactory completion by the Purchasers of a due diligence investigation of the Company;(f) confirmation that the representations and warranties of the Seller and the Company are true and accurate in all respects; (g) Purchasers shall have been able to lease the manufacturing and office facilities.

13. **Purchasers' Due Diligence**. The Purchasers' obligation to enter into and perform under the Definitive Purchase Agreement is subject to Purchasers' completion to Purchasers' satisfaction of a business and legal due diligence investigation with respect to the Assets.

14. **Good Faith: Discussion with Others**. So long as this Letter of Intent remains in effect, the Seller and Purchasers shall negotiate in good faith to reach agreement as to the terms of   the Agreement, and neither will (a) negotiate or enter into discussion with, or solicit offers from other parties as to the sale of the Assets, (b) provide information to persons other than Purchasers relating to the purchase of the Assets, or enter into any agreement with any persons other than the Purchasers relating to the sale of the Assets. In the case of any inquiry from a party or parties as to the possible acquisition of the Assets, the Seller will promptly advise such party of the existence of the Letter of Intent.

15 **Announcement.**  Either party shall be free to disclose to vendors, customers and employees the existence of an executed Letter of Intent regarding the purchase by Purchasers of Pneu-Mech, but not any of the details which shall remain confidential.

16. **Miscellaneous**.  This letter shall be governed by the substantive laws of the State of North Carolina without regard to conflict of law principles. This letter constitutes the entire understanding and agreement between the parties hereto and their affiliates with respect to its subject matter and supersedes all prior or contemporaneous agreements, representations, warranties, and understandings of such parties (whether oral or written). No promise, inducement, representation, or agreement, other than as expressly set forth herein, has been made to or by the parties hereto. This letter may be amended only by written agreement,



4

signed by the parties to be bound by the amendment. Evidence shall be inadmissible to show agreement by and between such parties to any term or condition contrary to in addition to the terms and conditions contained in this letter. This letter shall be construed according to its fair meaning and not strictly for or against either party.

17. **Assignability.** This contract is not assignable in whole or in part.

18. **Counter parts and Facsimile Signature.** This Letter of Intent may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signature of a party transmitted by facsimile shall constitute an original for all purposes.

19. **Termination.** This Letter of Intent shall terminate without liability to either party hereto upon the occurrence of any one of the following, irrespective of the reason therefor: (i) agreement of each of the parties hereto; or (ii) the parties hereto fail to enter into the Definitive Agreement by December 31, 2017. This Letter of Intent shall terminate upon execution of, and be superseded by, the Definitive Purchase Agreement by the Parties.

It is understood that this Letter of Intent constitutes a statement of the parties' current mutual intentions with respect to the proposed transactions and does not contain all matters upon which agreement must be reached in order for the transactions to be completed. This Letter of Intent does not constitute the binding commitment of the parties with respect to the transactions contemplated hereby, and no legally binding agreements or obligations of any party are created by this letter of intent. A binding commitment with respect to the transactions will result only from the execution and delivery of the Definitive Purchase Agreement, and the agreements contemplated therein. Without Limiting the generality of the foregoing, each of the parties hereto agrees on behalf of itself and its affiliates not to institute or maintain any claims of proceedings which seek to establish, or which are otherwise based upon an assertion, that any such contractual relationship exists, except pursuant to the Definitive Agreement if negotiated, executed, and delivered by the parties.

If this letter and there terms set forth herein are acceptable to you and accurately set forth your understanding as to the matters addressed herein, please so indicate on the copies of this letter enclosed herewith, in the space provided below.

Very Truly Yours,

By: _____
James R. Andrews

_____
Jerry W. Trostle

5

ACCEPTED AND AGREED

This __2__ day of __November__, 2017.

_____
David Brady

_____
Jeff Tucker

# RESOLUTION OF THE SOLE MEMBER

The undersigned, being the sole member of Pneu-Mech Systems Manufacturing, LLC, adopts the following resolution:

## RESOLUTION

WHEREAS, Pneu-Mech Systems Manufacturing, LLC is a North Carolina limited liability company with its principal place of business in Iredell County, North Carolina; and

WHEREAS, Brawtus Holding Company, Inc. is a North Carolina corporation with its principal place of business in Iredell County, North Carolina, and is the sole member of Pneu-Mech Systems Manufacturing, LLC; and

WHEREAS, the Operating Agreement of Pneu-Mech Systems Manufacturing, LLC prohibits the transfer or assignment of any membership interest except with the written consent of all the members of the company and after receipt of an opinion of counsel; and

WHEREAS, Brawtus Holding Company, Inc. has agreed to sell, transfer and assign all of its membership interest (being 100% of the membership of Pneu-Mech Systems Manufacturing, LLC) to Pneu-Mech Holdings, Inc.; and

WHEREAS, Brawtus Holding Company, Inc. for itself and as the sole member of Pneu-Mech Systems Manufacturing, LLC desires to evidence its consent to the proposed transfer to Andrews and Trostle.

NOW THEREFORE, it is RESOLVED:

1. Pneu-Mech Systems Manufacturing, LLC and Brawtus Holding Company, Inc. each consents to the transfer to Pneu-Mech Holdings, Inc., 1,000 membership interest units.

2. Pneu-Mech Systems Manufacturing, LLC shall issue a certificate Pneu-Mech Holdings, Inc. representing 1,000 membership interest units.

3. The Operating Agreement of Pneu-Mech Systems Manufacturing, LLC shall be amended to reflect, effective at midnight on December 31, 2017, Pneu-Mech Holdings, Inc. became the sole members of the company.

4. The Operating Agreement of Pneu-Mech Systems Manufacturing LLC be amended to reflect that the company shall henceforth be managed by a Board of Managers composed of five persons. The initial Board of Managers shall be James R. Andrews, Jerry W. Trostle, David F. Brady, William J. Tucker and Joe Boggs. Each member of the Board will hold office until the Promissory Note from Pneu-Mech Holdings, Inc. to Brawtus Holding Company, Inc. evidencing the purchase price shall have been paid in full. The powers of the Board of Managers shall be subject in all regards to the terms and conditions of the Membership Purchase Agreement by and between Pneu-Mech Holdings, Inc. as the Purchaser and Brawtus Holding Company, Inc. as Seller.

5. The day to day affairs of Pneu-Mech Systems Manufacturing, LLC shall be managed by and vested in the officers. James R. Andrews is elected as President and Jerry W. Trostle is elected as Secretary. Each officer will hold office until a replacement has been elected and has qualified and each of said officers shall be vested with the power and authority of generally conferred upon persons with similar titles and in business community in North Carolina.

This 19th day of December, 2017.

PNEU-MECH SYSTEMS MANUFACTURING, LLC

BY: _____
David F. Brady, Manager

BRAWTUS HOLDING COMPANY, INC.
Member

BY: _____
David F. Brady, President

BY: _____
William J. Tucker, Secretary

CONSENTED TO:

PNEU-MECH HOLDINGS, INC.

BY: _____
James R. Andrews

BY: _____
Jerry W. Trostle