# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| CROWN EQUIPMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 5:23-cv-00059** |
| vs. | ) | |
| | ) | |
| DAVID BRADY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFF CROWN EQUIPMENT CORPORATION'S MOTION TO COMPEL DISCOVERY, VACATE TRIAL AND PRETRIAL DEADLINES, AND AMEND PRETRIAL ORDER AND CASE MANAGEMENT PLAN

Defendants have engaged in a collective pattern of blatantly disregarding their respective obligations to produce documents and other information in their possession, custody, or control, to the detriment and prejudice of Plaintiff Crown Equipment Corporation ("Crown" or "Plaintiff"). Crown did not uncover these discovery violations until the eve of depositions, mere weeks before the close of discovery and, in some cases, the last business day before discovery closed.

Defendants refuse to rectify and atone for their egregious discovery violations. Thus, under Fed.R.Civ.P. 37, 16(b)(4), and Section III(H) of the Pretrial Order and Case Management Plan (Doc. No. 61), Crown moves this Court for an order compelling Defendants David Brady ("Brady"), William Tucker ("Tucker"), Joseph Boggs ("Boggs"), Brawtus Holding Company, Inc. ("Brawtus"), and United Finishing Systems LLC ("UFS") (collectively, "Defendants") to, among other things, produce information responsive to Crown's discovery requests and permit the depositions of certain new and prior deposed witnesses. Specifically, Crown requests the Court:

4758695.1

1. Order Defendant Brady to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

2. Order Defendant Brady to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

3. Order Defendant Tucker to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

4. Order Defendant Tucker to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

5. Order Defendant Boggs to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

6. Order Defendant Boggs to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

7. Order Defendant Brawtus to produce all .pst files, in their entirety for any defendant, on any electronic device in its possession, custody, or control;

8. Order Defendant Brawtus to make any electronic device in its possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

9. Order Defendant UFS to produce all .pst files, in their entirety for any defendant, on any electronic device in its possession, custody, or control;

10. Order Defendant UFS to make any electronic device in its possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

11. Order Defendants Brady, Tucker, Boggs, Brawtus, and UFS to each provide verifications that they have complied with the Court's forthcoming Order;

12. Permit Crown to reconvene the depositions of Defendants Brady, Tucker and Boggs and order Defendants Brady, Tucker and Boggs to pay Crown's expenses, including its attorney fees, related to the second depositions;

13. Permit Crown to reconvene the deposition of UFS employee, Al Moody, and order Defendant UFS to pay Crown's expenses, including its attorney fees, related to the second depositions;

4758695.1

14. Permit Crown to depose UFS employee, David Turnball;

15. Vacate the current trial and pretrial dates;

16. Enter a new or amended Pretrial Order and Case Management Plan extending all pretrial deadlines beginning with the deadline for disclosures by no less than six months; and

17. Order Defendants to pay Crown's reasonable expenses incurred in making this motion, including attorney fees.

As explained in the attached memorandum in support, Defendants did not search for or produce responsive information stored on at least one server, a USB drive, a computer, and a "device" to which they each had access. Although Crown served each Defendant with Requests for Production on August 1, 2024, and having individually made various productions of documents, Defendants did not begin to disclose or admit their discovery violations until March 25, 2025, the day before Crown took the first deposition in the case. Thereafter, Defendants slowly revealed the extent of their discovery failures during the depositions, finally culminating in even more confessed discovery violations after the April 25, 2025 mediation conference.

On April 11, 2025, UFS made one woefully incomplete production of responsive ESI from a server at issue. No other information was produced, and Defendants have refused to take any additional steps to correct their discovery violations.[1] Even more egregious is the fact that UFS counsel confirmed in an email with the Court on April 28, 2025, that Defendants knew the server existed all along and nevertheless did not search it.

As a result of their brazen and willful discovery violations, Defendants have deprived Crown of its right to conduct fulsome discovery and forced Crown to seek Court intervention.

---

[1] Third-party defendants Trostle and Andrews made a recent small production of documents provided by Defendant Brady for review by Trostle and Andrews' counsel before production. Crown is unclear about the origin of these emails and does not know how these emails relate, if at all, to any of the devices at issue in this Motion.

4758695.1

Given that Crown will need additional time to analyze the withheld information after Defendants are ordered to produce the same, Crown further requests that the Court amend the Pretrial Order and Case Management Plan to extend pretrial deadlines, including the discovery completion deadline and associated dates, by no less than six (6) months.  Finally, Crown requests the Court order Defendants and their counsel to pay Crown's reasonable expenses incurred in making this motion, including attorney fees.

Respectfully submitted,

*/s/ Toby K. Henderson*
Toby K. Henderson (Ohio Bar No. 0071378)
(*pro hac vice*)
Kaitlyn C. Meeks (Ohio Bar No. 0098949)
(*pro hac vice*)
SEBALY SHILLITO + DYER
A Legal Professional Association
220 East Monument Avenue, Suite 500
Dayton, Ohio  45402
937-222-2500 Telephone
937-222-6554 Facsimile
thenderson@ssdlaw.com
kmeeks@ssdlaw.com

and

Robert L. Lindholm (N.C. Bar No. 52800)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 South College St., 23rd Floor
Charlotte, North Carolina 28202
(704) 417-3000 Telephone
(704) 377-4814 Facsimile
Email: robert.lindholm@nelsonmullins.com

*Attorneys for Plaintiff*
*Crown Equipment Corporation*

4

4758695.1

## MEMORANDUM IN SUPPORT

I.  **RELEVANT BACKGROUND**

   **A.  Brief Summary of Crown's Claims**

This case arises because of a finishing systems contractor abandoning a multi-million-dollar project and seemingly shutting down operations thereafter to avoid its obligations. Crown entered into a contract with a Pneu-Mech branded entity for the engineering and construction of a $15,000,000 powder coating system. Unfortunately, the Pneu-Mech branded entity failed to properly complete the project or fix its errors with the system. As constructed, the system also damaged the Crown facility in which it was situated and certain system components damaged other system components. To put it simply, the project was a failure.

Thereafter, Crown suffered significant damage in repairing the system and the surrounding structure. Crown also faced demands for payment from subcontractors the Pneu-Mech branded entity used, but did not pay for the work on the project.

After the Pneu-Mech branded entity botched and abandoned the project, Crown discovered that there were actually several iterations of the "Pneu-Mech" company, all either owned or controlled by Defendants Brady and Tucker. Thus, at different times during the relationship, Crown unknowingly dealt with different iterations of "Pneu-Mech."

Due to the convoluted nature of the Defendants' corporate entity shell game, Crown filed this lawsuit against several defendants, including the Defendants at issue in this motion, asserting claims of negligence, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, successor liability, fraudulent transfer, common law piercing the corporate veil / alter ego, and alter ego doctrine / single business enterprise / instrumentality rule.

4758695.1

### B. Crown's Requests for Production

On August 1, 2024, Crown served Defendants with requests for production of documents and other information under Fed.R.Civ.P.34. Rule 34 obligated Defendants to produce "documents or electronically stored information…stored in any medium…" "in the responding party's possession, custody, or control." Fed.R.Civ.P.34(a)(1) Copies of Plaintiff Crown Equipment Corporation's First Set of Interrogatories and Requests for Production of Documents to Defendant David Brady, Defendant William Tucker, Defendant Joseph Boggs, Defendant Brawtus Holding Company, Inc. f/k/a Pneu-Mech Systems Manufacturing, Inc. and Pneu-Mech Systems, Inc., and Defendant United Finishing LLC are **Exhibits A, B, C, D, and E**, respectively.[2] These requests called for production of information relating to various topics relevant to Crown's claims and the Defendants' defenses. Several of the requests called for communications involving the Defendants and relating to either Crown, the Projects at issue in this dispute, the Crown facility, the transfer of assets from or between Pneu-Mech related companies, the financial status of the Pneu-Mech related companies, or third-party defendants Jerry Trostle and Jim Andrews. The following are examples of such highly relevant document requests:

#### i. Requests for Production Directed to Brady

5. Produce Any Document, Communication, ESI, or tangible thing reflecting the financial status at Any time of [Brawtus]. This request includes, but is not limited to, all daily, weekly, monthly, quarterly, yearly or other periodic financial statements, income statements, cash flow statements, balance sheets, tax returns or other similar documents reflecting the financial status of [Brawtus].
**RESPONSE:**

* * *

11. Produce Any Document, Communication, ESI, or tangible thing identifying the transfer or sale of any assets, including but not limited to any real estate, from [Brawtus] to Brawtus Management Company, LLC.
**RESPONSE:**

---

[2] Crown's requests for production initially exceeded the quantity permitted under the April 22, 2024 Discovery Order. As a result, Crown worked with the Defendants to limit its requests.

4758695.1

12.     Produce Any Document, Communication, ESI, or tangible thing identifying any assets held by Brawtus Management from 2021 to today.
**RESPONSE:**
* * *
17.     Produce Any Document, Communication, ESI, or tangible thing identifying the transfer or sale of any assets, including but not limited to any business operations, business goodwill and equipment, from Brawtus Holding Company, Inc. to Pneu-Mech Systems Manufacturing, LLC.
**RESPONSE:**
18.     Produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the transfer, sale, or distribution of Any Pneu-Mech 2.0 asset to Andrews or Trostle.
**RESPONSE:**
* * *
22.     Produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the transfer, sale, or distribution of Any Pneu-Mech 2.0 asset to Andrews or Trostle
**RESPONSE:**
* * *
29.     Produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the APA.
**RESPONSE:**
30.     All Communications with Trostle and Andrews after the execution of the APA.
**RESPONSE:**

Plaintiff Crown Equipment Corporation's First Set of Interrogatories and Requests for Production

of Documents to Defendant David Brady, pgs. 24-29, **Exhibit A**.

### ii.     Requests for Production Directed to Tucker

5.      Produce Any Document, Communication, ESI, or tangible thing reflecting the financial status at Any time of [Brawtus]. This request includes, but is not limited to, all daily, weekly, monthly, quarterly, yearly or other periodic financial statements, income statements, cash flow statements, balance sheets, tax returns or other similar documents reflecting the financial status of [Brawtus].
**RESPONSE:**
* * *
11.     Produce Any Document, Communication, ESI, or tangible thing identifying the transfer or sale of any assets, including but not limited to any real estate, from [Brawtus] to Brawtus Management Company, LLC.
**RESPONSE:**
12.     Produce Any Document, Communication, ESI, or tangible thing identifying any assets held by Brawtus Management from 2021 to today.
**RESPONSE:**

* * *

17.    Produce Any Document, Communication, ESI, or tangible thing identifying the transfer or sale of any assets, including but not limited to any business operations, business goodwill and equipment, from Brawtus Holding Company, Inc. to Pneu-Mech Systems Manufacturing, LLC.

**RESPONSE:**

18.    Produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the transfer, sale, or distribution of Any Pneu-Mech 2.0 asset to Andrews or Trostle.

**RESPONSE:**

* * *

22.    Produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the transfer, sale, or distribution of Any Pneu-Mech 2.0 asset to Andrews or Trostle

**RESPONSE:**

* * *

29.    Produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the APA, including a final executed copy of the APA.

**RESPONSE:**

30.    All Communications with Trostle and Andrews after the execution of the APA.

**RESPONSE:**

Plaintiff Crown Equipment Corporation's First Set of Interrogatories and Requests for Production

of Documents to Defendant William Tucker, pgs. 23-28, **Exhibit B**.

### iii.    Requests for Production Directed to Boggs

30.    Produce All Communications with Trostle and Andrews after the execution of the APA.

**RESPONSE:**

31.    Produce Any Communications after the execution of the APA which Refer to or Relate to: (1) Andrews, (2) Trostle, (3) Crown, (4) Any Pneu-Mech Branded Entity, or (5) this Litigation. For purposes of clarity, this request does not call for attorney-client privileged communications relating to this Litigation.

**RESPONSE:**

* * *

35.    Produce All Communications with Trostle or Andrews related to the financial status of Pneu-Mech 3.0.

**RESPONSE:**

36.    Produce All Communications with Brady or Tucker related to the financial status of Pneu-Mech 3.0.

**RESPONSE:**

* * *

8

41.     Produce Any Document, Communication, ESI, or tangible thing related to United Finishing Systems, LLC (Defined above and in the Complaint as "Pneu-Mech 4.0.")
**<u>RESPONSE:</u>**
* * *
49.     Produce All Documents, including All asset purchase or sale agreements, or similar documents between Brady, Tucker, Pneu-Mech 3.0, or Brawtus Management on one hand and Pneu-Mech 4.0 on the other relating to the sale or transfer of any Pneu-Mech 3.0 assets to Pneu-Mech 4.0.
**<u>RESPONSE:</u>**
* * *
56.     Produce Any Documents or Communications with Brady which Refer to or Relate to (1) the Projects, (2) Crown, or (3) the Litigation.
**<u>RESPONSE:</u>**
* * *
62.     To the extent not already produced in response to another Document Request, produce Any Documents or Communications which Refer to or Relate to the Projects.
**<u>RESPONSE:</u>**
* * *
67.     To the extent not already produced in response to another Document Request, produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the transfer, sale, or distribution of Any assets between Any Pneu-Mech Branded Entities.
**<u>RESPONSE:</u>**
* * *
71.     If not already produced in response to another Document Request, produce Any Document, Communication, ESI, or tangible thing which Refers to or Relates to the facts Asserted in the Complaint.
**<u>RESPONSE:</u>**

Plaintiff Crown Equipment Corporation's First Set of Interrogatories and Requests for Production

of Documents to Defendant Joseph Boggs, pgs. 28-36, **Exhibit C**.

### iv.     Requests for Production Directed to Brawtus

8.     Produce Documents, Communications, ESI, or tangible things demonstrating any transfer of an Asset to or from You from: 1) Brady; 2) Tucker; 3) Brawtus Management; 4) [Brawtus]; 5) Pneu-Mech 3.0; or 6) Pne-Mech 4.0.
**<u>RESPONSE:</u>**
* * *
10.     Produce Documents, Communications, ESI, or tangible things Related to the transfer, sale, Purchase, or distribution of Any of Your assets to Pneu-Mech 2.0.
**<u>RESPONSE:</u>**

9

11.    Produce Documents, Communications, ESI, or tangible things Related to the transfer, sale, Purchase, or distribution of Any of Your assets to Pneu-Mech 3.0.
**RESPONSE:**
12.    Produce Documents, Communications, ESI, or tangible things Related to the transfer, sale, Purchase, or distribution of Any of Your assets to Pneu-Mech 4.0.
**RESPONSE:**
13.    Produce Documents, Communications, ESI, or tangible things Related to the transfer, sale, Purchase, or distribution of Any of Your assets to Brawtus Management.
**RESPONSE:**
* * *
21.    Produce Any Documents or Communications which Refer to or Relate to the transfer, sale, or Purchase of Any assets to Pneu-Mech 2.0.
**RESPONSE:**
22.    Produce Any Documents or Communications which Refer to or Relate to the transfer, sale, or Purchase of Any assets to Brawtus Management.
**RESPONSE:**
23.    Produce Any Documents or Communications which Refer to or Relate to the transfer, sale, or distribution of Any Assets to Pneu-Mech 3.0.
**RESPONSE:**
24.    Produce Any Documents or Communications which Refer to or Relate to the transfer, sale, or distribution of Any Assets to Pneu-Mech 4.0.
**RESPONSE:**
* * *
29.    To the extent not already produced in response to another Document Request, produce All communications with Crown.
**RESPONSE:**

Plaintiff Crown Equipment Corporation's First Set of Interrogatories and Requests for Production of Documents to Defendant Brawtus Holding Company, Inc. f/k/a Pneu-Mech Systems Manufacturing, Inc. and Pneu-Mech Systems, Inc., pgs. 24-28, **Exhibit D**.

### v.    Requests for Production Directed to UFS

7.    Produce Documents, Communications, ESI, or tangible things demonstrating any transfer of an Asset to you from: 1) Brady; 2) Tucker; 3) Brawtus Management; 4) [Brawtus]; 5) Pneu-Mech 2.0; or 6) Pneu-Mech 3.0.
**RESPONSE:**
* * *
10.    Produce Documents, Communications, ESI, or tangible things Related to the transfer, sale, Purchase, or distribution of Pneu-Mech 3.0, including Any assets of Pneu-Mech 3.0.
**RESPONSE:**
* * *

10

14.    Produce Any Documents or Communications with Brady which Refer to or Relate to (1) the Projects, (2) Crown, or (3) the Litigation.
**RESPONSE:**
* * *
20.    To the extent not already produced in response to another Document Request, produce Any Documents or Communications which Refer to or Relate to the Projects.
**RESPONSE:**
* * *
26.    To the extent not already produced in response to another Document Request, produce Any Documents, Communications, ESI, or tangible things which Refer to or Relate to the facts Asserted in the Complaint.
**RESPONSE:**
27.    To the extent not already produced in response to another Document Request, produce Any Documents, Communications, ESI, or tangible things, including emails, texts, and voice messages, which Refer to, Relate to, or concern Crown.
**RESPONSE:**
28.    To the extent not already produced in response to another Document Request, produce Any Documents, Communications, ESI, or tangible things provided to or received from Any Third-Party concerning the allegations in this Litigation.
**RESPONSE:**
* * *
30.    To the extent not already produced in response to another Document Request, produce Any Document, Communication, ESI, or tangible thing which Refers to, Relates to, and/or concerns Any allegation made in this Litigation.

Plaintiff Crown Equipment Corporation's First Set of Interrogatories and Requests for Production of Documents to Defendant United Finishing LLC, pgs. 24-28, **Exhibit E**.

Each Defendant served respective responses to the requests for production. Copies of Defendant David Brady's First Amended Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Defendant William Tucker's Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Defendant Joseph Boggs' Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, and Defendant Brawtus Holding Company, Inc.'s Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents are **Exhibits F, G, H, and I**,

11

respectively.[3]  Defendants also each made various productions before the depositions, with the last of these productions being on January 29, 2025.

### C.  Crown Uncovers Multiple Egregious Discovery Violations

The parties scheduled various depositions in succession, with the first being the deposition of Defendant Boggs on March 26 and 27, 2025.  The parties scheduled the depositions in a manner to permit them to prepare for an April 25, 2025, mediation, and to complete discovery before the April 28, 2025, discovery cutoff deadline.  Despite this, Defendants waited until the eve of the first deposition to first admit their egregious discovery violations.

#### i.  Discovery Violation No. 1 by all Defendants (the Server)

On March 25, 2025, the day before the deposition of Defendant Boggs, counsel for Crown received a phone call from Boggs' counsel advising that he had just learned there was a "server" likely containing responsive information, the server had not been searched, and no information from the server had been produced.  The "server" is owned by Defendant Brawtus, which in turn is owned by Defendants Brady and Tucker.  Brawtus claims it "leases" the server to Defendant UFS.  Defendant Boggs is the bookkeeper for Defendant Brawtus and is also the Controller for Defendant UFS.  Put in context, on the eve of the first deposition, Crown learned for the first time that although the server was in the possession, custody or control of every Defendant since the inception of this case in 2023, none of them took any step to identify responsive and relevant information on the server or to produce that information to Crown.

---

[3] UFS designated its Response to Crown Equipment Corporation's First Set of Interrogatories and Requests for Production as "Confidential - Produced Pursuant to Stipulated Protective Order" even though it is clearly not.  Because of this designation, Crown has refrained from attaching the same as an Exhibit to this motion.  However, Crown will submit UFS's Response to Crown's First Set of Interrogatories and Requests for Production under seal, if necessary.

4758695.1

Because of the pressing case deadlines and the fact Crown's Ohio-based counsel had already traveled to North Carolina for the series of depositions, the depositions went forward with Crown's counsel expressly reserving on the record the right to reopen the depositions once the discovery violations were resolved. During the first few days of depositions, Crown's counsel worked with counsel for Defendant UFS to arrange for an initial, limited search to be done of the server. Defendant UFS eventually produced documents identified from the initial search on April 11, 2025, well after the depositions of the all of the Defendants, except one, had been completed. Although the documents Defendant UFS produced from this initial search are highly relevant and, in many respects, directly contradict the deposition testimony of Brady, Tucker, and Boggs, the production was woefully incomplete. As an example, Defendant UFS's counsel claimed there were no Outlook .pst files on the server for Defendants Brady or Tucker or third-party Defendants Trostle or Andrews, despite each previously having Outlook accounts on the server for years. UFS's counsel also claimed the only .pst file on the server was for Defendant Boggs and that file only included information up through January 18, 2021, even though the events subject to this litigation, including the operation of defendant Pneu-Mech Systems Manufacturing, Inc., continued past July 2022. *See* copy of April 10-17, 2025 email chain attached hereto as **Exhibit J**. Crown sought to better understand the information produced and proposed a potential path to resolving the discovery dispute:

> Can you share from your vendor a list of the pst files on the "c" and "data" drive. At this point I am just looking for [what] would just be the pst file names. Similarly, to the extent they are different than the pst file names, please have your vendor provide a list of email users. We can treat the pst file list and email user list as AEO. My concern is the vendor has overlooked relevant files perhaps due to naming conventions. I am also concerned the vendor has focused on an area of the server where certain inactive emails are stored and has not keyed in on where active files exists.

13

By way of example, Mr. Boggs had email access to his pneu-mech.com and pneu-mech.net email extensions after July 2022. He surely continued to have access to those emails once the email extension switched to "unitedfinishing.net." So it is likely that Mr. Boggs's unitedfinishing.net pst file contains pneu-mech emails. A simple way to determine this is for the vendor to look at Mr. Boggs' current pst file and identify the date range for its contents. Assuming it includes data older than say August 1, 2022, we will know it contains pneu-mech related emails.

*Id*. Although Crown served UFS with discovery in August 2024 and UFS had taken no steps to identify and produce relevant, responsive documents on the server at any time before the depositions, rather than work to resolve the blatant discovery violation, UFS's counsel took the position Crown's efforts to understand what is on the server was a "new" discovery request:

As for the request for a list of all .pst files on the C and DATA drive, and the list of all email users, that is a much broader request that comes at the close of discovery in a case that was filed in 2023. I am not inclined to embark on new projects at the close of discovery.

*Id*. In response, Crown explained this was of course not a new request and underscored Defendants' flagrant discovery violations:

Bob – this response is disappointing. Your position likely torpedoes the chances the mediation as to Messrs Brady, Tucker, Boggs and UFS can be successful. Crown will have little interest in settling under circumstances where a defense group has blatantly violated discovery obligations thereby depriving Crown of highly relevant information and then refusing to provide assurances their efforts to rectify those violations are sufficient. Indeed, Crown served discovery requests in August 2024. None of the defendants produced a single document from the server, despite each knowing it existed. The first Crown learned the server existed was on March 26, the day before the first deposition. Put differently, each defendant sat on information about the server for more than 6 months. Then, when the existence of the server came to light the day before the defendants had to start answering questions under oath, the defendants pointed fingers at one another claiming it was someone else's responsibility to obtain responsive information from the server. To work through this most blatant discovery violation, we fashioned a plan with your office. Now we have little confidence that a fulsome search has been done. That concern may be alleviated with the production of a file log, which you now refuse to provide under the guise of the request is new.

Crown tried to be accommodating here but now this is prejudicing Crown. We will contact the Court to arrange the required informal discovery conference with the

Magistrate before further escalating, if necessary, with an appropriate motion directed to the discovery violations.

*Id.* Defendant UFS remains steadfast in its refusal to cooperate to address its discovery violations.

What is more, every other Defendant has had the same access to the server as UFS and each has taken absolutely no action to produce information from the server responsive to the Crown discovery requests directed to each Defendant. Put differently, none of the Defendants have offered any explanation for each of their blatant failures and now refusals to satisfy their Rule 34 discovery obligations to documents and electronically stored information, stored in any medium, in their respective possession, custody, or control.

ii. **Discovery Violation No. 2 By Defendants Brady, Tucker, Brawtus and Pneu-Mech 2.0 (the USB)**

Exacerbating matters, during the first day of Defendant Boggs' deposition, Crown discovered that in 2022, Defendant Brady instructed David Turnball, an IT employee of Defendant Pneu-Mech Systems Manufacturing, Inc., to make copies of at least the email files of two witnesses, and now third-party defendants, Jerry Trostle and Jim Andrews. On the same day, Defendant Brady's counsel confirmed the copied files were on a USB drive in his possession. The files had never been searched, and responsive documents had not been produced, despite being in counsel's possession since at least the inception of the litigation in 2023. Defendant Brady's counsel[4] agreed to provide the contents of the USB drive to Crown on March 28, 2025. However, on March 28, after Defendant Brady's deposition concluded, his counsel advised that the USB drive was "empty" and that Defendant Brady claimed he did not have another copy. Brady's

---

[4] The same counsel represents Brady, Tucker, Brawtus Holdings, Brawtus Management, and Pneu-Mech 2.0. Crown's requests for production directed to Pneu-Mech 2.0 are substantially the same as those directed to others in that defense group. Thus, it is not necessary to compel Pneu-Mech 2.0 specifically as the other defendants in that group, and their counsel, have access to the devices at issue.

4758695.1

counsel stated he planned to contact the IT employee to determine if he had a copy of the USB he made originally in September 2022.  On April 7, 2025, however, Defendant Brady's counsel advised that the IT employee did not have a copy of the USB drive.  A copy of the March 28, 2025 – April 7, 2025 email chain, including a text message from Mr. Turnball, is **Exhibit K**.

The fact that Defendant Brady's counsel possessed a USB believed to contain responsive, relevant information since September 2022 and apparently did not review the USB until March 28, 2025, after Defendant Brady's deposition, epitomizes Defendant Brady's intentional disregard for his discovery obligations.  Crown should be given immediate access to the server so its expert can conduct a forensic analysis.

### iii. Discovery Violation No. 3 by Defendants Brady, Tucker, Brawtus and Pneu-Mech 2.0 (Brady's Computer)

The discovery violations do not stop with the server and USB. Indeed, Mr. Turnball confirmed that although he did not have a copy of the USB, he "did load the Outlook .pst files on a computer that was given to Brady, so he should have access to them." *Id*.  None of the Defendants have produced a single document from Brady's computer.  That is, Mr. Turnball confirmed that, in addition to the USB, Defendant Brady has had the Outlook files on a computer Mr. Turnball gave him, but none of the Defendants have ever bothered to search the computer or otherwise account for the information in discovery on the computer.

Again, Defendants' failure to produce responsive information in their individual or collective possession, reeks of their refusal to satisfy even the most basic discovery obligations.  In fact, as of this Motion, Defendants have offered no explanation for their outright refusal to produce the files on the computer.  But Defendants' blatant discovery violations do not end here.  Nevertheless, the computer should be immediately made available to Crown for forensic analysis.

16

4758695.1

### D.  Discovery Violation No. 4 by Defendant Boggs and UFS (Boggs' Computer)

Mr. Turnball also disclosed that "Joe Boggs also has the Outlook.pst files on his desktop computer." *Id.*  That is, despite Defendant Boggs having the .pst files on his computer since 2022 according to IT staff, he and UFS have not searched those files to produce responsive information, in flagrant violation of their discovery obligations. What is more, they have offered no explanation for their conduct.  The .pst file on Boggs' computer should be immediately produced and the computer should be made available to Crown for further forensic analysis.

### E.  Discovery Violation No. 5 by All Defendants (the Server)

Mr. Turnball, who now works for and provides IT services to UFS, also confirmed "the files should also be on the file server at United Finishing." *Id.*  Despite this revelation that relevant and responsive "files" are on the UFS "server",[5] UFS has refused to produce information from the server, save the initial, limited and inadequate production made shortly after the conclusion of most of the depositions.  This again is a blatant violation of discovery obligations.  Crown should also be given immediate access to this server so that Crown's expert can forensically analyze and collect relevant information on the server.

### F.  Discovery Violation No. 6 by Defendants Brady, Tucker, Brawtus and Pneu-Mech 2.0 (Brady's "Device")

Unfortunately, the discovery failures continue.  After the April 25, 2025, mediation, counsel for Defendants Brady, Tucker, Brawtus and Pneu-Mech 2.0 disclosed that Brady also has responsive information (the undersigned's recollection is a .pst file) on a "device" in Defendant Brady's possession and that the information has not been produced.  Defendant Brady's counsel sought to "confer" after the failed mediation concerning this information.  Defendant Brady has

---

[5] Crown is unclear on whether the server Mr. Turnball referenced at UFS is the same server owned by Brawtus or whether there are two servers that have not been searched.

4758695.1

provided no other details about the device or the information stored on the device and has offered no explanation for why he did not provide information from the device long ago. In any event, Crown's position is simple – whatever documents Brady has in his possession should have been produced long ago, his failure to do so is a blatant discovery violation, and the existence of whatever the information is should not have been disclosed for the first time following a mediation and one business day before the scheduled close of discovery. The .pst file must be immediately produced and the device should be made available to Crown for further forensic analysis.

### G. Discovery Violation No. 7 by Defendants (the FedEx Package)

During the same conversation immediately after the mediation, counsel for Defendants Brady, Tucker, Brawtus and Pneu-Mech 2.0 represented that Crown's counsel should have recently received a Federal Express package with other responsive information from one or more of the Defendants. Again, this apparent disclosure of additional discovery came on the evening of Friday, April 25, before a Monday, April 28 discovery cutoff. This is yet another brazen discovery violation. In any event, Crown's counsel has not received any package, and whichever Defendant supposedly mailed the information should be ordered to immediately provide the information.

### H. Crown's Request for Conference with Magistrate Judge Keesler

On April 28, 2025, Crown's counsel sent an email to Magistrate Judge Keesler detailing the discovery disputes and requesting a conference in compliance with the Court's April 4, 2025 Pretrial Order and Case Management Plan. A copy of the April 28, 2025 email chain is **Exhibit L**. That same day, UFS counsel responded on behalf of Defendants, generally stating the existence of the "server" was disclosed in certain initial disclosures and in response to certain of Crown's discovery requests. *See Id*. In other words, Defendants concede they knew of the server's existence all along, failed to search it for responsive information, and offer no explanation for their

4758695.1

discovery failures. Defendants did not explain their other blatant discovery violations. Later that day, Magistrate Judge Keesler declined to schedule a telephone conference dues to the complexity and implications of the disputes and instead directed the parties to file appropriate motions. *Id*.

Defendants have blatantly deprived Crown of its right to conduct fulsome discovery and to identify evidence relevant to its claims and the defenses asserted in this matter. Thus, in accordance with Magistrate Judge Keesler's directive, Crown now seeks Court intervention.

## II.    LAW AND ARGUMENT

### A. This Court should issue an order compelling Defendants to produce information responsive to Crown's discovery requests.

Federal Rule of Civil Procedure 26(b)(1) provides that "the scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). The rules of discovery "are to be given broad and liberal construction [and]…[r]elevance has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Christopher v. Trawler Cameron Scott, LLC*, 4:23-CV-36-D-BM, 2023 U.S. Dist. LEXIS 207013, *4 (E.D.N.C. Nov. 20, 2023) (internal quotations omitted). In discovery, a party has the opportunity to serve requests for production of documents that fall within the scope of Federal Rule of Civil Procedure 26(b) on the other parties. *See* Fed.R.Civ.P. 34. A party that has been served with requests for production must respond thereto within thirty (30) days of service. Fed.R.Civ.P. 34(b)(2)(a). When a party fails to produce documents requested pursuant to Federal Rule of Civil Procedure 34, the "party seeking discovery may move for an order compelling… production[.]" Fed.R.Civ.P. 37(a)(3)(B)(iv).

Here, Defendants discovery failures fundamentally undermine the discovery process and prejudice Crown in the most extreme way. That is, Crown learned that Defendants did not produce information from at least one server; a USB; Defendant Brady's computer; another "device" in the

possession of counsel for Defendants Brady, Tucker, Brawtus and Pneu-Mech 2.0; Defendant Boggs' computer; and the UFS server (if the UFS server is not the same server referenced in Defendant Boggs' disclosures.) And apparently there is still more previously undisclosed information sent to Crown's counsel in a Federal Express package that has never shown up.

An order compelling Defendants to search for and produce responsive information is appropriate. And an Order requiring Defendants to make certain electronic devices available to Crown's forensic expert is likewise necessary. Defendants have intentionally stonewalled Crown by not searching for and producing responsive documents. Information on the various devices in Defendants' possession, custody and control is certainly responsive to Crown's requests calling for, as an example, communications involving the defendants and relating to either Crown, the Projects at issue here, the Crown facility, the transfer of assets between Pneu-Mech companies, the financial status of the Pneu-Mech companies, or third-party defendants Jerry Trostle or Jim Andrews. Indeed, UFS confirmed the relevance of the information through its April 11, 2025, limited production from one of the servers at issue, which production contained responsive, highly relevant information disclosed only after Defendants Brayd, Boggs and Tucker were deposed.

When counsel for Crown raised concern regarding UFS's search methods and asked for additional information as assurance that responsive information had been collected and produced, UFS refused under the guise that Crown's request was a new discovery request. No other information from the server has been produced and Defendants have refused to take any additional steps to correct their discovery violations. More egregious is the fact that Defendants waited to confess their discovery violations until the eve of the first deposition. Then, throughout the course of the depositions and up through the day of the mediation, Defendants slowly revealed additional violations. UFS even confirmed in its counsel's email to Magistrate Judge Keesler that Defendants

have known of the server all along but refused to satisfy their discovery obligations by searching the device as required by Fed.R.Civ.P.37.

As for the other devices (USB , Brady computer, Boggs computer), Defendants have offered no explanation of any kind fort their failure to search these devices. Again demonstrating their disregard for their discovery obligations.

Crown is entitled to conduct complete discovery. Accordingly, this Court should issue an order compelling Defendants to do the following:

1. Order Defendant Brady to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

2. Order Defendant Brady to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

3. Order Defendant Tucker to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

4. Order Defendant Tucker to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

5. Order Defendant Boggs to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

6. Order Defendant Boggs to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

7. Order Defendant Brawtus to produce all .pst files, in their entirety for any defendant, on any electronic device in its possession, custody, or control;

8. Order Defendant Brawtus to make any electronic device in its possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

9. Order Defendant UFS to produce all .pst files, in their entirety for any defendant, on any electronic device in its possession, custody, or control;

10. Order Defendant UFS to make any electronic device in its possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

11. Order Defendants Brady, Tucker, Boggs, Brawtus, and UFS to each provide verifications that they have complied with the Court's forthcoming Order;

12. Permit Crown to reconvene the depositions of Defendants Brady, Tucker and Boggs and order Defendants Brady, Tucker and Boggs to pay Crown's expenses, including its attorney fees, related to the second depositions;

13. Permit Crown to reconvene the deposition of UFS employee, Al Moody, and order Defendant UFS to pay Crown's expenses, including its attorney fees, related to the second depositions; and

14. Permit Crown to depose UFS employee, David Turnball.

**B. This Court should require Defendants and/or their counsel to pay Crown's reasonable expenses incurred in making this motion, including attorney fees.**

Fed.R.Civ.P. 37(a)(5)(A) provides:

[T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

If the motion is only granted in part, Fed.R.Civ.P. 37(a)(5)(A) still gives the Court discretion to apportion reasonable expenses for the motion after providing opportunity to be heard. Fed.R.Civ.P. 37(a)(5)(A).

Defendants waited until the eve of the first deposition to confess the first of their many discovery failures. The violations were in blatant disregard of the Defendants' discovery obligations, if not intentional. Indeed, in the case of at least one server, Counsel for UFS has confirmed Defendants never searched the server to identify and produce responsive information despite knowing the server existed all along. Crown has tried to work with Defendants in good

4758695.1

faith to correct the discovery violations, all to no avail.  There is no justification for Defendants' discovery gamesmanship.  After providing Defendants with an opportunity to be heard, Crown requests this Court order Defendants and/or their counsel to pay Crown's reasonable expenses incurred in making this motion, including attorney fees.

### C. Crown is entitled to have the current case schedule vacated and the entry of an amended Pretrial Order and Case Management Plan.

With regard to case scheduling orders, Fed.R.Civ.P. 16(b)(4) provides "[a] schedule may be modified only for good cause and with the judge's consent."  Here, the circumstances requiring an amendment of the Pretrial Order and Case Management Plan were caused by Defendants' egregious actions.  Defendants did not admit or otherwise disclose the first of their discovery violations until the eve of the first deposition and did not disclose the full extent of their violations until one business day before the discovery was scheduled to close.  As such, there is certainly good cause to amend the Pretrial Order and Case Management Plan.  Indeed, if a new scheduling order is not entered under these circumstances, Defendants will be rewarded for thumbing their nose at their discovery obligations and sandbagging Crown in discovery.

Once Defendants are compelled to produce information in their possession, custody or control and provide access to the electronic devices to Crown's forensic expert, Crown will need time to analyze the previously undisclosed information.  Crown therefore requests that the Court vacate the current trial date and Pretrial Order and Case Management Plan and enter an order extending all pretrial deadlines by no less than six (6) months.

## III.    CONCLUSION

For the forgoing reasons, Crown respectfully requests that this Court grant this Motion and

1.  Order Defendant Brady to produce all .pst files, in their entirety, for any defendant in his possession, custody, or control from any device in his possession or under his control through ownership of any of the defendant entities;

23

4758695.1

2. Order Defendant Brady to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

3. Order Defendant Tucker to produce all .pst files, in their entirety, for any defendant in his possession, custody, or control from any device in his possession or under his control through ownership of any of the defendant entities;

4. Order Defendant Tucker to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

5. Order Defendant Boggs to produce all .pst files, in their entirety for any defendant, on any electronic device in his possession, custody, or control;

6. Order Defendant Boggs to make any electronic device in his possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

7. Order Defendant Brawtus to produce all .pst files, in their entirety for any defendant, on any electronic device in its possession, custody, or control;

8. Order Defendant Brawtus to make any electronic device in its possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

9. Order Defendant UFS to produce all .pst files, in their entirety for any defendant, on any electronic device in its possession, custody, or control;

10. Order Defendant UFS to make any electronic device in its possession, custody or control that may contain relevant information available for inspection and search by Crown's forensic expert;

11. Order Defendants Brady, Tucker, Boggs, Brawtus, and UFS to each provide verifications that they have complied with the Court's forthcoming Order;

12. Permit Crown to reconvene the depositions of Defendants Brady, Tucker and Boggs and order Defendants Brady, Tucker and Boggs to pay Crown's expenses, including its attorney fees, related to the second depositions;

13. Permit Crown to reconvene the deposition of UFS employee, Al Moody, and order Defendant UFS to pay Crown's expenses, including its attorney fees, related to the second depositions;

14. Permit Crown to depose UFS employee, David Turnball;

15. Vacate the current trial and pretrial dates;

16. Enter a new or amended Pretrial Order and Case Management Plan extending all pretrial deadlines beginning with the deadline for disclosures by no less than six months; and

17. Order Defendants to pay Crown's reasonable expenses incurred in making this motion, including attorney fees.


Dated: May 5, 2025                                  Respectfully submitted,

                                  */s/ Toby K. Henderson*
                                  Toby K. Henderson (Ohio Bar No. 0071378)
                                  (*pro hac vice*)
                                  Kaitlyn C. Meeks (Ohio Bar No. 0098949)
                                  (*pro hac vice*)
                                  SEBALY SHILLITO + DYER
                                  A Legal Professional Association
                                  220 East Monument Avenue, Suite 500
                                  Dayton, Ohio 45402
                                  937-222-2500 Telephone
                                  937-222-6554 Facsimile
                                  thenderson@ssdlaw.com
                                  kmeeks@ssdlaw.com

                                  and

                                  Robert L. Lindholm (N.C. Bar No. 52800)
                                  NELSON MULLINS RILEY & SCARBOROUGH, LLP
                                  301 South College St., 23rd Floor
                                  Charlotte, North Carolina 28202
                                  (704) 417-3000 Telephone
                                  (704) 377-4814 Facsimile
                                  Email: robert.lindholm@nelsonmullins.com

                                  *Attorneys for Plaintiff*
                                  *Crown Equipment Corporation*

4758695.1

## CERTIFICATE OF GOOD FAITH FFORTS TO RESOLVE DISCOVERY DISPUTE WITHOUT COURT INTERVENTION

In accordance with Fed.R.Civ.P. 37(a)(1), the undersigned hereby certifies that he has, in good faith, conferred with or sought to confer with counsel for Defendants in an effort to obtain the requested discovery and other relief sought without Court action. Despite such good faith efforts, the parties cannot resolve the disputes at issue and require Court intervention to reach resolution.

*/s/ Toby K. Henderson*
Toby K. Henderson (Ohio Bar No. 0071378)
(*pro hac vice*)


## CERTIFICATE OF SERVICE

I hereby certify that my office electronically filed the foregoing on May 5, 2025, using the Court's Electronic Filing System, which will serve a copy to the parties and counsel of record who are listed on the Court's Electronic Mail Notice, and I hereby certify that I have mailed by U.S. Postal Service the document to non-Electronic Filing participants.

*/s/ Toby K. Henderson*
Toby K. Henderson (Ohio Bar No. 0071378)
(*pro hac vice*)

4758695.1