IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

**CROWN EQUIPMENT CORPORATION**,

    Plaintiff,

v.

**DAVID BRADY, et al.**,

    Defendants.

Civil Action No. 5:23-cv-00059

**PLAINTIFF'S REPLY TO DEFENDANTS DAVID BRADY, WILLIAM TUCKER AND BRAWTUS HOLDING COMPANY'S MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFF'S MOTION TO COMPEL**

Nothing in *Defendants' David Brady, William Tucker, and Brawtus Holding Company's* (collectively, the "Brawtus Defendants") *Memorandum in Opposition to Plaintiff's Motion to Compel Discovery, Vacate Trial and Pretrial Deadlines, and Amend Pretrial Order and Case Management Plan* (Doc. 150) ("*Memo in Opp.*") changes the decisive facts:

1) Plaintiff Crown Equipment Corporation served discovery requests on August 1, 2024;

2) the Brawtus Defendants knew the server owned by Brawtus Holding Company contained information responsive to some of Crown's discovery requests;

3) none of the Brawtus Defendants did a thing to search the server;

4) Crown learned on March 25, 2025, the eve of depositions, that none of the Brawtus Defendants or any other Defendant had produced responsive information from the server;

5) Only after Crown uncovered the discovery violation did counsel disclose the Pneu-Mech Systems IT Director had copied relevant information from the server onto a thumb-drive, Defendant Brady gave the thumb-drive to the Brawtus Defendants' counsel, and no effort was made to produce any information on the thumb-drive;

6) When Crown pressed for information on the thumb-drive, the Brawtus Defendants' counsel reversed course and claimed the thumb-drive contained no information;

4774484.5

7) When Crown pressed further, the Brawtus Defendants counsel then admitted the former Pneu-Mech Systems IT Director had also loaded email files for Jerry Trostle and Jim Andrews onto a computer given to Defendant Brady, the computer had never been searched, and the information from the computer had never been produced;

8) When Crown insisted on production of the relevant information loaded on the computer, the Brawtus Defendants' counsel once again reversed course and claimed that the computer only contained emails from Trostle;

9) All of these failures were uncovered within less than 30 days before the scheduled close of discovery; and

10) By April 8, 2025, Crown had completed depositions of Defendants Brady, Tucker and Boggs and Third-Party Defendants Trostle and Andrews. On April 11, 2025, Defendant UFS, on behalf of itself, Defendant Boggs, and the Brawtus Defendants, produced more than 4,400 relevant and responsive documents from the server: the same server Brawtus Holdings owns and the Brawtus Defendants can access but never bothered to search.

Despite these facts, the Brawtus Defendants ask the Court to look past their prejudicial discovery failures and instead prevent Crown from (1) obtaining certainty that the Brawtus and other Defendants have finally satisfied their discovery duties and (2) reconvening the depositions with the benefit of the discovery the Brawtus and other Defendants should have produced long ago.

**I.      Crown's *Motion* is based on discovery violations for which the Brawtus Defendants have no legitimate explanation.**

The Brawtus Defendants do not dispute they failed to produce responsive documents from the server. They similarly do not disagree they did not search and produce documents from the thumb-drive, claiming later the drive was empty. And they do not dispute they did not timely produce any of the relevant information from the laptop in Defendant Brady's possession. Instead, they offer uncompelling excuses for their discovery misconduct.

*A. The discovery violation includes Brawtus Defendants' failure to search the server and produce relevant information.*

The Brawtus Defendants look to excuse their behavior by making the same misdirected argument as other Defendants: *i.e.,* because Defendants Joseph Boggs and Pneu-Mech Systems

Manufacturing, Inc. ("Pneu-Mech 3.0") referenced the existence of a server in initial disclosures or written discovery responses, Plaintiff Crown was aware of the server and this dispute is of Crown's own making. But this strawman argument is intended to misdirect the Court to accept a premise Crown did not argue and which is irrelevant to resolution of the *Plaintiff's Motion to Compel Discovery, Vacate Trial and Pretrial Deadlines, and Amend Pretrial Order and Case Management Plan* (Doc. 143) ("*Motion*"). That is, Crown has not argued that it did not know the server existed. Instead, Crown's argues **the Defendants did not disclose until the eve of depositions that they never searched the server (or other electronic devices) for responsive documents despite the fact the server and other devices seemingly contained information called for by Crown's discovery requests.** Thereafter, the Defendants, including the Brawtus Defendants, revealed the extent of their discovery failures during the depositions, finally culminating in even more confessed violations after the April 25, 2025, mediation. This distinction between the Defendants' strawman and Crown's actual argument is consequential, and the Defendants' lockstep proffering of the same, coordinated, misguided argument demonstrates their concerted effort to avoid the consequences of their discovery violations.

The Brawtus Defendants misguide the Court by claiming "Crown bases its extraordinary demand principally on the fiction that Defendants had not disclosed the existence of a leased computer server that resides at UFS's manufacturing facility, and which is under UFS's control." *Memo in Opp*. 2. In fact, they go so far as to claim Crown argues the server "…had been 'hidden' from Crown" and "Defendants failed to disclose the existence of this computer server." *Id*. 3–4, 6. Again, this is false and misses the point entirely. The words "hidden" and "hide" appears nowhere in Crown's Motion. Instead, Crown contends each Defendant knew the server existed and yet not one bothered to satisfy their mandatory discovery duties by producing information from the server.

3

4774484.5

Case 5:23-cv-00059-MEO-DCK    Document 169    Filed 06/03/25    Page 3 of 16

The Brawtus Defendants' position that they satisfied their discovery obligations by disclosing the existence of the server stands discovery on its head. That is, the Brawtus Defendants contend they need not actually search for responsive information—rather, they only need to disclose they *may* have responsive information, and then it is incumbent upon the requesting party to "act diligently" to force the Defendants to produce what has already been requested. But this is not the system contemplated by the Civil Rules. Further, if this were the case, then why would Defendant Bogg's lawyer call Crown's counsel on the eve of the depositions to disclose that the server had not been searched. This is because he was new to the case and knew this was a problem. In the end, discovery rules obligate a party to produce relevant and reasonably accessible material that on its face is likely responsive to discovery requests. The Brawtus Defendants cannot avoid this reality.

    B. *The Brawtus Defendant cannot credibly argue they could not access the server.*

The Brawtus Defendants offer another excuse for their discovery violations: even though Brawtus Holdings owns the server, UFS leases it and thus the Brawtus Defendants could not access it to produce responsive information called for by Crown's discovery requests. Put in context, Defendants Brady and Tucker own Brawtus Holdings. The Brawtus Defendants claim that because Brawtus Holdings has an oral lease with UFS that includes leasing the server, the Brawtus Defendants cannot access the server. But Defendant Boggs testified this is absolutely false and that the Brawtus Defendants have instructed him during the litigation to access and retrieve information from the server:

> Q….I mean, in terms of a business person at United Finishing, as an example, have you had any conversations with anyone at United Finishing about any effort you may want to undertake to identify information stored on the server that we're talking about to produce for purposes of this litigation?
> A. No.

4

4774484.5

Case 5:23-cv-00059-MEO-DCK    Document 169    Filed 06/03/25    Page 4 of 16

> Q. How about with Mr. Brady or Mr. Tucker? Have you had any conversations with either Mr. Brady or Mr. Tucker about your need to perhaps look at the server to see if there's information stored on the server that would be called for in requests from Crown?
> A. They did request and gave me permission to access some stuff related to Pneu-Mech, LLC.
> Q. And they being Mr. Brady and Mr. Tucker both? Or are you communicating with one?
> A. Primarily David Brady.
> **Q. And did you personally then – whatever information you were authorized by Mr. Brady to retrieve from the server, did you then personally yourself go in to retrieve that information and then produce it in this lawsuit?**
> **A. Yes.**

*Ex. 1*, *Boggs Dep., Vol. I*, 41:5-42:4 (emphasis added). In the face of this testimony, the Brawtus Defendants' argument that the server is "under UFS's control" is not credible. *Memo in Opp.* 2.

> C. *Crown's Motion is based on specific discovery requests, in addition to the Brawtus Defendants' fundamental failure to satisfy their duties.*

The Brawtus Defendants next excuse for their misconduct is their claim that Crown does not base its demands for information on any failure to respond to specific discovery requests. *Memo in Opp.* 2, 8–9. This is untrue. Crown cites several specific discovery requests calling for production of the information the Brawtus Defendants had in their possession but did not produce. *Motion* 6–11. As an example, Crown's discovery requests directed to Defendants Brady and Tucker required production of various financial statements. *Motion* 7–8. On April 11, 2025, after Crown had completed the depositions of Defendants Boggs, Brady, and Tucker, as well as Third-Party Defendants Trostle and Andrews, UFS produced more than 4,400 documents from the server the Brawtus Defendants claim they cannot access! This production included hundreds of never-before-produced financial documents spanning 2017–2021, including year-end financial reports, balance sheets, income statements, general ledgers, inventory reports, sales order and revenue projections, cash flow forecasts, AP and AR reports, and year-over-year increase in contract reports. *See Ex. 2, Declaration of Toby K. Henderson*, ¶4. Crown's discovery requests

5

directed to Defendant Brady also required production of communications with Trostle and Andrews. *Motion* 7. The April 11 production included more than 100 communications involving Defendants Brady and Tucker and Trostle or Andrews. *Id.*, ¶5.

The Brawtus Defendants cannot sincerely contend Crown has not been prejudiced by the production of thousands of relevant documents *after Crown completed the most critical depositions*. Only after Crown deposed Defendants Brady, Tucker, and Boggs and Third-Party Defendants Trostle and Andrews, did Defendant UFS, on behalf of itself, Defendant Boggs, and the Brawtus Defendants, produce more than 4,400 relevant documents. Crown had a fraction of the information it was entitled to have when it completed these depositions because the Defendants, including the Brawtus Defendants, did nothing to produce the treasure-trove of information from the server until slightly more than two weeks before the close of discovery.

D.  *The Record Demonstrates Crown's Discovery Diligence.*

Brawtus Defendants also argue the Court should not permit further discovery, claiming Crown was not "diligent" in its discovery efforts and cannot show good cause for modifying the schedule. The Brawtus Defendants contend Crown's alleged lack of diligence is reflected in Crown serving discovery on August 1, 2024, despite the case being filed on May 10, 2023. *Memo in Opp.* 6. What the Brawtus Defendants do not tell the Court, however, is that most of the first year of the case was spent disposing of the Brawtus Defendants' unsuccessful efforts to have the case dismissed and that, as dictated by the Federal Rules, discovery could not begin until well into 2024.

Further still, despite conceding Crown served discovery on August 1, 2024, the Brawtus Defendants did not make their final document production until nearly February 2025. And in a distortion of the record, the Brawtus Defendants argue Crown was responsible for the deposition and mediation schedule falling close to the end of discovery. The record demonstrates Crown was

diligent in pursuing discovery and any delay was Defendants' doing. Indeed, by January 23, 2025, Crown worked to schedule depositions, asking about the status of any remaining defense document productions and explaining it intended to proceed with depositions in mid-February:

> Second, on December 3, [Crown Counsel] Toby inquired as to whether there were any outstanding productions. Could each defense group identify whether a production is forthcoming?[1]
> \*\*\*
> Finally, we would like to begin the discussion on depositions and getting those on the calendar. From our perspective, we think depositions should proceed in mid-February and into March. Given the logistics of so many parties and counsel, and that each party is limited to the number of depositions under the Pretrial Order, it is necessary for cooperation among all counsel to get the depositions scheduled.\*\*\*

*See Ex. 3*, 61–62. After several follow-up emails, on February 14, 2025, Crown proposed a schedule that would permit completion of all or most of the depositions before a March 24 court-ordered mediation. *Id.*, 50-51.

On February 20, Crown confirmed the deposition schedule and served notices. *Id.*, 47. At the same time, Crown flagged that, due to scheduling delays the Defendants or their counsel caused, it was necessary for the parties to agree to move certain case deadlines:

> Finally, there are some approaching deadlines **related to expert witnesses for both sides**. Since no party has yet to take any depositions, and given the mediation, Crown would propose adjusting the schedule again. **However, in the interests of efficiency, we would propose leaving the dates as is on the understanding that should the mediation be unsuccessful, the parties agree to revisit the schedule and adjust accordingly to give additional time for discovery. We believe this to be the most efficient way to proceed**. Please let us know if you are in agreement with this approach.

No defense counsel objected to Crown's proposal to proceed with the mediation and, if it were unsuccessful, the parties would then jointly agree to reset certain deadlines, including those related

---

[1] The following day, the Brawtus Defendants' counsel confirmed he was still working on producing documents, even though the requests were served on August 1, 2024. *Ex. 3*, 60.

to experts and discovery. In fact, counsel for Defendant Pneu-Mech, Inc. and Third-Party Defendants Trostle and Andrews expressly endorsed this approach:

> The approach on the schedule sounds reasonable, **with an agreement on extension of deadlines post-mediation**. We would also anticipate the need for a Rule 34 inspection of the facility in New Bremen, so that would need to be **accommodated in the reset schedule and disclosure deadlines post-mediation**.\*\*\*

*Id*., 46.

Although Crown believed the schedule was set as of February 20, 2025, Defendant Boggs retained new counsel who could not honor the schedule. On February 27, his new counsel announced he needed to reschedule Defendant Boggs' deposition: "We also need to reschedule. Mr. Boggs is available any time the week of March 24th and I can move things around to make sure I am available as well. \*\*\*" *Id.,* 42. This meant the March 24 confirmed mediation could not proceed. Pressed by the Brawtus Defendants—"Is there no way for the deposition to be done over two days the week of March 10? I believe all parties had intended for Mr. Boggs' deposition to be the first one" *Id*., 42—Defendant Boggs's counsel reiterated his unavailability:

> Unfortunately, the week of March 24th is going to be the earliest availability I can provide for Mr. Boggs. With my schedule over the coming weeks I just can't make it work.\*\*\*
> I understand this means that we may have to reschedule mediation and seek a modification of the case management plan.\*\*\*

*Id*., 37.

Concerned about case deadlines, Crown sought to hold the original schedule for all other depositions and tack the Boggs deposition on to the end: ***"I think we need to hold the schedule as much as we can unless the below schedule can work.\*\*\*"*** *Id.*, 33. Crown did, however, propose an alternative schedule rescheduling Boggs and setting mediation in early April:

> \*\*\*If this proposed schedule does not work, we will need to hold what is already confirmed and add Mr. Boggs to the tail end. Otherwise, due to the press of other cases, the depositions will not be completed until mid-May with a mediation in late

> May…While we are amenable to bumping the mediation date, we are not willing to move the discovery cutoff date as that will jeopardize the trial date.
>
> As another alternative, we can leave Mr. Boggs out of this mediation and proceed with the mediation with those parties who are available for depositions beforehand. Although it may seem a bit harsh, the scheduling challenges now are due to Mr. Boggs changing counsel late in the game, which should not be a basis to disrupt the case schedule for the other parties.

*Id*., 33–34. Unfortunately, UFS's counsel had limited availability:

> Unless [UFS counsel] has someone who can cover those dates he is unavailable (3 of the 8 dates others are available), it looks as if we are back to the original schedule except for tacking Boggs on the end and resetting the mediation. I understand John this is not ideal as we collectively wanted to depose Mr. Boggs first as this would have been much more efficient but it appears we have no choice at this point.

*Id.*, 26. The Brawtus Defendants' counsel proposed yet another schedule. *Id.*, 25. Crown expressed a willingness to work with the proposed revised schedule: "We might be able to make this work. It will require moving some other commitments. Before doing so of course we need to know if the proposed schedule works for everyone else." *Id.*, 24. The next day, the Brawtus Defendants counsel thanked Crown for its willingness to accommodate still more defense-initiated schedule changes: "That makes sense and I appreciate your willingness to move things to accommodate. ***" *Id.*, 23.

A final schedule remained tenuous as UFS's insurance representative was unavailable for the new mediation date: "My adjuster cannot attend mediation on April 9." *Id.*, 22. The Brawtus Defendants counsel then raised the prospect of moving the mediation to April 25. *Id.*, 20. The parties finally settled on a schedule whereby depositions would begin on March 26 and be done before an April 25 mediation date with the understanding that, if the mediation were unsuccessful, the parties would reset the schedule, including expert disclosure deadlines post-mediation. *Id.*, 16.[2]

---

[2] Defendants also argue they agreed Crown could hire its own vendor to inspect the server and identify relevant emails but, because Crown ultimately insisted Defendants conduct the search,

Based on this record, any argument that Crown has been anything other than diligent in its discovery pursuit is unsupported. The authority the Brawtus Defendants cite to support their diligence argument is equally unavailing. *Memo in Opp*. 5–6. In *Figlar v. Simonton Windows & Doors, Inc*., 2024 U.S. Dist. LEXIS 96534, the Virginia District Court found the plaintiff was not diligent in pursuing discovery because she chose to take depositions late in the discovery period and she chose to serve new discovery requests slightly more than 30 days before the discovery period closed. *Id*., *7. Here, Crown sought depositions well before the discovery cutoff, but the ultimate schedule shifted due to the Defendants' availability, not Crown's choice. And Crown did not serve any new discovery requests late in the discovery period like the *Figlar* plaintiff. Instead, once Crown uncovered the Defendants' violations beginning on March 25, it immediately sought to remedy the violations through mandatory informal efforts with Defendants and seeking a discovery conference with the magistrate. Indeed, Crown has been diligent is pursuing discovery from the multiple Defendants.

E. *The Brawtus Defendants knew of the information stored electronically.*

The Brawtus Defendants next try to play off their conduct as that of "elderly men" lacking "tech savvy." *Memo in Opp.* 8. But the discovery rules do not apply differently to people over 60. Nevertheless, the facts show the Brawtus Defendants were keenly aware of the storage devices. Defendant Brady testified that, when he learned in 2022 that Trostle and Andrews were pursuing the possible sale of Pneu-Mech Systems assets (including the server) to a third-party, he seized the server because it was "extremely valuable" and contained information accumulated over 30 years

---

Crown was not diligent. *Memo in Opp.,* 7. As explained in Crown's *Reply to UFS's Opposition,* it was logistically easier and more efficient for UFS to arrange for its IT vendor to perform the search, and searching the server was Defendants' duty, not Crown's.

of business. *Ex. 4, Brady Dep.* 209:2-23. Moreover, when the Brawtus Defendants' relationship with Trostle and Andrews deteriorated in 2022, Defendant Brady instructed the Pneu-Mech System's IT Director to "download" the email files for Trostle and Andrews from the server. *Id.*, 107:9-108:1. The IT Director did as instructed, delivering the downloaded emails on a thumb-drive to Defendant Brady who then delivered the thumb-drive to his counsel. *Id.*, 108:2-7; *see Ex. 1, Boggs Dep., Vol I*, 67:3-68:7. The Brawtus Defendants' effort to excuse away their conduct as that of unsophisticated litigants is not only contrary to the law but belied by the facts.

  F. *Defendants' further mischaracterization of Crown's position is unavailing.*

The Brawtus Defendants also contend Crown now seeks the broad production of ".pst files"— that is, email repositories — supposedly in the Defendants' possession, and that Crown "makes this exceptional demand even though it never actually made such a broad discovery demand for ***all*** emails in Defendants' possession — no matter when they were created, their subject matter, or whether they contain attorney-client privileged communications." *Memo in. Opp.* 1, 5. This is not true. Crown seeks only those files for any Defendant, not all ".pst" files in Defendants' possession. What Crown seeks—what Crown is entitled to—is not just ".pst" files but access to any electronic device in any Defendant's possession, custody, or control that may contain relevant information for inspection and search by Crown's forensic expert.

  G. *Any result other than requiring complete production, permitting reconvening of depositions, and extending deadlines would prejudice Crown.*

Equivocating their position, the Brawtus Defendants ask the Court to not extend the expert disclosure deadlines should the Court compel production and reset the case schedule. *Memo in Opp.* 9-10. As detailed above, the parties agreed that if the court ordered mediation was unsuccessful, they would jointly agree to extend the deadlines post-mediation and reset the schedule and disclosures, including expert disclosures. The Court should not permit the Brawtus

Defendants and the other Defendants to retract their acquiescence now when they perceive a strategic advantage from the calendar and their discovery breaches.

Finally, the Brawtus Defendants cite Federal Rule 37(c)(1) as a basis for asserting the Court should not extend the expert disclosure deadlines. *Memo in Opp*. 10-11. But this Rule is not relevant to the Brawtus Defendants' arguments. The Rule, styled "Failure to Make Disclosures or to Cooperate in Discovery; Sanctions", is designed to apply when a party fails to timely disclose a witness. Here, the Brawtus Defendants acquiesced in Crown's proposal and several other Defendants express agreement to reset deadlines following the failed mediation. Rule 37 is not intended to reward a Defendant that acquiesces to resetting deadlines, including expert disclosures, only to then renege on its assent and instead argue the opposing party should be "sanctioned" for not disclosing an expert witness by a deadline the parties agreed would be reset. The Brawtus Defendants claim they would be prejudiced by resetting deadlines, including the expert disclosures, rings hollow when they consented (along with the other Defendants) to resetting the deadlines and the need for the new schedule is due to their discovery violations.[3]

### CONCLUSION

For the foregoing reasons as well as those stated in Crown's *Motion*, the Court should permit Crown to continue with its discovery efforts, including compelling production of emails and other electronically stored information, and permit Crown to reconvene the depositions.

---

[3] The Brawtus Defendants also cite Civ.R.37(a)(5)(B) in requesting costs in responding to the *Motion*. This provision is only triggered when the motion to compel was not substantially justified. The record here demonstrates Crown's *Motion* was more than substantially justified.

12

4774484.5

Dated: June 3, 2025					Respectfully submitted,

					*/s/ Toby K. Henderson*
					Toby K. Henderson (Ohio Bar No. 0071378)
					(*pro hac vice*)
					Zachary S. Arnold (Ohio Bar NO. 0096819)
					(*pro hac vice*)
					SEBALY SHILLITO + DYER
					A Legal Professional Association
					220 East Monument Avenue, Suite 500
					Dayton, Ohio 45402
					937-222-2500 Telephone
					937-222-6554 Facsimile
					thenderson@ssdlaw.com
					zarnold@ssdlaw.com

					and

					Robert L. Lindholm (N.C. Bar No. 52800)
					NELSON MULLINS RILEY & SCARBOROUGH, LLP
					301 South College St., 23rd Floor
					Charlotte, North Carolina 28202
					(704) 417-3000 Telephone
					(704) 377-4814 Facsimile
					Email: robert.lindholm@nelsonmullins.com

					*Attorneys for Plaintiff*
					*Crown Equipment Corporation*

13

4774484.5

# PLAINTIFF CROWN EQUIPMENT CORPORATION'S ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the June 18, 2024 Standing Order of this Court In Re: Use of Artificial Intelligence, 3:24-mc-104, the undersigned submits the following certification in relation to the foregoing memorandum.

1. No artificial intelligence was employed in doing the research for the preparation of this memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;

2. Every statement and every citation to an authority contained in this memorandum has been checked by the undersigned as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: June 3, 2025

Respectfully submitted,

*/s/ Toby K. Henderson*
Toby K. Henderson (Ohio Bar No. 0071378)
(*pro hac vice*)
Zachary S. Arnold (Ohio Bar NO. 0096819)
(*pro hac vice*)
SEBALY SHILLITO + DYER
A Legal Professional Association
220 East Monument Avenue, Suite 500
Dayton, Ohio 45402
937-222-2500 Telephone
937-222-6554 Facsimile
thenderson@ssdlaw.com
zarnold@ssdlaw.com

and

Robert L. Lindholm (N.C. Bar No. 52800)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
301 South College St., 23rd Floor
Charlotte, North Carolina 28202
(704) 417-3000 Telephone
(704) 377-4814 Facsimile
Email: robert.lindholm@nelsonmullins.com

*Attorneys for Plaintiff*
*Crown Equipment Corporation*

15

4774484.5

## CERTIFICATE OF SERVICE

       I hereby certify that my office electronically filed the foregoing on June 3, 2025, using the Court's Electronic Filing System, which will serve a copy to the parties and counsel of record who are listed on the Court's Electronic Mail Notice, and I hereby certify that I have mailed by U.S. Postal Service the document to non-Electronic Filing participants.

                                                        */s/ Toby K. Henderson*
                                                        Toby K. Henderson (Ohio Bar No. 0071378)
                                                        (*pro hac vice*)