# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| CROWN EQUIPMENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No. 5:23-cv-00059** |
| | ) | |
| vs. | ) | **PLAINTIFF CROWN EQUIPMENT** |
| | ) | **CORPORATION'S OMBINUS** |
| DAVID BRADY, et al., | ) | **SUPPLEMENTAL MEMORANDUM IN** |
| | ) | **OPPOSITION TO DEFENDANTS'** |
| Defendants. | ) | **SUMMARY JUDGMENT MOTIONS** |
| | ) | |

## I.    INTRODUCTION.

Nearly a year ago, the parties began briefing summary judgment motions. (*See generally* ECF 154-168). Each of the defense groups[1] separately asserted various reasons supporting their respective summary judgment motions on Crown's claims. (*Id.*) Crown responded to each, explaining why no arguments withstood scrutiny. (ECF 179-186). Even with discovery being reopened twice, each for limited purposes, it remains true that Crown has stated viable claims against each Defendant, and genuine issues of material fact remain for jury evaluation. Now, under this Court's February 6 and March 30, 2026 Orders, Crown submits this *Omnibus Supplemental Memorandum in Opposition to Defendants' Summary Judgment Motions*, further explaining (1) Crown never needed an expert to take its case to trial; (2) even if expert testimony is required, Crown's timely disclosed hybrid experts will explain their opinions supporting Crown's claims to the jury; and (3) there remains a genuine issue of material fact on Crown's fraud claim.

---

[1]    This includes: (1) the Brawtus Defendants (David Brady, William Tucker, Brawtus Holding Company, Inc. (Pneu-Mech 1.0), and Brawtus Management Company, LLC; (2) Joseph Boggs; (3) United Finishing Systems, LLC (UFS); and (4) Pneu-Mech Systems Manufacturing Inc. (Pneu-Mech 3.0), James Andrews and Jerry Trostle. Only Defendant Pneu-Mech Systems Manufacturing, LLC (Pneu-Mech 2.0) did not move for summary judgment. In fact, Pneu-Mech 2.0, co-represented by counsel for the Brawtus Defendants, stopped participating long ago.

## II. BACKGROUND & ARGUMENT.

### A. Defendants' Discovery Conduct Led to Discovery Being Reopened—Twice.

During the summary judgment briefing, defense groups argued Crown's claims fail on their face because Crown did not disclose an expert witness and therefore could not support elements of its breach of contract and negligence claims, which, in turn, impacted other Crown claims. (*See generally* ECF 155 (by Pneu-Mech 3.0); ECF 161, pp. 5-10 (by Brawtus Defendants); and ECF 164, p. 4 (by UFS, incorporating ECF #155, p. 6-9)). In response, Crown explained it never had to identify an expert because, at minimum, Pneu-Mech's admissions as to its defective and incomplete work make expert testimony unnecessary, and because expert testimony is not necessary for a fact finder to understand Crown did not receive what it bargained for. (ECF 183, pp. 2-19). That is, Pneu-Mech admitted it did not satisfy agreed specifications or fix the system as promised before it walked away from the project altogether, only to now claim an expert is necessary to explain its admissions and omissions. (ECF 183, pp. 6-9). Even Pneu-Mech 3.0 acknowledged the system was defective and promised to fix it—but did not. (*Id.*, pp. 9-14). It does not take an expert to explain that when an owner does not get the system it was promised, and the contractor walks off the job before making corrections it promised to make, the owner is harmed.

During summary judgment briefing, the parties appeared before the Court on Crown's *Motion to Compel*, which stemmed from Defendants' failure to search the Pneu-Mech Server throughout the life of the litigation. (*See* July 9, 2025 Hearing Notice; *also see* ECF 143, 147, 148, 150, 151, 169-172). One topic of the hearing was experts, and Judge Bell made clear: "[d]iscovery is not gamesmanship. It's supposed to be done collegially and in the spirit of the rules and I don't see that that uniformly happened here." (ECF 193, pp. 18-19). The Court ordered Defendants to allow Crown to obtain a forensic copy of the Server, which resulted in extraction of more than 445

4992284.5

GB of data. (*See* ECF 202, pp. 2-3 (further explaining the data results from the Server); *see also* 202-10 (declaration explaining the Server data extraction)). The Court thus reopened limited discovery, set a new deadline for expert disclosures, and permitted supplemental summary judgment briefing. (*See* July 18, 2025 *Oral Order*; ECF 200, 202-209).

Under the Court's July order, Crown timely identified its "hybrid-expert witnesses"—"fact witnesses with expertise that will inform their testimony"—under Federal Rule of Civil Procedure 26(a)(2)(c). (ECF 201; *Timpson v. Anderson Cty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022)). Defendant Pneu-Mech 3.0 also identified an expert and produced his report.

Because Crown's timely designation of experts defeated its summary judgment motion's central purpose, Pneu-Mech 3.0 sought to strike Crown's Hybrid Witness Disclosure under Federal Rule of Civil Procedure 37, which the Court rejected. (ECF 211-212, 215, 216; February 6, 2026 *Text-Only Order*). The Court did, however, give all parties the opportunity to depose any disclosed expert witness, reset a limited discovery deadline, and provided a last opportunity to supplement summary judgment. (*Id.*)

### B. Additional Discovery Does Not Support Summary Judgment to Defendants.

Once discovery reopened again, Crown began to work with counsel to set depositions of its Hybrid Witnesses and depose Pneu-Mech 3.0's expert. Crown originally identified five hybrid witnesses. (ECF 201; *see also* ECF 206, pp. 2-8). Pneu-Mech 3.0 stated it wanted to take a single expert deposition (Ali Zorkot). The Brawtus Defendants initially said they wanted to depose all five of Crown's experts. After Crown provided dates for three of its witnesses (Tony Sielschott, Nathan Wuebker, and Rich Saddler), and said it would be withdrawing its designations as to the remaining two (Mr. Zorkot and Bill Glass, *see* ECF 229 [the "Hybrid Disclosure"]), the Brawtus

4992284.5

Defendants changed course and only sought to depose Mr. Sielschott.[2] In other words, Defendants elected **not** to depose two of Crown's Hybrid Witnesses.[3]

Defendants deposed Mr. Sielschott on March 19, 2026. Mr. Sielschott has been a Crown employee since 2011 and currently serves as a Senior Manufacturing Engineer for Crown. (Dep. Tr. Anthony Sielschott, attached here as **Exhibit A**, ["Sielschott Dep."] 15:10-24; *see also* ECF 229, p. 1). He has substantial experience with systems like that in the Crown project and is the only Crown employee who remained constant on the project through its entire lifecycle with Pneu-Mech. (*Id.*, 104:11-105:13).

Mr. Sielschott testified he was prepared to explain each of the opinions for which he would offer testimony as identified in the Hybrid Disclosure. (*Id.*, 116:3-122:11; *see also* ECF 229, pp. 2-4). Defendants did not explore those opinions. (*See generally* Sielschott Dep.). And by not exploring any of Mr. Saddler's or Mr. Wuebker's opinions, Defendants cannot meet their burden to show the absence of a genuine issue of material fact on the now debunked position that Crown did not disclose experts. In other words, the record now makes clear Crown has expert witnesses who will testify to facts based on their own knowledge and provide expert opinions which support Crown's claims for negligence and breach of contract. (*See generally id.*; *see also* Declaration of Nathan Wuebker, attached here as **Exhibit B** and Declaration of Rich Saddler, attached here as **Exhibit C**). Thus, even if expert testimony is required for Crown's claims (it is not), Defendants are still not entitled to summary judgment.

---

[2] During the original discovery phase, though all parties were invited to take Mr. Sielschott's deposition, none elected to do so. (*See* ECF 215, pp. 10-11; ECF 215-6).

[3] This email exchange is attached as **Exhibit D**. These communications are provided to reveal that Defendants elected not to pursue certain depositions and therefore cannot argue the absence of a genuine issue of material fact related to the forthcoming testimony of Mr. Saddler and Mr. Wuebker. (*See also* ECF 206, pp. 4-5 (further explaining the facts which Mr. Saddler and Mr. Wuebker will testify to)).

4992284.5

Defendants will no doubt argue Mr. Sielschott's statement that he is not a structural engineer and thus not able to opine on the standard of care for an Ohio structural engineer render his opinions insignificant. (*Id.*, 167:19-168:2). Defendants are wrong, and such position continues to "lose the forest through the trees." Mr. Sielschott confirmed Pneu-Mech simply failed to complete the project and walked off the job:

> Q. And what knowledge, if any, do you have regarding Pneu-Mech's ability to complete the project in June of 2022?
> A. Can you rephrase the question?
> Q. Sure. What personal knowledge do you have of any representations that were made by Pneu-Mech about their ability to complete the project in June of 2022?
> A. As far as their intention, or the actual completion?
> Q. Let's start with their intention first.
> A. There was a list compiled of several things that we both agreed upon that needed to be resolved before its completion, and that is where we kind of left off in that time period.
> Q. When you say that's where we left off, what do you mean by that?
> A. ***They did not come back and finish the project.***

(*Id.*, 40:1-19 (emphasis added)).

> Q. Tony, I just have a few more questions for you. What was your understanding of when Pneu-Mech ceased to exist, at least as an ongoing entity?
> A. I don't really know what to think or expect. I know they were trying to, you know, add doors to the end of the cure oven to aid in the gravity hood that was in place, and then there was just -- ***it was just incomplete***. I didn't know what to really think about the situation.

(*Id.*, 105:22-106:7 (emphasis added); *see also id.*, 156:12-19).

This adheres to Crown's position all along: Crown does not need an expert to explain it did not get what it was promised. *See Campor, Inc. v. Brulant, LLC*, 2011 U.S. Dist. LEXIS 74861 (D.N.J. July 12, 2011) (applying Ohio law, and rejecting summary judgment on contract claim because an expert was not required to show "whether [the defendant] delivered what it promised in the contract."); *also see Bertsch v. Lee's Crainte, LLC*, 2009-Ohio-6261, ¶ 18 (Ct. App.)

5

(confirming expert testimony not required to show granite countertops and installation were defective); *Vestige, Ltd. v. Mills*, 2013-Ohio-2379, ¶¶ 12-25 (Ct. App.) (explaining no expert required to explain computer forensic analyst breached contract to accurately and effectively communicate findings); *Van Beausecum v. Cont'l Builders, Inc.*, 2004-Ohio-7261, ¶¶44-45 (Ct. App.) (vacating directed verdict, finding sufficient evidence of breach of workmanlike manner where agreement contemplated a dry basement which owners did not receive).

Mr. Sielschott also explained he was prepared to testify about the Remedies List which served as the basis of the Addendum where Pneu-Mech admitted its shortcomings. (Sielschott Dep., 122:19-123:8; *also see* ECF 184-1 (Sielschott Declaration), 184-2 (Remedies List), 184-9 (Addendum)). But Defendants did not ask what the issues were, or Mr. Sielschott's opinions on the Remedies List; just which item corresponded to which part of Crown's damages. (Sielschott Dep., 123:9-152:5). This did not stop Mr. Sielschott from explaining the issues Crown faced and the extensive work, both by internal staff and outside contractors, to correct the omissions by Pneu-Mech. (*Id.*)  Simply put, it does not take an expert for a jury to understand that by Crown having to hire other contractors to fix Pneu-Mech's problems after they walked off the jobsite, Pneu-Mech breached its promised obligations. (*Id.*, 56:19-59:17).

Even more, Mr. Sielschott still explained several of the line items of Crown's damages (*see* ECF 169-9) which tied directly back to issues on the Remedies List. (*See* Sielschott Dep., 123:9-152:5). He also explained the several issues Crown rectified internally. (*See, e.g.*, *id.*, 131:16-132:8, 134:19-25, 138:20-139:5, 146:22-147:2, 142:8-12, 142:19-23). Mr. Sielschott also made clear the Remedies List and Crown's damages were not a one-to-one comparison. (*See, e.g.*, *id.*, 148:7-25). In any event, an expert is not required to prove Crown's damages derived from actual costs Crown sustained and paid to contractors to fix Pneu-Mech's problems. *See B&B Contractors*

4992284.5

*& Developers, Inc. v. Olsavsky Jaminet Architects, Inc.*, 2012-Ohio-5981, ¶ 62 (Ct. App.) (citing *Evans Landscaping, Inc. v. Stenger*, 2011-Ohio-6033, ¶ 24 (Ct. App)).

Mr. Sielschott's testimony confirms (1) Crown did not get what it contracted for, (2) Pneu-Mech walked off the project site and did not finish the system, and (3) Pneu-Mech admitted there were dozens of issues with the system, some of which it was never capable of correcting.

Defendants argued the absence of expert testimony warranted summary judgment. But by electing to not investigate the opinions of Mr. Sielschott, Mr. Wuebker, or Mr. Saddler guided by their knowledge of the underlying facts, Defendants cannot argue Crown's Hybrid Disclosure is some ploy to defeat summary judgment. Defendants bear the burden of proving the absence of a genuine issue of material fact to sustain summary judgment. Even assuming Defendants met that initial burden, Crown overcame that position in its initial opposition memorandums and has continued to overcome that position through twice reopened discovery and briefing. Summary judgment to Defendants is improper.

### C. Defendants' Putative Expert Does not Support Summary Judgment.

Pneu-Mech 3.0's purported expert, Andrew Johnson, does nothing to show an absence of a genuine issue of material fact. Indeed, the crux of Mr. Johnson's opinions and testimony is constrained to him finding "no evidence" supporting the system issues Crown has spent the past several years fixing. Part of this finding is that Mr. Johnson did not personally observe the system until 2025—more than three years after Pneu-Mech abandoned the project. Mr. Johnson, and by virtue Defendants, would thus have this Court believe that because Crown took several actions to repair the system to a functioning state, that is somehow fatal to Crown's claims. But this position flies in the face of both Ohio and North Carolina case law. *See Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 962 (Ohio 1999) ("[t]he general rule is that an injured party has a

7

4992284.5

duty to mitigate and may not recover for damages that could reasonably have been avoided."); *Justus v. Rosner*, 821 S.E.2d 765, 771 (N.C. 2018) ("an injured plaintiff, whether her case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. . . . Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable." (citation modified, internal citations omitted)).

Further, an "[e]xpert opinion is, to be sure, not facts that can be found as true or false. . . . It is an opinion" *United States v. Shea*, 989 F.3d 271, 277-78 (4th Cir. 2021) (citation modified). Thus, Mr. Johnson cannot be offered to prove the absence of a genuine issue of material fact, because he simply cannot offer any facts—and his "opinions" that there is "no evidence" are not admissible. On the opposite hand, Mr. Sielschott, Mr. Wuebker, and Mr. Saddler are unique hybrid witnesses who not only can offer testimony from their personal knowledge, but use their expertise and personal knowledge from their work on the Crown project to formulate opinions under the applicable Federal Rules of Evidence. *See Timpson*, 31 F.4th at 253 (citing *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) and *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011)). Even more, assuming Mr. Johnson's opinions are not excluded by this Court,[4] then, at minimum, there is a dispute as to opinions offered by experts which precludes summary judgment. *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 417 (4th Cir. 2015) ("[A] battle of the experts [] should not be resolved at summary judgment."); *Taylor v. Bristol-Myers Squibb Co. (In re Onglyza)*, 93 F.4th 339, 348 (6th Cir. 2024) ("competing expert opinions present the classic battle of the experts and it is up to a jury to evaluate what weight and credibility each expert opinion deserves." (internal citations omitted)).

---

[4] Mr. Johnson's opinions will be subject to a *Daubert* challenge.

8

4992284.5

In all, Crown did not get what was promised. No expert is needed to explain this, as a jury can assess that when a company contracts for a $15 million system which is riddled with problems, only for the contractor to walk off the job after empty promises to fix the system, the company is damaged. Thus, as it relates to the argument that Crown's breach of contract and negligence claims fail for lack of an expert, that position continues to lack merit. Summary judgment to Defendants should be denied.

### D. Whether or Not Crown Knew of an Ownership Change Among the Various Pneu-Mech Iterations is not Dispositive of its Claims Against Any Defendant.

Apart from the expert issue, the Brawtus Defendants questioned Mr. Sielschott, not about his disclosed opinions, but on his knowledge of the Pneu-Mech change in ownership. (Sielschott Dep., 43:24-53:19). While this line to inquiry was beyond the scope of the Court's Order re-opening discovery to address expert related issues (Feb. 6. 2026, *Text-Only Order*), Mr. Sielschott made clear he did not recall a timeline of when he may have learned of a change in Pneu-Mech ownership. (*Id.*) That remains insufficient to show an absence of a genuine issue of material fact. In this sense, Crown has explained whether there was a change in ownership is immaterial to its claims. (ECF 183, pp. 20-23). Whether Mr. Sielschott may have had a conversation with Trostle at a trade show does not overcome that Brady, Tucker, Andrews, and Trostle did not disclose the asset purchase arrangement to Crown, or that a new entity was being formed, and the articles to which Pneu-Mech points say nothing of this sense either. (*See, e.g.*, Sielschott Dep., Ex. 177). Mr. Sielschott, who did not recall specifics of a single conversation that purportedly took place at a trade show almost a decade ago, does not sustain Defendants' burden on the fraud claim. As a result, summary judgment remains wholly improper.

9

4992284.5

Case 5:23-cv-00059-MEO-DCK    Document 234    Filed 04/16/26    Page 9 of 11

### III. CONCLUSION.

A genuine issue of material fact exists on all of Crown's claims. Consistent with the above, as well as Crown's various opposition memorandums (ECF 179, 181, 183, 185) and supplemental memorandums (ECF 205, 203, 202, 206), Crown asks this Court to deny each of the defense groups' motions for summary judgment. (ECF 167, 164, 155, 161).[5]

Respectfully submitted,

*/s/ Kaitlyn C. Meeks*
James A. Dyer (Ohio Bar No. 0006824)
(*pro hac vice*)
Kaitlyn C. Meeks (Ohio Bar No. 0098949)
(*pro hac vice*)
Zachary S. Arnold (Ohio Bar No. 0096819)
(*pro hac vice*)
SEBALY SHILLITO + DYER
A Legal Professional Association
220 East Monument Avenue, Suite 500
Dayton, Ohio 45402
937-222-2500 Telephone
937-222-6554 Facsimile
jdyer@ssdlaw.com
kmeeks@ssldaw.com
zarnold@ssdlaw.com

and

Robert L. Lindholm (N.C. Bar No. 52800)
NELSON MULLINS RILEY
& SCARBOROUGH, LLP
301 South College St., 23rd Floor
Charlotte, North Carolina 28202
(704) 417-3000 Telephone
(704) 377-4814 Facsimile
Email: robert.lindholm@nelsonmullins.com

*Attorneys for Plaintiff*
*Crown Equipment Corporation*

---

[5]  At ECF 228, p. 2, Crown submitted a chart identifying all the summary judgment briefing in the record.

4992284.5

## PLAINTIFF CROWN EQUIPMENT CORPORATION'S CERTIFICATE OF COMPLIANCE

Pursuant to the June 18, 2024 Standing Order of this Court *In Re: Use of Artificial Intelligence*, 3:24-mc-104, the undersigned submits the following certification in relation to the Response above.

1. No artificial intelligence was employed in doing the research for the preparation of this Memorandum, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg, as well as Google and Google Scholar;
2. Every statement and every citation to an authority contained in this Memorandum has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/Kaitlyn C. Meeks*
Kaitlyn C. Meeks


## CERTIFICATE OF SERVICE

I hereby certify that my office electronically filed the foregoing on April 16, 2026, using the Court's Electronic Filing System, which will serve a copy to the parties and counsel of record who are listed on the Court's Electronic Mail Notice, and I hereby certify that I have mailed by U.S. Postal Service the document to non-Electronic Filing participants.

*/s/Kaitlyn C. Meeks*
Kaitlyn C. Meeks

4992284.5