UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:23-CV-00059-MEO-DCK

| | |
|---|---|
| CROWN EQUIPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PNEU-MECH SYSTEMS MANUFACTURING, INC., BRAWTUS MANAGEMENT COMPANY, LLC, DAVID BRADY, BRAWTUS HOLDING COMPANY, INC., and WILLIAM TUCKER,<br><br>Defendants. | MEMORANDUM & ORDER |

**THIS MATTER** is before the Court on Plaintiff Crown Equipment Corporation's ("Crown") Motion in Limine to Exclude the Expert Report, Opinions and Testimony of Andrew W. Johnson, P.E., S.E. (Doc. No. 256). Defendant Pneu-Mech Systems Manufacturing, Inc. ("Pneu-Mech") opposes the Motion (Doc. No. 270), as do Defendants David Brady, Brawtus Management Company, LLC, Brawtus Holding Company, Inc., and William Tucker (collectively, the "Brady-Tucker Defendants") (Doc. No. 271). Crown has replied to the objections (Doc. No. 281). Having carefully considered the Motion, briefs, expert report, and record, the Court will **GRANT IN PART** and **DENY IN PART** the Motion.

## I. BACKGROUND

Crown alleges that heat from two industrial ovens in a powder-coating system designed and installed by Pneu-Mech damaged components of Crown's

manufacturing facility, and that Pneu-Mech deficiently constructed the hangers and bracing supporting an overhead conveyor. Pneu-Mech retained Andrew W. Johnson, a licensed professional and structural engineer with Engineering Systems Inc. ("ESi"), to evaluate those claims. Johnson's November 10, 2025 Report rests on his review of documents produced in discovery and a single, non-destructive walk-through inspection of the facility on August 21, 2025, after Crown had completed the repairs at issue. (Doc. No. 256-2 at 2, 6). The Report contains twelve numbered findings, *id.* at 6–15, and seven conclusions, *id.* at 15–16.

Crown seeks to exclude the Report and all of Johnson's opinions. As part of its response in opposition, Pneu-Mech filed a sixteen-page Affidavit from Johnson, dated September 23, 2026. (Doc. Nos. 270; 270-1). The Affidavit describes Johnson's methodology in greater detail and cites published engineering literature not referenced in the Report. *See* (Doc. No. 270-1).

## II. LEGAL STANDARD

Federal Rule of Evidence 702, as amended December 1, 2023, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As the evidentiary gatekeeper, the Court must ensure that the proponent of expert testimony has established each of Rule 702's requirements by a preponderance of the evidence. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 283–84 (4th Cir. 2021); *see also* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). When a trial court fails to do so, it abdicates its gatekeeping function. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 230–31 (4th Cir. 2017).

The gatekeeping obligation applies just as much to engineering and other technical testimony as it does to scientific testimony, and the inquiry is a flexible one tied to the facts of the particular case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–50 (1999). Whatever his discipline, an expert witness must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. An expert who relies on experience must explain how that experience leads to his conclusion, why the experience is a sufficient basis for his opinion, and how the experience is reliably applied to the facts. *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). The Court need not admit an opinion "connected to existing data only by the *ipse dixit* of the expert," and may exclude an opinion where "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).

Rule 702(d), as amended, further requires that an expert opinion "stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Williams v. Sig Sauer, Inc.*, 799 F. Supp. 3d 470, 478 (E.D.N.C. 2025) (quoting *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1339 (Fed. Cir. 2025)). The Court therefore evaluates each opinion separately and may admit an opinion in part or in limited form. The proponent of the opinion need not prove its correctness: once the Court finds each of Rule 702's requirements satisfied by a preponderance of the evidence, remaining flaws in the testimony may be brought to the jury's attention through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596; *see also Sardis*, 10 F.4th at 283 ("[C]redibility is entirely distinct from reliability and relevancy.").

## III. DISCUSSION

### A. Issues Common to the Report as a Whole

The Court begins by discussing five issues that affect the Report as a whole.

#### 1. Burden

Defendants argue that Rule 702 should be applied liberally, and questions about the factual underpinnings of Johnson's opinions go to weight rather than admissibility. (Doc. No. 271 at 6–7). To the extent those arguments suggest that the sufficiency of Johnson's basis or the reliability of his application are jury questions, they cannot be reconciled with Rule 702 or governing Fourth Circuit precedent. *See, e.g.*, *Nease*, 848 F.3d at 231; *Sardis*, 10 F.4th at 283. Pneu-Mech, as the proponent of the Report, bears the burden on each element for each of its opinions.

### 2. Qualifications

Crown does not challenge Johnson's qualifications. The Court finds that Pneu-Mech has shown by a preponderance that Johnson—a licensed professional and structural engineer with more than twenty-five years of experience, including evaluation of fire- and heat-affected structures—is qualified to offer opinions about structural engineering. (Doc. Nos. 256-2 at 19–25; 270-1 ¶¶ 4–13). These credentials, however, do not make Johnson an expert on the reasonableness of repair costs. Accordingly, the Court will exclude that portion of his testimony. *See* (Doc. No. 256-2 at 15–16).

### 3. The Johnson Affidavit

A retained expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Undisclosed information may not be used at trial unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003). The Court considers the Affidavit only to the extent it explains methods disclosed in the Report or at Johnson's deposition. Statements in the Affidavit that narrow Johnson's opinions bind Pneu-Mech at trial. *See* (Doc. No. 270-1 ¶¶ 29–32, 37–38). The Affidavit's citation of published literature regarding the temperature at which structural steel begins to lose strength, *id.* ¶¶ 23–24 & nn.1–3, may be used solely to corroborate the approximately 600°F figure already disclosed in the Report (Doc. No. 256-2 at 7). Because the underlying proposition was timely disclosed and Crown can

address the literature on cross-examination without disruption to trial, the late citation is harmless. *See S. States*, 318 F.3d at 597.

### 4. "No Evidence" Opinions and Alternative Causes

Crown, citing Rule 702(a), contends that the framing of Johnson's opinions—many of which he couches in terms like "no evidence" or "inconclusive" evidence—are unhelpful to the trier of fact and fail to account for alternative causes. The Court agrees in part.

"[E]xpert testimony is generally presumed helpful to the jury" in understanding specialized topics outside common knowledge. *Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990). This means a rebuttal engineer may assist the jury by explaining, through the application of engineering principles, that the damage a structure actually sustained is inconsistent with the alleged cause of that damage. The possibility of alternative causation "normally affect[s] the weight that the jury should give the expert's testimony and not the admissibility of that testimony." *Cooper*, 259 F.3d at 202; *see also Daubert*, 509 U.S. at 596. Thus, while a court should exclude testimony that "utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause," an expert need not "rule out every possible alternative cause" for his opinion to be admissible. *Cooper*, 259 F.3d at 202.

Crown also argues that Johnson failed to account for alternative explanations. That requirement, however, applies to an expert who offers an affirmative opinion on causation. *See id.* With one exception addressed below, Johnson offers no such

opinion; the Report concludes only that the available evidence does not support Crown's theory of damage. His failure to consider alternative causes therefore does not warrant excluding the Report as a whole. The limits on each of his opinions are set out below.

#### 5. Access and Preservation

Pneu-Mech argues that Crown's actions—including its post-incident repairs and its refusal to provide Johnson a manlift—prevented Johnson from performing adequate tests. (Doc. No. 270 at 2–3, 8–10). In response, Crown contends that Pneu-Mech "had every opportunity to examine its own work" during its design, construction, and testing of the product it sold Crown. (Doc. No. 281 at 7–8).

Neither argument alters the Rule 702 inquiry. The limits of the available evidence may explain why Johnson's opinions are narrow, but they do not relax the requirement that each opinion be reliably supported. Any claim that Crown failed to preserve physical evidence is governed by the Court's inherent authority. *See Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Those matters, however, are not before the Court at this time.

### B. Specific Opinions

Next, the Court addresses specific findings and conclusions within the Report.

#### 1. Finding 1 and Conclusion 1 (whether damage occurred is "inconclusive")

This statement reflects only that Crown repaired the alleged damage before Johnson conducted his investigation. It does not apply specialized knowledge and will not help the jury understand a specialized issue. *See* Fed. R. Evid. 702(a). For that

reason, it is **EXCLUDED**. This ruling does not prohibit Johnson from contextualizing his admissible opinions by discussing the time at which he rendered them and the scope of their conclusions.

### 2. Finding 2 and Conclusion 2 (temperature exposure of structural steel)

Johnson compared the highest temperature reflected in Crown's own documentation, a 229°F reading on the exterior surface of an exhaust stack near its roof penetration, with the established temperature range at which structural steel begins to lose strength. (Doc. Nos. 256-2 at 6–7; 270-1 ¶¶ 21–25). He conservatively assumed that the adjacent steel reached 229°F throughout its cross-section. (Doc. Nos. 256-2 at 6–7; 270-1 ¶¶ 21–25). He also personally observed the stack insulation and the air gap that separated the insulation from the surrounding framing. (Doc. No. 256-2 at 7).

The Rules of Evidence provide that an expert may rely on data of a kind reasonably relied upon in his field. Fed. R. Evid. 703. Structural engineers routinely estimate historical conditions by comparing the available physical evidence against known quantities from multiple outside sources. *See* (Doc. No. 270-1 ¶¶ 14, 20, 28, 42); *see also Joiner*, 522 U.S. at 197 ("Trained experts commonly extrapolate from existing data."). The Court concludes that Pneu-Mech has shown by a preponderance that this screening analysis satisfies Rule 702(b)–(d). Accordingly, Crown's corresponding argument—that Johnson failed to model the transient heat-transfer—becomes a question of evidentiary weight for the jury. *See Daubert*, 509 U.S. at 596.

Conclusion 2, however, states categorically that ambient temperatures "did not pose a threat to the structural integrity" of the trusses. (Doc. No. 256-2 at 15). Johnson attempts to support this unqualified statement with a single surface reading. That conclusion exceeds the scope of his methodology. *See* Fed. R. Evid. 702(d). As such, this opinion is **ADMITTED** only in the limited form stated in the Affidavit—namely, that the available temperature data did not show that the structural steel reached temperatures at which engineers would begin to consider reductions in its strength and stiffness. (Doc. No. 270-1 ¶ 25).

**3. Findings 3–4 and Conclusions 3(A)–(B) (roof trusses and roof deck)**

When Johnson examined the accessible steel trusses and roof deck from atop the ovens, he did not observe any physical signs of heat exposure (such as sagging, deformation, discoloration, or coating burn-off). (Doc. Nos. 256-2 at 7–8; Doc. No. 270-1 ¶ 26). An expert may "draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire*, 526 U.S. at 156. But *Kumho Tire* did not hold visual inspection unreliable *per se*; the question is whether the approach is reasonable as applied to the particular matter at issue. *Id.* at 153–54.

Here, it is. Accordingly, these opinions are **ADMITTED** with two caveats. First, they must be limited to Johnson's actual observations. And second, Johnson must acknowledge that he made his observations after Crown's repairs and only from accessible vantage points.

**4. Finding 5 and Conclusion 3(C) (bolted connections)**

The Report states only that Johnson found "no logical or technical reason" why

ambient temperature fluctuations would loosen the bolted connections. (Doc. No. 256-2 at 8). As written, that is an unexplained conclusion—and *Daubert* requires more. *See Joiner*, 522 U.S. at 146; *Wilson*, 484 F.3d at 274. Pneu-Mech represents, and Crown does not dispute, that Johnson testified at his deposition that engineers would not consider temperature-induced loss of bolt preload if the temperature in question were lower than roughly 300°F. (Doc. Nos. 270 at 10–11; 270-1 ¶ 28). Although that statement could explain preload loss at elevated temperatures, it does not refute Crown's theory that the connections loosened over time through repeated expansion and contraction. *See* (Doc. No. 256 at 8).

This opinion is therefore **EXCLUDED IN PART**. Johnson may testify that the available temperature data falls below the range at which temperature-induced preload loss becomes an engineering consideration. But he may not offer the Report's statement as written, nor may he opine that thermal cycling could not have loosened the connections.

#### 5. Findings 6–7 and Conclusions 3(D)–(E) (roof insulation and insulated metal wall panels)

Johnson acknowledges that these concealed materials could not be examined without intrusive examination; that no such examination was performed; and that he did not review evidence of the type or properties of the materials. (Doc. No. 256-2 at 8–10). Because Johnson did not know the materials or their responses to heat, he did not have sufficient facts or a reliable basis from which to determine potential damage. *See Oglesby*, 190 F.3d at 250–51. Johnson reiterates in his Affidavit that the materials he received did not show technical evidence of damage. (Doc. No. 270-1 ¶

32). But this statement merely describes the record. It does not apply Johnson's expertise.

Consequently, Pneu-Mech has not carried its burden under Rule 702. The corresponding opinions—including the Report's statement that the roofing membrane was "very unlikely" to have been exposed to damaging temperatures, *see* (Doc. No. 256-2 at 8)—are **EXCLUDED**. Johnson may testify to his direct observation that the exposed metal faces of the Environmental Room wall panels did not show signs of deformation.

**6. Finding 8 and Conclusion 3(F) (acoustical ceiling grid and tiles)**

The entire ceiling grid was replaced before Johnson's inspection. *Id.* at 11. Johnson's observations of the replacement grid cannot reliably support an opinion about whether the original grid or tiles sustained heat damage, and his suggestion that loose tiles correlate with the conveyor braces is an untested alternative explanation drawn from post-replacement conditions. *See Joiner*, 522 U.S. at 146. These opinions are **EXCLUDED**.

**7. Finding 9 and Conclusion 4 (conveyor threaded-rod hangers)**

Johnson compared the hangers depicted in Crown's July 2022 conveyor report with the sealed structural drawings prepared by the engineer of record; he found the threaded-rod hangers consistent with that design. *Id.* at 11–14; (Doc. No. 270-1 ¶¶ 33–36). Comparing an installation with sealed design documents is a standard, reviewable engineering method, and Pneu-Mech has carried its burden as to that opinion. Johnson may also explain the type of technical analysis—such as load,

capacity, connection, and fatigue analyses—that a structural engineer would require before concluding that sealed designs were deficient. *See* (Doc. No. 270-1 ¶ 36). These opinions are **ADMITTED**.

Johnson may not, however, testify that "Crown has produced no technical evidence," (Doc. No. 256-2 at 16), or comment on the credentials or credibility of the unidentified conveyor-manufacturer representative quoted in Crown's report, *id.* at 12. Those matters do not require engineering expertise and must be left for the jury.

### 8. Finding 10 and Conclusion 5 (conveyor diagonal braces)

Johnson may testify that the single photograph of the bracing in the record does not permit an engineer to determine whether the installed bracing deviated from the drawings submitted by the engineer of record. *Id.* at 14–15. That limited opinion applies Johnson's expertise in reading structural drawings. Consequently, it is **ADMITTED**. However, because Johnson did not test whether the bracing was affirmatively compliant, *see* Doc. No. 270-1 ¶ 38, he may not opine on that issue.

### 9. Findings 11–12 and Conclusions 6–7 (justification for Crown's claimed expenses)

As noted earlier, these opinions—wherein Johnson concludes that Crown has not produced evidence to justify its purported expenses—are **EXCLUDED.** They are not based on structural engineering, nor do they disclose the methodology by which Johnson evaluated costs. *See* (Doc. No. 256-2 at 15–16). They amount to commentary on the sufficiency of Crown's proof of damages. Thus, they fall outside Johnson's demonstrated qualifications and would not help the jury. *See* Fed. R. Evid. 702(a),

(c). This ruling does not prevent Pneu-Mech from relying on Johnson's admitted engineering opinions to argue that particular repairs were unnecessary.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion in Limine to Exclude the Expert Report, Opinions and Testimony of Andrew W. Johnson, P.E., S.E. (Doc. No. 256) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion is **GRANTED** as to Finding 1 and Conclusion 1; Findings 6–8 and Conclusions 3(D)–(F), except Johnson's observation that the exposed metal wall-panel faces showed no deformation; Findings 11–12 and Conclusions 6–7; the statement in Finding 5 as written; any opinion that thermal cycling could not have loosened the bolted connections; and any testimony that Crown "has produced no evidence" or otherwise commenting on the sufficiency of Crown's proof;
2. The Motion is **DENIED** as to Finding 2 and Conclusion 2; Findings 3–4 and Conclusions 3(A)–(B); Finding 5 and Conclusion 3(C); and Findings 9–10 and Conclusions 4–5, each of which ais admitted only in the limited form described in Part III.B of this Memorandum and Order;
3. Johnson may not offer any opinion or basis not disclosed in his Report or at his deposition, except that the literature cited in paragraphs 23–24 of his Affidavit may be used to corroborate the temperature range disclosed in the Report; and

4. Counsel for Pneu-Mech shall provide a copy of this Memorandum and Order to Johnson before he testifies. This ruling is made in limine and is subject to reconsideration if the evidence at trial differs materially from the record now before the Court.

**SO ORDERED.**

Signed: October 7, 2026

Matthew E. Orso
United States District Judge